## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                    **No. 15-CV-680 MCA/WPL**

**HIGH PLAINS LIVESTOCK, LLC,**
**dba PRODUCERS LIVESTOCK AUCTION,**
**MICHAEL FLEN, CALVIN PAREO, and**
**DARCIE PAREO,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on *Defendants' Objections to Order Appointing a Receiver (Doc. 55)* [Doc. 60; Doc. 91]. The Court also takes into consideration all of the parties filings from December 10, 2015 to today's date, the relevant case law, oral arguments and testimony at the hearings on December 17, 2015, December 23, 2015 and January 8, 2016, and has otherwise been fully advised in the premises.

### BACKGROUND

The United States filed this action on August 5, 2015, alleging violations of the Packers and Stockyards Act, 7 U.S.C. §§ 181 *et seq.* [Doc. 1] The United States seeks civil penalties and, pursuant to 7 U.S.C. § 228a, an injunction. On August 11, 2015, the United States filed a *Motion for Preliminary Injunction to Enjoin Defendants from Violating the Packers and Stockyards Act and Memorandum in Support* [Doc. 7].

This Court held a status conference on August 19, 2015 at which time the question

of whether a receiver should be appointed was raised.  Thereafter, on September 9, 2015,

this Court entered an *Order of Reference*, which stated, in full:

> This matter is before the Court *sua sponte*.  On August 11, 2015,
> Plaintiff filed a MOTION for Preliminary Injunction *To Enjoin Defendants
> From Violating the Packers and Stockyards Act and Memorandum in
> Support* [Doc. 7].  This Court hereby refers the matter of appointment of a
> receiver to Magistrate Judge William P. Lynch to convene proceedings
> with the parties and determine whether appointment of a receiver is
> indicated.
>       **IT IS THEREFORE ORDERED** that the Honorable U.S.
> Magistrate Judge William P. Lynch convene necessary proceedings with
> the parties to determine whether appointment of a receiver is indicated, in
> accordance herewith.

[Doc. 18]  Magistrate Judge Lynch held a four-day evidentiary hearing on the matter of

the appointment of a receiver.  During these proceedings, the United States argued,

among other things, that "[i]t sort of goes without saying that appointment of a receiver is

injunctive relief."  [Transcript 10/19/15; 5:17-18]  Defendants objected to the Magistrate

acting on the United States' pending Motion for Preliminary Injunction, stating that it is

beyond the Magistrate Judge's authority to enter injunctive relief.  [Doc. 42, pp. 3-4]

On December 8, 2015, Magistrate Judge Lynch issued an *Order Appointing a

Receiver*.  [Doc. 55]  Therein, he framed the issues as follows:  "1) Is the United States

entitled to preliminary injunctive relief? 2) If so, is it appropriate to appoint a receiver for

HPL? 3) And if a receiver is appropriate, what is the scope of the receiver's

responsibilities?"  [Doc. 55, p. 25]  Magistrate Judge Lynch then conducted both an

analysis to determine whether preliminary or traditional injunctive relief is warranted

[Doc. 55, pp. 26-29], and, separately, an analysis of whether it is appropriate to appoint a

receiver [Doc. 55, pp. 29-31]   In conducting this second analysis, Magistrate Judge Lynch applied the following test:

> Factors typically considered when appointing a receiver are whether the party seeking the appointment has a valid claim, the probability that fraudulent conduct has occurred or will occur, imminent danger that property will be concealed or otherwise diminished, inadequacy of legal remedies, lack of a less drastic remedy, and the likelihood that appointing the receiver will be more beneficial than harmful. *See, e.g., Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993).

[Doc. 55, p. 30]   He concluded that all of the factors weigh in favor of appointing a receiver.   [Doc. 55, pp. 30-31]   Finally, he appointed the CPA firm of Johnson, Miller & Co., stating that the firm is "willing to act as a receiver with regard to the financial side of HPL's operations. Johnson Miller is also willing to conduct an initial review to determine HPL's continued viability. (Doc. 51.)"   [Doc. 55, p. 31]

Thereafter, Defendants filed a *Notice and Request for Emergency Hearing*, [Doc. 59], in which Defendants notified the Court that they would cease operating rather than operate under a receiver and in which they requested an emergency hearing "to the extent this course of action requires Court approval."   The United States filed a *Response to Notice and Request for Emergency Hearing*, wherein the United States argued that Defendants were not complying with the Order Appointing a Receiver.   [Doc. 61]   This Court held a hearing on December 17, 2005 to address these matters.   Prior to the hearing, Defendants also filed an *Objection to Magistrate Judge's Order to Appoint a Receiver and Order on Defendants' Motion to Clarify and Request for Expedited Hearing*.   [Doc. 60]   Therein, Defendants argued that Magistrate Judge Lynch acted beyond the statutory authority granted to magistrate judges by 28 U.S.C. § 636.   [Doc.

