**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**                                     **No. 15-CV-680 MCA/WPL**

**HIGH PLAINS LIVESTOCK, LLC,
dba PRODUCERS LIVESTOCK AUCTION,
MICHAEL FLEN, CALVIN PAREO, and
DARCIE PAREO,**

     **Defendants.**

## MEMORANDUM ORDER AND OPINION

     This matter is before the Court *sua sponte*.  For the reasons set forth below, the Court dismisses Counts I through VIII of the *Complaint for Injunctive Relief and Civil Penalties* [Doc. 1] for lack of jurisdiction.

## BACKGROUND

     The United States brought this suit alleging numerous violations of the Packers and Stockyards Act, 7 U.S.C. § 181 *et seq.* (PSA).  In this suit, the United States asks this Court to assess in the first instance civil penalties for Defendants' violations of the PSA [Doc. 1, Counts I through XIII]; to enjoin Defendants "from operating as a market agency or as a dealer without registration as required by 9 C.F.R. § 201.10" [Doc. 1, ¶ 156]; to order Defendants to comply with particular statutory provisions and regulations [Doc. 1, p. 22, ¶ 2(a)-(c)]; and to issue a preliminary injunction under 7 U.S.C. § 228a of the PSA [Doc. 1, p. 22, ¶¶ 3, 4].  As grounds for the assessment of civil penalties, the United States alleges that Defendants violated the PSA by: failing to remit the full purchase price

of cattle to the sellers [Doc. 1, Count I]; failing to disclose the true ownership of High Plains Livestock [HPL] [Doc. 1, Count II]; charging undisclosed and unapproved rates and commissions [Doc. 1, Count III]; fraudulently altering scale tickets post-auction [Doc. 1, Count IV]; failure to identify the true purchaser of the cattle [Doc. 1, Count V]; having custodial account shortages [Doc. 1, Count VI]; misuse of custodial funds [Doc. 1, Count VII]; and failing to sell consigned livestock at the highest bid [Doc. 1, Count VIII].

After an early status conference in this case, the Court referred the matter of the appointment of a receiver to Magistrate Judge Lynch.  [Doc. 18]  During a four-day evidentiary hearing, the United States made a showing that the appointment of a receiver was necessary and appropriate; and, therefore, the Magistrate Judge appointed a receiver. [Doc. 55, pp. 29-32]  However, on the objections of the Defendants, and after additional hearings and proceedings during which the pragmatic problems with the appointment of a receiver were identified, this Court stated:

> Considering the evidence as a whole, the Court concludes that there would be sufficient justification to warrant the extraordinary remedy of the appointment of a receiver prior to the determination of the merits in this case. However, the difficulty which has become clear since December 8, 2015, is that there may not be any individual willing and qualified to act as a receiver in this case.

[Doc. 103, p. 15]  The Court, therefore, appointed a Special Master to report to the Court regarding particular aspects of Defendants' operations.  [Doc. 103; Doc. 104]

In the midst of the proceedings regarding the appointment of a special master, this Court *sua sponte* entered an *Order to Show Cause*, directing the parties to file briefs to

assist the Court in determining whether this case should be dismissed or stayed based on the operation of the doctrine of primary jurisdiction. [Doc. 97, pp. 5-6] The Magistrate Judge then held a Rule 16 Scheduling Conference and discovery has commenced in this case. [Doc. 120; Doc. 131] Defendants filed a Motion to Stay Discovery pending a determination regarding jurisdiction. [Doc. 115] The Magistrate Judge denied this Motion and Defendants have now filed *Defendants' Objections to Order Denying Motion to Stay Discovery (Doc. 130)* [Doc. 149] as well as *Defendant[s'] Request for Expedited Status Conference with District Court Judge Armijo* [Doc. 133].

The parties have also now filed briefs on the doctrine of primary jurisdiction. [Doc. 107; Doc. 108] Having considered the cases argued therein, as well as other pertinent Supreme Court precedent, the Court concludes that Counts I through VIII of this case must be dismissed, not based on application of the doctrine of primary jurisdiction, but for the reasons set forth in *Pan American World Airways, Inc. v. United States*, 371 U.S. 296 (1963). *Defendants' Objections to Order Denying Motion to Stay Discovery (Doc. 130)* [Doc. 149] and *Defendant[s'] Request for Expedited Status Conference with District Court Judge Armijo* [Doc. 133] are DENIED AS MOOT. If further issues arise regarding the scope of discovery, the parties are instructed to file any necessary motion with the Magistrate Judge in accordance with Federal Rule of Civil Procedure 72(a).