60, pp. 7-8]   A response and reply were filed to the objections prior to the Court's hearing, and the Court heard argument on the Objections at the hearing.  [Docs. 62, 68]

At the hearing on December 17, 2005, the Court clarified that it referred the matter of the appointment of a receiver to Magistrate Judge Lynch as a pretrial matter pursuant to 28 U.S.C. § 636(b)(1)(A) as well as under the "additional duties" clause in 28 U.S.C., § 636(b)(3), referring the parties to the cases of *Bache Halsey Stuart Shields Inc. v. Killop*, 589 F.Supp. 390, 393-394 (E.D. Mich. 1984) and *United States v. Melot*, 2012 WL 6754164, *3 (D.N.M. 2012).[1]   The Court allowed the parties until December 31, 2015 to file additional objections to the Order Appointing Receiver.

At the hearing the Court also ordered the parties to meet and confer as to the management of the property so as to avoid waste or loss in the interim while the matter of the objections to the appointment of a receiver was being briefed and considered.  The parties were ordered to meet and confer in good faith and submit to the Court by noon on Monday December 21st a stipulation regarding the measures to be taken to waste to the cattle, land, irrigation system, outbuildings and any other property.  If the parties were unable to reach a stipulation the parties were ordered to submit by 5:00 on December 21, 2015 their proposed recommendations as to measures which could be undertaken to avoid waste or loss to the above stated property.

---

[1] Defendants now cite to cases reviewing a Magistrate Judge's recommendation for the appointment of a receiver through a Report and Recommendation.  *First United Bank & Trust v. The Square at Falling Run, LLC*, No. 1:11CV31 (N.D. W.Va. April 25, 2011); *U.S. Bank Nat'l Assn. v. Sayona Hospitality*, LLC, No. 3:14-cv-62 (N.D. W. Va. June 26, 2014).  However, in both cases the issue of whether the Magistrate Judge had the authority to appoint a receiver was not considered, and thus the Court concludes these cases are not persuasive.

The parties were unable to reach an agreement and did not file a stipulation. The parties submitted separate proposed plans. Defendants submitted two proposed Orders, one to "Maintain the Status Quo," that is, of non-operation, and one to effectuate a "Ten Month Winding Down." [*See* Doc. 74] The United States filed a request that the Court "appoint a receiver to wind down the business of High Plains Livestock and to liquidate its assets." [Doc. 75] In support, the United States represented that Defendants indicated that they intend to default on and abandon their loans and leases, including their barn, which is worth about two million dollars and on which the Defendants owe approximately $500,000. [Doc. 75] The United States also submitted documentation to support that Defendants are reacquiring property that they previously surrendered during a prior bankruptcy, and that the United States believes that Defendants will do the same again and "retain control over properties the Pareos purportedly surrendered." [Doc. 75] After more briefing [Docs. 77, 78, 85, 86], the Court held another hearing on December 23, 2015. At this hearing, the Court addressed the matter of interim relief until a final hearing on the Objections the Order Appointing a Receiver was heard again on January 8, 2016. The Court entered an *Order Appointing a Receiver* on December 23, 2015, appointing De'Aun Willoughby as a receiver. [Doc. 88, pp. 7-8] Therein, the Court ordered that Ms. Willoughby take possession of and maintain control of all property of HPL, more specifically listed Ms. Willoughby's duties, and cited the requirements of a receiver set by statute in N.M.S.A. 1978, § 44-8-8. The Court further ordered that the receiver "shall take all reasonable steps to prevent the relinquishment of property and maintain the status quo, as set forth above." [Doc. 88, p. 8] However, later that same

day, Ms. Willoughby declined to accept the appointment as a receiver.  The next day, December 24, 2015, the Court entered an *Order for Temporary Injunction* requiring, *inter alia*, that Defendants maintain their cattle and property in the same condition as they were in as of December 24, 2015 and not engage in any dealer activity, until further Order of the Court.  [Doc. 89, p. 6]