**ANALYSIS**

In each count of its Complaint in which the United States seeks civil penalties, the United States proceeds under 7 U.S.C. § 208 ("Unreasonable or discriminatory practices

generally; right of stockyard owner of management and regulation") and 7 U.S.C. § 213.

Section 213(a) states:

> It shall be unlawful for any stockyard owner, market agency, or dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with determining whether persons should be authorized to operate at the stockyards, or with the receiving, marketing, buying, or selling on a commission basis or otherwise, feeding, watering, holding, delivery, shipment, weighing, or handling of livestock.

7 U.S.C. § 213(a).  In addition, the United States alleges violations of 7 U.S.C. § 221, "Accounts and records of business; punishment for failure to keep," which expressly grants the Secretary the authority to set rules regarding record keeping, and upon a failure to follow the Secretary's order, to seek criminal prosecution.[1]  [Doc. 1, Counts I, II, III] The United States also references 7 U.S.C. § 205, which allows the Secretary of the Department of Agriculture to revoke the registration of a market agency for failure to follow the orders of the Secretary, and 7 U.S.C. § 206, which requires market agency rates to be just, reasonable and nondiscriminatory.  [Doc. 1, Count III]  Finally, among other provisions, the United States alleges violations of regulations which govern trusts funds and custodial accounts, 9 C.F.R. § 201.42, and market agencies selling on commission and purchasing from consignment, 9 C.F.R. § 201.56.  [Doc. 1, Counts VI, VIII]  All of the violations alleged by the United States are acts defined as unlawful by Congress in the PSA.

In the PSA, Congress defined not only the violations of the Act (which, as relevant are set out above) and the Secretary's tools to address the illegal conduct (including fines

---

[1] There is no allegation in the Complaint that the Secretary has already issued an order, nor is the United States seeking criminal prosecution in this case.

and cease and desist orders), but also the specific process by which the Secretary is to enforce the provisions of the PSA.  In particular circumstances expressly delineated by Congress, the Secretary of the Department of Agriculture may bring various causes of action to the Attorney General, who must then file suit.  For example, under 7 U.S.C. § 203, where the Secretary has determined that a person is acting as a stockyard and has required that person to register as a market agency or dealer, the United states may bring a civil action in the district court for each action as a stockyard.  7 U.S.C. § 203 ("Whoever violates the provisions of this section shall be liable to a penalty of not more than $500 for each such offense and not more than $25 for each day it continues, which shall accrue to the United States and may be recovered in a civil action brought by the United States."); *see also United States v. Haun*, 124 F.3d 745, 750 (6th Cir. 1997) (holding that "a civil action in the appropriate district court is the exclusive means by which the Secretary can collect a monetary penalty against livestock dealers who operate without having registered in violation of § 303 of the Act (7 U.S.C. § 203)"); *Colorado v. United States*, 219 F.2d 474, 476-77 (10th Cir. 1954) (holding that jurisdiction existed over a claim by United States against Colorado for operating as a market agency without registering).  Further, where the Secretary has issued an order under particular sections of the PSA (7 U.S.C. §§ 211, 212, or 213), and a party violates that order, the offending party "shall forfeit to the United States the sum of $500 for each offense. . . . Such forfeiture shall be recoverable in a civil suit in the name of the United States."  7 U.S.C. § 215(a).  In addition, "the Secretary, or any party injured thereby, or the United States by its Attorney General, may apply to the district court . . .  for the enforcement" of a non-

monetary order issued by the Secretary that a stockyard owner, market agency or dealer fails to obey. 7 U.S.C. § 216. Where the Secretary has assessed fines under 7 U.S.C. § 213 of the PSA and the violator fails to pay those fines, "the Secretary may refer the matter to the Attorney General who may recover such penalty by an action in the appropriate district court of the United States." 7 U.S.C. § 213(b). Finally, while the United States is seeking a cease and desist order from the Secretary, the United States may seek from the Court temporary injunctive relief or a restraining order. 7 U.S.C. § 228a.