Defendants filed their *Objections to Order Appointing a Receiver* [Doc. 91] on December 31, 2015.  Prior to this hearing, Defendants filed a *Notice of Availability of Gayland Cowen to Serve as Special Master or Receiver*.  [Doc. 92]  The Court held another hearing on the objections on January 8, 2016.  At this hearing the Court also took argument and testimony on the appointment of a special master.  Mr. Cowen expressed that he was unwilling to perform the duties of a receiver as set out in the Order appointing Ms. Willoughby as receiver, but he was willing to act as a special master.  Mr. Cowen testified telephonically and was questioned by the Court, Defense Counsel and the United States.  The Court indicated that it was inclined to appoint Mr. Cowen as a special master, rather than a receiver, particularly given the difficulty in finding anyone in New Mexico able to manage the Defendants' business.  The Court indicated that it would consider also appointing the CPA firm of Johnson, Miller & Co. to act as a co-special master.  The Court asked both parties to submit to the Court a list of duties for Mr. Cowen as special master, to be submitted by 12:00 noon on January 11, 2016.

These lists have now been submitted and the Court has taken them into consideration in making the following Order.

**ANALYSIS**

6

**Defendants' Objection To The Magistrate Judge's Order Based
On 28 U.S.C. § 636(B)(1)**

The authority of a Federal Magistrate Judge is set forth in 28 U.S.C. § 636, which,

in relevant part, states:

> Notwithstanding any provision of law to the contrary--
>
> (A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief . . . .
> (B) a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)[.]

28 U.S.C. § 636(b)(1).  Further, a Magistrate Judge may consider all matters in the case

and enter dispositive relief if all parties consent to the Magistrate Judge doing so:

> (c) Notwithstanding any provision of law to the contrary--
> (1) Upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.

28 U.S.C. § 636.

> 28 U.S.C. § 636(b) establishes that magistrates may hear and determine any pretrial matters pending before the court, save for eight excepted motions. These eight motions are generally referred to as "dispositive" motions. Magistrates may issue orders as to non-dispositive pretrial matters, and district courts review such orders under a "clearly erroneous or contrary to law" standard of review. 28 U.S.C. § 636(b)(1)(A). While magistrates may hear dispositive motions, they may only make proposed findings of fact and recommendations, and district courts must make de novo determinations as to those matters if a party objects to the magistrate's recommendations. *Id.* § 636(b)(1)(B), (C).
>
> . . .

> Rule 72 specifies the procedures to be used by magistrates with regard to pretrial matters. The Rule reflects the division in section 636(b) between matters as to which magistrates may issue orders and matters as to which magistrates may make only proposed findings of fact and recommendations. Significantly, the Rule does not list the specific motions which fall into each category, but simply refers to matters as either "dispositive" or "not dispositive" of a claim or defense. Fed. R. Civ. P. 72. As to any dispositive matter, magistrate authority is limited and the district court must use the de novo standard of review. *Id.* 72(b).

*Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1461-62 (10th Cir. 1988).

In this case, after holding a status conference with the parties, the Court referred "the matter of appointment of a receiver to Magistrate Judge William P. Lynch to convene proceedings with the parties and determine whether an appointment of a receiver is indicated." [Doc. 18] The Court did not indicate whether it was referring this matter pursuant to Subsection (A) or Subsection (B) of 28 U.S.C. § 636(b)(1).

The United States submits that, pursuant to Section 636(c)(1), Defendants consented to Magistrate Judge Lynch appointing a receiver. [Doc. 62, pp. 2, 7] The Court is not persuaded. Here, both parties agree that at a status conference held before this Court on August 19, 2015, Plaintiff's counsel brought up the idea of the appointment of a receiver, and Defendants' counsel suggested the issue of the appointment of a receiver or special master be referred to the presiding Magistrate Judge for mediation. [Doc. 65, pp. 5:8-8, 9:23-25; Doc. 14] This Court then entered the above order, ordering that the Magistrate Judge "convene necessary proceedings with the parties to determine whether appointment of a receiver is indicated." [Doc. 18] Magistrate Judge Lynch held a Status Conference on September 11, 2015, at which he sought clarification from the

parties as to their understanding of his role given the Order of Reference. [Doc. 25; Doc. 65, p. 4:21 to 5:5, 10:6-10] Both the United States and Defendants' Counsel stated that Defendants' Counsel suggested before this Court that the Magistrate Judge *mediate* the issue of the appointment of a receiver or special master and the role of the receiver or special master. [Doc. 65, pp. 5:8-8, 9:23-25] The Magistrate Judge gave the parties time at the status conference to discuss whether a mediation would be fruitful, however, the parties ultimately determined that a mediation would not be fruitful. [Doc. 65, p. 10:25 to 13:3] Defendants' counsel then stated: "It's – it's – you know, you could be the trial judge, too. I don't know how much of the detail or (indiscernible)." [Doc. 65, p. 13:2-5] At that point, the Magistrate Judge moved forward scheduling an evidentiary hearing. [Doc. 65, p. 14:9-11]