Directly applicable to this case, Congress delegated the powers to make cease and desist orders and to assess civil penalties under the PSA directly to the Secretary. Under 7 U.S.C. § 213(b) of the PSA:

> [W]henever the Secretary has reason to believe, that any stockyard owner, market agency, or dealer is violating the provisions of subsection (a) of this section, the Secretary after notice and full hearing may make an order that he shall cease and desist from continuing such violation to the extent that the Secretary finds that it does or will exist. *The Secretary* may also assess a civil penalty of not more than $10,000 for each such violation. In determining the amount of the civil penalty to be assessed under this section, the Secretary shall consider the gravity of the offense, the size of the business involved, and the effect of the penalty on the person's ability to continue in business.

(Emphasis added). Likewise, under 7 U.S.C. § 211(b):

> Whenever after full hearing upon a complaint . . . made by the Secretary on his own initiative, either in extension of any pending complaint or without any complaint whatever, the Secretary is of the opinion that any rate, charge, regulation, or practice of a stockyard owner or market agency, for or in connection with the furnishing of stockyard services, is or will be violative of section 205, 206, or 208 of this title [7 U.S.C. §§ 205, 206, 208], *the Secretary* . . . [m]ay make an order that such owner or operator [] shall cease and desist from such violation.

6

*Id.* (Emphasis added). Where a party fails to cease and desist, then the provisions of 7 U.S.C. §§ 215 and 216, discussed earlier, allow the Secretary seek enforcement of the orders through the district court. The PSA states: "The Secretary may report any violation of this chapter to the Attorney General of the United States, who shall cause appropriate proceedings to be commenced and prosecuted in the proper courts of the United States without delay." 7 U.S.C. § 224 (titled "Attorney General to institute court proceedings for enforcement"). Finally, most appeals of orders of the Secretary are appealable to the United States Court of Appeals. 28 U.S.C. § 2342(2).[2]

Based on the language of the PSA as a whole, as set forth above, the Court concludes that Congress intended the United States to follow the express processes within the PSA in enforcing the provisions of the PSA. With regard to assessment of civil the penalties that the United States seeks in this case, Congress stated the exact process to be followed. The United States must seek, in the first instance, the assessment of civil penalties before the Secretary. 7 U.S.C. § 213. If the defendant fails to pay such penalties, then the United States may enforce the order through the district court. Further, Congress anticipated that the United States may need to seek a temporary injunction in the district court while administrative proceedings are pending, and allowed for such temporary relief under strictly defined circumstances. 7 U.S.C. § 228a.

---

[2] "[A]ll final orders of the Secretary of Agriculture made under chapters 9 and 20A of title 7, except orders issued under sections 210(e), 217a, and 499g(a) of title 7," none of which are pertinent to the case at hand, are within the exclusive jurisdiction of the court of appeals. 28 U.S.C. § 2342(2).

The United States relies on 7 U.S.C. § 224 in arguing that Congress intended to allow it to seek relief in the district court for any violation of the PSA.  [Doc. 107, p. 5]  Section 224 states:  "The Secretary may report any violation of this chapter to the Attorney General of the United States, who shall cause appropriate proceedings to be commenced and prosecuted in the proper courts of the United States without delay."  However, the United States' interpretation of Section 224 disregards the carefully constructed process Congress set forth in the PSA.  Reading Section 224 "in context, with a view to its place in the overall statutory scheme," *King v. Burwell,* 135 S.Ct. 2480, 2490 (2015) (internal quotation marks, citation and brackets omitted), the "appropriate proceedings" to which Congress referred are not any proceedings the United States chooses to initiate, but those specifically enumerated by Congress in the PSA to be brought before the district court in the first instance.

The United States Supreme Court reached the same conclusion in analogous circumstances in the case of *Pan American*, 371 U.S. 296.  There, "the Civil Aeronautics Board requested the Attorney General to institute [a law suit that] charged two major restraints of trade" where two airlines allegedly agreed to a particular division of territories and conspired to monopolize air traffic.  *Id.* at 478.  The pertinent statute stated:

> The Board may, upon its own initiative or upon complaint by any air carrier, foreign air carrier, or ticket agent, if it considers that such action by it would be in the interest of the public, investigate and determine whether any air carrier, foreign air carrier, or ticket agent has been or is engaged in unfair or deceptive practices or unfair methods of competition in air transportation or the sale thereof. If the Board shall find, after notice and hearing, that such air carrier, foreign air carrier, or ticket agent is engaged

8

in such unfair or deceptive practices or unfair methods of competition, it shall order such air carrier, foreign air carrier, or ticket agent to cease and desist from such practices or methods of competition.