The Court concludes that none of this evidence indicates Defendants consented to the Magistrate Judge making a determination which the Defendants characterize as dispositive.[2]   It is clear that, at the conference, Defendants' Counsel stated that Defendants did not object to the appointment of a special master, while disagreeing with Plaintiff on the scope of the duties of such a special master, but this is a very different matter from the consent to the Magistrate Judge acting in a dispositive capacity under Section 636(c)(1). The record is also clear that both parties discussed, but ultimately rejected, the option of Magistrate Judge Lynch mediating the issue of the appointment of

---

[2] Further, contrary to the United States' argument based on *Roell v. Withrow,* 538 U.S. 580, 583-83 (2003) [Doc. 62, p. 7], this case is not one in which it would be proper to imply the consent of Defendants, where Defendants repeatedly objected to the Magistrate Judge holding a dispositive hearing on the appointment of a receiver.

a receiver and the receiver's scope of duties.  The closest there is to "consent" to the Magistrate Judge determining, dispositively, the issue of the injunctive relief of appointment of a receiver, is Defendants' Counsel's statement at the Status Conference before Magistrate Judge Lynch that:  "you know, you could be the trial judge, too.  I don't know how much of the detail or (indiscernible)."  [Doc. 65, p. 13:2-5]  However, this statement was not followed by agreement by Plaintiff or any confirmation by the Magistrate Judge.  Given the importance of the requirement of consent, this Court concludes that there is not evidence of a meeting of the minds regarding consent to Magistrate Judge Lynch acting dispositively on the matter of appointment of a receiver.

Thus, the issue of the appointment of a receiver came before Magistrate Lynch by reference from this Court.  As already stated by the Court, the Court did not, and could not, Order Magistrate Judge Lynch to issue a dispositive ruling on the matter of whether the appointment of a receiver is appropriate.  The Court stated at the hearing of December 17, 2015, and remains of the opinion, that the appointment of a receiver, pursuant to Federal Rule of Civil Procedure 66, is different from injunctive relief under Federal Rule of Civil Procedure 65.  While injunctive relief is expressly excluded from the authority of a Magistrate Judge, receiverships are not.  28 U.S.C. § 636(b)(1)(A).  The Court is not persuaded that the appointment of a receiver is dispositive of the parties' rights, as it is only to preserve property where there is a showing that the property may not be preserved otherwise.  *Bache Halsey Stuart Shields Inc. v. Killop*, 589 F.Supp. 390, 393-394 (E.D. Mich. 1984) and *United States v. Melot*, 2012 WL 6754164, *3 (D.N.M. 2012).  Thus, the Court concludes that the Magistrate Judge acted within his authority to appoint a

receiver pursuant to 28 U.S.C. § 636(b)(1)(A) and 636(b)(3).  Further, given the Court's

conclusion that it referred the matter of appointment of a receiver to Magistrate Judge

Lynch under these sections, the Court does not address the United States' request for the

Court to construe the *Order Appointing a Receiver* [Doc. 55] as a Report and

Recommendation and review it *de novo*.  The appropriate standard of review is whether

Magistrate Judge Lynch's decision appointing a receiver was clearly erroneous or

contrary to law.

### Whether Appointment of a Receiver was Clearly Erroneous or Contrary to Law

> Upon objection to a magistrate judge order on a non-dispositive matter, the district court may modify or set aside any portion of the order which it finds to be clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A). With regard to fact findings, the Court applies a deferential standard which requires the moving party to show that the magistrate judge order is clearly erroneous. *See Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 494 (D.Kan.1997). Under this standard, the Court is required to affirm the magistrate judge order unless the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir.1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)); *see also Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991) (district court generally defers to magistrate judge and overrules only for clear abuse of discretion). With regard to legal matters, the Court conducts an independent review and determines whether magistrate judge ruling is contrary to law. *See Sprint Commc'ns Co. v. Vonage Holdings Corp.*, 500 F.Supp.2d 1290 (D.Kan.2007); see also 11 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice And Procedure § 3069 (2d ed., 2009 update). Under this standard, the Court conducts a plenary review and may set aside the magistrate judge decision if it applied an incorrect legal standard or failed to consider an element of the applicable standard. *See, e.g., Owner–Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc.*, No. 2:02–CV950 TS, 2009 WL 5066679, at *2 (D.Utah Dec.16, 2009); *Jensen v. Solvay Chem., Inc.*, 520 F.Supp.2d 1349, 1350 (D.Wyo.2007); *Dias v. City & County of Denver, Colo.*, No.