*Id.* at 302 (quoting 49 U.S.C. § 1381, which has since been repealed).  The Court stated that:

Limitation of routes and divisions of territories and the relation of common carriers to air carriers are basic in this regulatory scheme. The acts charged in this civil suit as antitrust violations are precise ingredients of the Board's authority in granting, qualifying, or denying certificates to air carriers, in modifying, suspending, or revoking them, and in allowing or disallowing affiliations between common carriers and air carriers.

*Id.* at 305.  Accordingly, the Court concluded that Congress entrusted "to the Board under § 411 all questions of injunctive relief against the division of territories or the allocation of routes or against combinations between common carriers and air carriers" and it was improper for the Courts to intrude upon the Board's authority.  *Id.* at 310.  Thus, the Court held that "narrow questions presented by this complaint have been entrusted to the Board and that the complaint should have been dismissed."  *Id.* at 313.

Unfortunately, in the jurisprudence, there is some confusion in naming and defining the basis for dismissal employed by *Pan American*.[3]  Further, Courts and

---

[3]  *Pan American* does not name the jurisdictional basis for dismissal, i.e., it did not characterize the basis for dismissal as primary jurisdiction, exclusive jurisdiction or the failure to exhaust administrative remedies.  Our Tenth Circuit characterized *Pan American* as a "primary jurisdiction" case in a subsequent case arising under the PSA in *Denver Union Stockyard Co. v. Denver Live Stock Comm'n*, 404 F.2d 1055, 1056 & n.4 (10th Cir. 1968).  In *United States v. Michigan Nat'l Corp.*, 419 U.S. 1, 5 n.2 (1974), however, the Supreme Court characterized *Pan American* as applying the doctrine of exclusive jurisdiction.

Regardless, *Denver Union Stockyard Co.* does not control the outcome of this case.  There, a private party brought a "charge of monopolization under § 2 of the Sherman Act and of corporate acquisitions which lessened competition in violation of § 7

commentators note confusion between variously worded doctrines, including "exclusive jurisdiction," "exclusive primary jurisdiction," or "exhaustion of administrative remedies." *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956); *see also* Paula Knippa, *Primary Jurisdiction Doctrine and the Circumforaneous Litigant*, 85 Tex. L. Rev. 1289, 1301 (2007) (summarizing the doctrines as outlined by various courts and commentators, and describing the resulting "Multiple Doctrinal Disorder"). As explained by the Supreme Court, however, there is a distinction between primary jurisdiction and exclusive jurisdiction or exhaustion:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*W. Pac. R.R. Co.*, 352 U.S. at 63-64; *see also Crain v. Blue Grass Stockyards Co.*, 399 F.2d 868, 872 (6th Cir. 1968) (same; collecting cases).

This case is like *Pan American* because, with regard to civil penalties, the cause of action itself is created by the PSA and therein vested within the sole jurisdiction of the

---

of the Clayton Act." *Denver Union Stockyard Co.*, 404 F.2d at 1058. The Court concluded that "[t]he Secretary [of Agriculture] is given no power over acquisitions and mergers." *Id.* at 1059. No acquisition or merger is at issue here and the United States did not plead a violation of the Sherman Act or the Clayton Act, but instead asks this Court to award it relief authorized by the PSA and entrusted to the Secretary within the PSA.

Secretary of Agriculture. Within the PSA, Congress specifically defined when resort to the Court is appropriate. Congress chose not allow the Secretary to resort to the district court for the assessment of fines or the issuance of a cease and desist order in the first instance, 7 U.S.C. § 213(b); and, therefore, dismissal of Counts I through VIII is appropriate.