11

CIVA07CV00722–WDMMJW, 2007 WL 4373229, at *2 (D.Colo. Dec.7, 2007); *McCormick v. City of Lawrence, Kan.*, No. 02–2135–JWL, 2005 WL 1606595, at *2 (D.Kan. July 8, 2005). *Cf. Weekoty v. United States*, 30 F.Supp.2d 1343, 1344 (D.N.M.1998) (applying de novo review to magistrate judge legal determination on non-dispositive matter).

*In re Motor Fuel Temperature Sales Practices Litig.*, 707 F.Supp.2d 1145, 1147-48 (D. Kan. 2010).

Here, factually, Magistrate Judge Lynch determined that:

The United States made a proper showing that HPL:

- routinely failed to remit the net proceeds from the auction to the sellers (see, e.g., Test. Luce, Tr. Oct. 19, 2015, at 127-29 (cattle purchased at auction by Mr. Pareo that died before slaughter were not paid for); Test. Fish, Tr. Oct. 19, 2015, at 39-40 (cattle with back tag number 626 sold for $75.00 per hundredweight, but was marked down to $45.00 per hundredweight); Ex. 33 (invoice number 240642); Exs. 49-51 (rail price for cattle HPL purchased at auction "as a dealer" not disclosed and remitted to sellers)), which qualifies under § 228a(a);

- operated while insolvent, as defined by § 204 (see Test. R. Prather, Oct. 22, 2015, at 30-32 (HPL's custodial account was short in 2009); *id*. at 38-43 (HPL's custodial account had a combined $1 million shortage in 2013); *id*. at 44 (HPL's custodial account had another shortage in December 2013); *id*. at 101 (Agent Prather found significant shortages in HPL's custodial account in October 2014 and February 2015)), which qualifies under § 228a(b); and

- operated in violation of the PSA in a manner which may reasonably be expected to cause irreparable damage to others, which qualifies under § 228a(b), by:

  i. misusing the custodial account (*see* Exs. 52, 53 (custodial checks made out to Cutter Pareo, the Pareos minor child, for trucking services); Exs. 90, 91, 92 (custodial checks to American Heritage for Luce's truck payment)), a violation of § 221 and 9 C.F.R. § 201.42;

  ii. failing to maintain accurate and true records (*supra*, 11-14, discussing the abnormalities found in HPL's records; Test. C. Pareo,

Oct. 19, 2015, at 178, 198, 245 (testifying that HPL's records only partially reflect what happened at auction)), a violation of § 221 and 9 C.F.R. § 201.49;

iii. generating false documents (*supra*, 11-14, discussing the abnormalities found in HPL's records; Test. C. Pareo, Oct. 19, 2015, at 178, 198, 245 (testifying that HPL's records only partially reflect what happened at auction); Test. D. Pareo, Oct. 28, 2015, at 52, 81 (testifying that she altered records after-auction to make the accurate reflections of what ultimately happened)), a violation of § 221 and 9 C.F.R. § 201.49;

iv. altering sale documents for the purpose of avoiding payment of the full amount due for livestock purchased for and on behalf of HPL (see, e.g., Test. Luce, Tr. Oct. 19, 2015, at 127-129 (testifying that HPL staff would shred scale tickets when cattle purchased by Mr. Pareo died before they could be slaughtered)), a violation of §§ 221 and 228b(a); and

v. misrepresenting the true purchasers of livestock (*e.g., compare* Ex. 94 at 3, invoice number 245113, marking cattle with back tag number 5232 as being sold to buyer 17, Mr. Pareo, *with* Ex. 94 at 4, the seller's invoice marking cattle with back tag number 5232 as being sold to buyer 18, Seminole Growers), a violation of § 221.