The Court reaches this conclusion after full consideration of the cases argued by the United States in response to the Court's request for additional briefing on the question of primary jurisdiction.[4] The Court agrees with the holdings of the cases cited by the United States in which Courts have generally held, as the United States puts it, that "the purposes underlying the doctrine of primary jurisdiction are not served when the agency itself is bringing the claim." [Doc. 107, pp. 8-9] However, those cases are not like the case at hand because in each of those cases primary jurisdiction was at issue given that the agency had a cause of action recognizable in the courts separate from the agency process. *United States v. Zweifel*, 508 F.2d 1150, 1155 (10th Cir. 1975) (holding that "the United States may, at its election, proceed either in the administrative [tribunal] of the Department of the Interior or, under 28 U.S.C. 1345, in the district court to clear title to public lands where the validity of unpatented mining claims is at issue"); *United States v. Alcon Labs.*, 636 F.2d 876, 888 (1st Cir. 1981) ("Jurisdiction over the new drug issue is

_____

[4] Quite understandably, because the Court only requested cases on primary jurisdiction [Doc. 97, pp. 5-6], the parties did not provide case law or briefing on the separate question of jurisdiction/exclusive jurisdiction/exhaustion of administrative remedies. However, given the arguments and the case law provided by the parties, the Court has been fully advised on the issue of jurisdiction and finds that ordering yet another round of briefing would only unnecessarily delay a determination in this case.

shared by the FDA . . . and the federal district courts." (internal citations omitted));

*Interstate Commerce Comm'n v. Maine Cent. R.R. Co.*, 505 F.2d 590, 594 (2nd Cir. 1974)

(stating that the doctrine of primary jurisdiction would not be applied where the statute at

issue "specifically authorizes the courts to enjoin unauthorized abandonments by

regulated railroads at the suit of certain designated parties," (internal quotation marks and

citation omitted) and such a suit "is the only means that the Commission . . . has to

enforce" the statutory provision); *United States v. Any & All Radio Station Equip.*, 204

F.3d 658, 665 (6th Cir. 2000) (stating that the government was expressly authorized by

statute "to initiate a civil action in the district courts"); *United States v. Elrod*, 627 F.2d

813, 818 (7th Cir. 1980) ("it is not disputed that the United States has the right to bring an

action on contract without benefit of statute"); *United States v. W. Serum Co., Inc.*, 666

F.2d 335, 337 (9th Cir. 1982) ("the plain meaning of the statute, 21 U.S.C. s 332, gives

federal district courts jurisdiction to enjoin any and all listed violations of the Act").

Unlike these cases, here the fundamental problem is that there is no separately cognizable

cause of action in the Courts to assess civil penalties.  Congress expressly set forth the

administrative process, and only the administrative process, as the means for civil

enforcement of the particular provisions of the PSA under which the United States seeks

relief.  Allowing the United States to seek that relief in this Court in the first instance

would be contrary to the clear intent of Congress.

Nor do the jurisdictional statutes cited by the United States allow this case to

proceed.  The United States asserts that this Court has jurisdiction under 28 U.S.C.

§ 1345 and 28 U.S.C. § 1355.  Section 1345 states:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

28 U.S.C. § 1345.[5]  Section 1345 does not, however, create a cause of action where one does not exist.

> Section 1345 provides that the district courts have original jurisdiction of such civil actions, suits or proceedings commenced by the United States or by any agency or officer thereof, rather than giving the Government a cause of action. If the Government has a federal cause of action, it must arise from some other source.

*King v. United States*, 301 F.3d 1270, 1274 (10th Cir. 2002).  Here, Congress created no cause of action in the district courts to assess civil penalties in the first instance. Congress did create a cause of action in this Court for the enforcement of such orders, once final. 7 U.S.C. §§ 213(b), 215, 216.  But the cause of action the United States brings in its Counts I through VIII does not exist.  Thus, these counts must be dismissed.

Nor does 28 U.S.C. § 1355 grant jurisdiction here.  Section 1355(a) states: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress."  Again, this statute does not create a cause of action.  It requires that the penalty be "incurred under any Act of Congress," *id.*  Under the PSA, an order by the Secretary is a prerequisite to a forfeiture action.  *See* 7 U.S.C. § 215(a) ("Any stockyard owner, market agency, or dealer who knowingly fails to obey any order made under the provisions of sections 211, 212, or 213

---

[5]  In addition, the United States Constitution grants this Court jurisdiction over all "Controversies to which the United States shall be a Party."  U.S. Const. Art. III, § 2.

of this title shall forfeit to the United States the sum of $500 for each offense. . . . Such forfeiture shall be recoverable in a civil suit in the name of the United States.").  Section 1355 does not allow the United States to bypass the prerequisite to the forfeiture action.