[Doc. 55, pp. 27-28]

These findings, and more, are supported by the record. Defendants do not challenge these factual findings as clearly erroneous. [Doc. 91, esp. p. 15] Rather, Defendants generally argue that now they are acting as a dealer and that there is no evidence of violations of the PSA now that Defendants are purportedly acting as a dealer and not as a market agency. [Doc. 91, pp. 4, 14] Defendants' main argument is that, because Magistrate Judge Lynch framed the issue as whether the United States was entitled to preliminary injunctive relief, all of Magistrate Judge Lynch's conclusions were incorrect. [Doc. 91, pp. 9-10] Defendants also argue that it was improper to give the

13

receiver full managerial control over all of Defendants' operations, including their trucking and farming operations, which are not regulated by the PSA.

The Court reviews *de novo* Magistrate Judge Lynch's legal determinations for an error of law. As set forth by Magistrate Judge Lynch:

> Factors typically considered when appointing a receiver are whether the party seeking the appointment has a valid claim, the probability that fraudulent conduct has occurred or will occur, imminent danger that property will be concealed or otherwise diminished, inadequacy of legal remedies, lack of a less drastic remedy, and the likelihood that appointing the receiver will be more beneficial than harmful.

*Aviation Supply Corp.*, 999 F.2d at 316-17. As for the first and second factors, whether the United States has a valid claim and the probability that fraud has occurred, the United States has made a strong showing that fraudulent conduct has occurred, albeit when Defendants were acting as a market agency. However, the Court is not persuaded that the fact that the fraudulent conduct may not be currently occurring weighs against the appointment of a receiver. Given the strength of the evidence of rampant fraudulent conduct, and because that fraudulent conduct establishes the United States' basis for relief, the Court concludes that the first two factors weigh in favor of appointment of a receiver. The Court also concludes that there is imminent danger of the property being diminished, particularly given Defendants' own representations that "limited lease payments" have been made on their farms after October 2015 [Doc. 88-2, p. 3], and that their lienholder considers the mortgage on the facility in default. [Doc. 59] The next factor is the inadequacy of legal remedies. Defendants correctly argue that Magistrate Judge Lynch did not address this factor. [Doc. 91, p. 19, Doc. 55, p. 30] Defendants

14

argue that the United States can seek fines and other remedies and that GIPSA investigators have the authority to inspect Defendants' dealer operation. [Doc. 91, p. 19] However, these purported legal remedies do not address the issue of the preservation of the property as it currently exists, which the equitable relief of a receiver (or special master) can address.  The next factor is whether there is a less drastic remedy. Defendants argue that they proposed a CPA, (either Mr. Cowen or Ms. Willoughby) to act as a special master, and this is a less drastic remedy.  [Doc. 91, p. 22]  Defendants are correct that this is a less drastic remedy, and thus this factor weighs in favor of appointing a special master and not a receiver.  Finally, the Court should consider whether appointing a receiver will do more good than harm.  Defendants argue that the appointment of Johnson, Miller & Co. will harm their business because their customers will not do business with them and they do not have the required expertise to run a cattle dealer operation.  The Court believes that the evidence establishes that the appointment of a receiver will do more good than harm, but that any receiver must have relevant experience, and the record does not indicate that Johnson, Miller & Co. has the requisite experience to run a cattle dealer operation.

Considering the evidence as a whole, the Court concludes that there would be sufficient justification to warrant the extraordinary remedy of the appointment of a receiver prior to the determination of the merits in this case.  However, the difficulty which has become clear since December 8, 2015, is that there may not be any individual willing and qualified to act as a receiver in this case.  As stated above, the Court appointed Ms. Willoughby as a receiver, but she declined the appointment.  At the

hearing on January 8, 2016, Mr. Cowen stated he was unwilling to act as a receiver but willing to act as a special master.  While it may be that Johnson, Miller & Co. is willing to act as a receiver in this case, the Court concludes that the less drastic measure of appointment of a special master is warranted.  The Court notes that, subject to the reports and recommendations of the special master, the United States may move the Court to reconsider the appointment of a receiver in this matter, and, further, upon the first report of Mr. Cowen as special master, the Court will consider whether appointment of Johnson, Miller & Co as a co-special master is appropriate and feasible.

**CONCLUSION**

　　　**WHEREFORE,** it is **HEREBY ORDERED** that Defendants' Objections to the *Order Appointing a Receiver* [Doc. 60; Doc. 91] are **overruled in part** and **sustained in part,** and a separate Order will be entered Appointing Mr. Cowen as Special Master and describing his duties.

　　　**SO ORDERED** this 11th day of January, 2016 in Albuquerque, New Mexico.


　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　M. CHRISTINA ARMIJO
　　　　　　　　　　　　　　　　　　　　Chief Judge, United States District Court