For the foregoing reasons, the Court hereby dismisses Counts I through VIII of the United States' Complaint.  Applying *Pan American*, the Court dismisses these counts for lack of jurisdiction.

### Count IX

In Count IX of its Complaint [Doc. 1, ¶¶ 150-156], the United States alleges that Calvin Pareo operated as a dealer and market agency without being registered to do so. [Doc. 1, ¶ 152]  Unlike in 7 U.S.C. § 213, Congress expressly granted this Court the authority to consider violations of 7 U.S.C. § 203 (requiring dealers and market agencies to register with the Secretary) in the first instance.  Therefore, jurisdiction is present.  Further, the doctrine of primary jurisdiction is not applicable.  *Haun*, 124 F.3d at 750 (holding that "a civil action in the appropriate district court is the exclusive means by which the Secretary can collect a monetary penalty against livestock dealers who operate without having registered in violation of § 303 of the Act (7 U.S.C. § 203)"); *accord Colorado*, 219 F.2d at 476-77.  The Court does not dismiss Count IX.

### Relief Under 7 U.S.C. § 228a

Finally, the United States requests for temporary injunctive relief under 7 U.S.C. § 228a.  The United States make seek such temporary relief where it has reason to believe that any person has committed particular violations of the PSA, including operating while insolvent, without the required bond, or "in a manner which may reasonably be expected

to cause irreparable damage to another person."  7 U.S.C. § 228a.  In addition, it must "be in the public interest to enjoin such person from operating subject to this Act or to enjoin him from operating subject to this Act . . . except under such conditions as would protect vendors or consignors of such commodities or other affected persons."  *Id.*  Under those circumstances,

> *until a complaint under this chapter is issued and dismissed by the Secretary or until an order to cease and desist made thereon by the Secretary has become final and effective within the meaning of this chapter or is set aside on appellate review of the Secretary's order*, the Secretary may notify the Attorney General, who may apply to the United States district court for the district in which such person has his principal place of business or in which he resides for a temporary injunction or restraining order. When needed to effectuate the purposes of this section, the court shall, upon a proper showing, issue a temporary injunction or restraining order, without bond.

*Id.* (emphasis added).   The United States both alleges the particular circumstances (in Counts I through IX) and asks for injunctive relief pursuant to Section 228a (in its prayer).  [Doc. 1, pp. 21-22]

However, the United States has not initiated proceedings before the Secretary, as required by Section 228a.  [Doc. 107, pp. 14-15] The United States submits that:

> if this Court finds that it does not have subject matter jurisdiction or has limited subject matter jurisdiction, the Secretary is prepared to promptly file an administrative complaint seeking those remedies unavailable to the United States here.  In that event, the United States reiterates its request pursuant to 7 U.S.C. § 228a to enter injunctive relief during the pendency of the administrative claim.

[Doc. 107 p. 16]  Given this representation, the Court will not dismiss the United States' request for relief under Section 228a, nor will the Court relieve the Special Master. Under the circumstances of this case, the Special Master may continue to perform duties

that further the purpose of Section 228a to protect "the public interest" by enjoining Defendants "from operating subject to this chapter except under such conditions as would protect vendors or consignors" of cattle.  However, the United States is required to initiate a claim before the Administrative Agency by May 11, 2016, and to submit a status report by the same date stating whether an administrative proceeding has been commenced.  The failure to initiate a claim may result in the dismissal of the United States' request for relief pursuant to Section 228a.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Counts I through VIII of the *Complaint for Injunctive Relief and Civil Penalties* [Doc. 1] are hereby dismissed;

**IT IS FURTHER HEREBY ORDERED** that *Defendants' Objections to Order Denying Motion to Stay Discovery (Doc. 130)* [Doc. 149] is **DENIED AS MOOT**;

**IT IS FURTHER HEREBY ORDERED** that *Defendant[s'] Request for Expedited Status Conference with District Court Judge Armijo* [Doc. 133] is **DENIED AS MOOT**; and

**FURTHER, THE COURT HEREBY ORDERS** the United States to initiate an administrative proceeding, if it intends to do so, by May 11, 2016, and to submit a Status Report by the same date stating whether an administrative proceeding has been commenced.

**SO ORDERED** this 11th day of April, 2016 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court