# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                     CV 15-680 MCA/WPL

HIGH PLAINS LIVESTOCK, LLC,
d/b/a PRODUCERS LIVESTOCK AUCTION,
MICHAEL FLEN, CALVIN PAREO,
and DARCIE PAREO,

        Defendants.

## ORDER GRANTING IN PART THE UNITED STATES'S MOTION TO COMPEL AND DENYING INDIVIDUAL DEFENDANTS' MOTION FOR PROTECTIVE ORDER

The United States filed a motion to compel responses to interrogatories and requests for production (Doc. 177), and Defendants Darcie Pareo, Calvin Pareo, and Michael Flen filed a cross motion for a protective order (Doc. 190). The parties have fully briefed both motions. Count IX, requesting that the Court enjoin the Defendants from operating as a market agency or as a dealer without registration as required by 9 C.F.R. § 201.10, and the motion for a preliminary injunction are the only remaining claims in this case. (*See* Doc. 165.) As explained below, I grant-in-part and deny-in-part the United States's motion to compel and deny the Defendants' motion for a protective order.

### LEGAL STANDARDS

Federal Rule of Civil Procedure 33, governing interrogatories to parties, provides that "interrogatories must be answered (A) by the party to whom they are directed; or (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any

officer or agent, who must furnish the information available to the party." FED. R. CIV. P. 33(b)(1). Additionally, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." FED. R. CIV. P. 33(b)(3). A party objecting to an interrogatory must specify its grounds for the objection. FED. R. CIV. P. 33(b)(4); *e.g.*, *Doe v. Nat'l Hemophilia Found.*, 194 F.R.D. 516, 520 (D. Md. 2000). The "[m]ere recitation of [the] familiar litany that [an] interrogatory is overly broad, burdensome, oppressive, and irrelevant does not suffice as [a] specific objection." *Miller v. Pruneda* ("*Pruneda*"), 236 F.R.D. 277, 281 (N.D. W. Va. 2004) (quotation omitted). Any objection not raised or not raised with specificity is waived. *Id.* An incomplete or evasive answer is not considered an answer, but rather a failure to answer. *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 212 (N.D. Ill. 2010) (citing FED. R. CIV. P. 37(a)(4)).

Rule 33(d) allows an answering party to refer to their own business records when the answer may be derived or ascertained from those records and "the burden of deriving or ascertaining the answer will be substantially the same for either party." FED. R. CIV. P. 33(d). Such an answer is "inappropriate where the interrogatory calls for 'the exercise of particular knowledge and judgment on the part of the responding party.'" *Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 226 (N.D.W.Va. 2007) (quoting *United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 419 (D. Md. 2005)). However, the answering party must identify which documents are responsive with sufficient detail to allow the interrogating party to quickly identify those documents. *Id.* "If the pertinent documents do not contain all the [relevant] information[, the answering party] must provide substantive responses." *Id.* (citing FED. R. CIV. P. 33(d); *Martin v. Easton Publ'g Co.*, 85 F.R.D. 312, 315 (E.D. Pa. 1980)).

A party must either produce documents responsive to a request for production ("RFP") or "state with specificity the grounds for objecting to the request, including the reasons" and "state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2). As with interrogatories, general objections to a request for production are insufficient and will be overruled. *See Convertino v. U.S. Dep't of Justice*, 565 F. Supp. 2d 10, 12-13 (D.D.C. 2008).

### HIGH PLAINS LIVESTOCK

The United States propounded interrogatories to and served RFPs on Defendant High Plains Livestock ("HPL") on January 22, 2016. (Doc. 177 at 3.) The parties agreed to various extensions of time, such that the United States timely filed its motion to compel on May 2, 2016. (*Id.* at 3-4.) The United States argues that HPL's answers to Interrogatory Nos. 2, 3, 4, 5, 7, 12, 14, 15, and 18, and responses to RFP Nos. 1-39, are deficient in various regards.

The Defendants submitted "additional and supplemental objections to discovery" on April 22, 2016, on the basis that the Court dismissed Counts I through VIII of the Complaint. (Doc. 177-6.) Specifically, the Defendants objected to providing any further responses or documents, except to the extent that the requested discovery relates to or is relevant to the claim for relief under 7 U.S.C. § 228a. (*Id.* at 2.) The United States argues that this supplemental objection is untimely and is therefore waived. (Doc. 177 at 6.) I disagree. The Defendants served this objection on the United States within eleven days of the Court's Order. (*See* Doc. 189 at 2.) I agree with the Defendants that the Court's Order changed the landscape of the case and provided a new basis for objection that did not exist when the Defendants initially served their discovery responses. Accordingly, I have considered this objection when ruling on each of the following matters.

3

**Interrogatory No. 2** asked HPL to "identify each employee or contractor of [HPL]" from August 5, 2010, through the present, and for each to "state the dates of employment with or service to [HPL]; his or her duties; and his or her salary or other compensation. If the employee or contractor is no longer with [HPL], state the date the employee or contractor left [HPL] and describe the circumstances under which the employee or contractor left [HPL]." (Doc. 177-1 at 2.)

HPL objected to the Interrogatory on the bases that it is overly broad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence because it seeks information regarding HPL's businesses and operations that are not regulated under the Packers and Stockyards Act ("PSA"). Nonetheless, HPL invoked the option to produce business records under Federal Rule of Civil Procedure 33 and stated that "[i]nformation responsive to this Interrogatory is located in the payroll account and personnel files of [HPL]" and, "[t]o the extent that [HPL] has this information in its care, custody and control, the information will be provided at a time and place mutually agreed upon by the Parties to this matter." (*Id.*)

The United States makes two arguments with respect to this Interrogatory. First, that HPL's reference to business records is insufficient under Rule 33 because HPL did not produce the referenced documents and does not refer to the records with sufficient specificity to allow the United States to locate the information as readily as HPL could; and because HPL stated that it will make documents available to the extent that HPL possesses such documents, which is insufficient because a party may not respond to an Interrogatory by referring to documents that do not exist. Second, the United States contends that this Interrogatory is relevant because HPL's

4

employees are likely witnesses to Defendant Calvin Pareo's ("Calvin")[1] dealer and market agency operations, as well as other violations of the PSA. (Doc. 177 at 6-7.)

In response to the motion to compel, HPL contends that it should not be required to produce information relating to dates of employment, duties, salary or compensation, and the reasons that any employee is no longer with HPL. HPL argues that if it is required to respond to this Interrogatory, it should be allowed to limit its response to the period from March 2014 to the present. Additionally, HPL relies on Federal Rule of Civil Procedure 34 for the proposition that it is required to produce only documents already in existence and is not required to compile a list of the requested information. (Doc. 189 at 4.)

I agree with HPL that its current or former employees salary or compensation are not relevant to whether Calvin should be required to register as a dealer or whether the Court should impose injunctive relief under 7 U.S.C. § 228a, except for Calvin, Darcie, and Michael Flen. However, the identity of the employees, their dates of employment, and their duties may lead to the discovery of admissible evidence and could aid the United States in building its case under § 228a by providing additional evidence of PSA violations at HPL. HPL's contention that the relevant period is from March 2014 to the present is incorrect. While the United States has previously submitted documentation during this period, this is not the only period for which HPL may have violated the PSA or the only period for which the United States may prove its case for injunctive relief. HPL's reference to information located in the payroll account and personnel files is insufficient because the answering party must identify which documents are responsive with sufficient detail to allow the interrogating party to quickly identify those documents, which

---

[1] I generally refer to parties by their last name. In this case, however, I refer to Mr. Pareo as "Calvin" and Mrs. Pareo as "Darcie" to distinguish the Defendants Pareo. I mean no disrespect to the Pareos by using their first names.

HPL did not do. *Ayers*, 240 F.R.D. at 226 (quoting *United Oil Co.*, 227 F.R.D. at 419). Further, the Rules do not allow HPL to delay responding to valid requests for discovery by stating that "the information will be provided at a time and place mutually agreed upon by the Parties to this matter." (Doc. 177-1 at 2.) Finally, HPL's reliance on Rule 34 is misplaced. HPL is responding to an Interrogatory, not an RFP. Litigants are often required to compile information from disparate sources when responding to an interrogatory. Rule 33, governing interrogatories, requires that the responding party answer each interrogatory separately, fully, in writing, and under oath. FED. R. CIV. P. 33(b)(3). I see no basis for altering that practice in this instance.

Within fourteen days from the date of entry of this Order, HPL will fully respond to this Interrogatory, except that HPL need not provide salary or compensation information for any employee/contractor other than Calvin, Darcie, and Flen.

**Interrogatory Nos. 3, 4, 14, and 18** Interrogatory No. 3 asked HPL to "identify each individual or entity for which [HPL] consigned, purchased, auctioned or otherwise sold cattle" from August 5, 2010, through the present, and for each to "state the dates during with [HPL] consigned, purchased, auctioned or otherwise sold cattle." (Doc. 177-1 at 2.) Interrogatory No. 4 asked HPL to "identify each entity or individual to which [HPL] sold and/or transferred cattle" from August 5, 2010, through the present, and for each to "state the dates during which [HPL] sold cattle to that entity." (*Id.* at 3.) Interrogatory No. 14 asked HPL to "identify each individual that bought cattle from or through [HPL] whether for themselves or on behalf of others" from August 5, 2010, to the present. (*Id.* at 6.) Interrogatory No. 18 asked HPL to "[i]dentify every entity to whom [HPL] made or offered any type of price guarantee to solicit or retain that entity's business as referenced in Mr. and Mrs. Pareo's interviews with law enforcement personnel in January 2015." (*Id.* at 7.) Additionally, this Interrogatory asked HPL to "state whether any

payment was made by [HPL], its officers, directors, employees, agents or other authorized representatives, and the amounts and dates of any such payments" to each such entity. (*Id.*)

HPL did not object to these Interrogatories, but for each invoked the option to produce business records and directed the United States to general categories of records, e.g., auction operation records and dealer operation records. (*Id.* at 2-3, 6, 7.) HPL then stated, as to each Interrogatory, that "[t]o the extent that [HPL] has this information in its care, custody and control, the information will be provided at a time and place mutually agreed upon by the Parties to this matter." (*Id.* at 2, 3, 6, 7.)

HPL did not respond to the motion to compel as to these Interrogatories, which constitutes consent to grant the motion. D.N.M. LR-Civ. 7.1(b). Additionally, HPL's reference to information located in generalized categories of file is insufficient because the answering party must identify which documents are responsive with sufficient detail to allow the interrogating party to quickly identify those documents, which HPL did not do. *Ayers*, 240 F.R.D. at 226 (quoting *United Oil Co.*, 227 F.R.D. at 419). Further, the Rules do not allow HPL to delay responding to valid requests for discovery by stating that "the information will be provided at a time and place mutually agreed upon by the Parties to this matter." (Doc. 177-1 at 2.)

Within fourteen days from the date of entry of this Order, HPL will fully respond to these Interrogatories. Should HPL continue to reference business records, it will do so with sufficient specificity for the United States to readily ascertain which specifics documents are responsive.

**<u>Interrogatory No. 5 and RFP No. 4</u>** Interrogatory No. 5 asked HPL to "[l]ist all financial institutions with which [HPL] has had an account from August 5, 2010 to the present, and for each list each account number, the dates the account was opened and/or closed (if applicable), and the ending balance of the accounts." (Doc. 177-1 at 3.) RFP No. 4 asked HPL to

produce "[a]ll documents reflecting transactions from all [HPL's] financial accounts, including but not limited to bank statements, returned checks, deposit slips, and withdraw slips, from August 5, 2010 to the present." (*Id.* at 8.)

HPL objected to the Interrogatory on the bases that it is overly broad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence because it seeks information regarding HPL's businesses and operations that are not regulated under the PSA. Nonetheless, HPL invoked the option produce business records under Federal Rule of Civil Procedure 33 and stated "[i]nformation responsive to this Interrogatory will be provided at a time and place mutually agreed upon by the Parties to this matter." (*Id.* at 3.) HPL objected to the RFP on the bases that it is overly broad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence because it seeks information regarding HPL's businesses and operations that are not regulated under the PSA. Nonetheless, HPL stated that responsive documents "will be provided at a time and place mutually agreed upon by the Parties to this matter." (*Id.* at 8.)

The United States makes two arguments with respect to this Interrogatory and RFP: first, that HPL may not validly respond to the Interrogatory by reference to documents that have not been produced; and second, that the objections are invalid because the discovery sought is relevant to PSA violations, which form the basis for relief under 7 U.S.C. § 228a.

In response to the motion to compel, HPL contends that the Court's dismissal of Counts I through VIII obviates the need for this information because there are no longer any claims regarding past insolvency and violations of the PSA. Further, HPL argues, § 228a "contemplates the grant of temporary injunctive relief based on the current operations, not on allegations of past conduct," and there are no allegations that HPL is currently violating the PSA. (Doc. 189 at 5.)

As previously discussed, HPL's reference to a broad swath of business records is insufficient under Rule 33. HPL's first objection, that the Interrogatory is overly broad and unduly burdensome, is insufficiently specific. Again, the "[m]ere recitation of [the] familiar litany that [an] interrogatory is overly broad, burdensome, oppressive, and irrelevant does not suffice as [a] specific objection." *Pruneda*, 236 F.R.D. at 281. This objection is overruled.

As to HPL's argument that the requested information is irrelevant because § 228a is based on current operations, HPL's reading of the statute is incorrect. At first blush, the statute reads that the Secretary may notify the Attorney General, who may apply for injunctive relief, when the Secretary has reason to believe it is in the public interest to seek such an injunction and that anyone governed by the PSA "has failed to pay or is unable to pay for livestock, [etc.]," "has operated while insolvent, or otherwise in violation of this chapter . . . ," or "does not have the required bond." 7 U.S.C. § 228a. The only portion of the statute that contemplates current and continuing violations is that regarding operating without the required bond. The other sections are written in the past tense—particularly relevant is that the United States may seek injunctive relief when any entity regulated by the PSA "*has operated* while insolvent." *Id.* (emphasis added). HPL's relevancy objection is overruled.

Within fourteen days from the date of entry of this Order, HPL will fully respond to this Interrogatory and RFP. Should HPL continue to reference business records, it will do so with sufficient specificity for the United States to readily ascertain which specific documents are responsive.

**Interrogatory No. 7** asked if HPL "or its attorneys or representatives have statements, written, recorded or otherwise from any person relating to the allegations or subject matter of this case," and, if so, to "identify each person who gave a statement, and for each statement provide

the date the statement was obtained and identify the person or persons who have custody or control of the statement at this time." (Doc. 177-1 at 4.)

HPL objected to the Interrogatory "to the extent that it seeks the disclosure of attorney work product," and stated that "the only documents that may be responsive to this Interrogatory are the various affidavits signed by dairy owners, which the Plaintiff already has copies of." (*Id.*)

The United States argues that that HPL's work-product objection is waived because HPL failed to provide a privilege log and then answered, rendering the objection a façade. Further, the United States contends that the work product doctrine does not protect facts, but rather an attorney's strategies and legal impressions, which are not requested by this Interrogatory.

In response to the motion to compel, HPL simply writes that "[a]s stated by the United States, HPL answered Interrogatory No. 7 and no additional response has been requested." (Doc. 189 at 6.)

HPL's response to the motion to compel indicates that it provided all documents and information responsive to this Interrogatory. I take this as a certification by HPL that no other responsive documents exist. In light of the serious nature of counsel's obligations under Federal Rule of Civil Procedure 11, I have no reason to believe that HPL is misleading the United States or the Court. To the extent that HPL objected on the basis of privilege, failed to provide a privilege log, and then apparently responded in full to the Interrogatory, I find that the objection is waived. *See Davis v. St. Anselm Exploration Co.*, CV 10-883-KG-WPL, ECF No. 90 at 5-6 (D.N.M. Sept. 2, 2011) (unpublished). If HPL has, in fact, not fully responded to this Interrogatory, it will do so within fourteen days from the date of entry of this Order. HPL is cautioned that failure to fully respond to discovery, particularly after stating to the Court that a

full response has been given, may result in serious sanctions, including, but not limited to, a recommendation of an adverse inference, default judgment, or monetary sanctions.

**Interrogatory No. 12** asked HPL to "[p]rovide the physical and mailing address of all physical locations [HPL] has operated" and to include "dates during which [HPL] operated at each location." (Doc. 177-1 at 5.)

HPL did not object to this Interrogatory, but failed to provide the mailing address and dates of operation for the location in Hereford, TX. (*Id.*) In response to the motion to compel, HPL included the dates of operation in Hereford, but failed to provide the mailing address. (Doc. 189 at 6.)

Within fourteen days from the date of entry of this Order, HPL will fully respond to this Interrogatory by providing the mailing address for the location at Hereford, TX.

**Interrogatory No. 15** asked HPL to "identify each auctioneer for any [HPL] auction" from August 5, 2010, to the present. (Doc. 177-1 at 6.)

HPL provided the names of the auctioneers (*id.*) and stated in response to the motion to compel that it does not keep identifying information for the auctioneers in the regular course of business and is "attempting to find addresses and phone numbers" for the auctioneers (Doc. 189 at 6.) The United States essentially argues that this response strains credulity given the nature of HPL's previous operation as a sale barn.

As previously stated, I presume that HPL and its attorneys are aware of their obligations under Rule 11. Accordingly, I have no reason to believe that HPL is attempting to mislead the United States or this Court. However, when the party answering an interrogatory lacks necessary information and is unable to obtain that information, it is required to make such a statement under oath and explain the efforts made to obtain the information. *Miller v. Doctor's Gen. Hosp.*,

76 F.R.D. 136, 140 (W.D. Okla. 1977.) If HPL is unable to obtain this information, it will so state under oath and will explain efforts made to obtain the information. HPL will comply with this Interrogatory within fourteen days from the date of entry of this Order.

**RFP Nos. 1, 3, 6-39** In response to these RFPs, HPL stated that the documents "will be provided at a time and place mutually agreed upon by the Parties to this matter." (*See* Doc. 177-1 at 8 through 177-2 at 9.) HPL did not otherwise object to producing the documents requested by these RFPs.[2] In response to the motion to compel, HPL raised several objections, including that responsive documents had otherwise been provided to the United States by the State of New Mexico or the Federal Bureau of Investigation. (*See* Doc. 189 at 7.) To the extent that responsive documents have been provided to the Federal Bureau of Investigation, the United States will seek to obtain those documents from the Bureau. HPL need not reproduce documents already provided to the United States by the State of New Mexico or the Bureau. To the extent that some of the documents may contain privileged material, HPL may renew this objection when such privileged material is found. *See Brenford Env'tl Sys., L.P. v. Pipelines of Puerto Rico, Inc.*, 269 F.R.D. 143, 146 (D.P.R. 2010). However, to the extent that HPL raised new and general objections as to relevancy in response to the motion to compel, those objections are waived. *See Pruneda*, 236 F.R.D. at 281; *see also Brenford Env'tl Sys.*, 269 F.R.D. at 146.

As explained herein, HPL will fully respond to these RFPs within fourteen days of the date of entry of this Order.

---

[2] HPL did object to RFP Nos. 27, 28, 30, 33, and 36 on the bases of being overly broad, unduly burdensome, and unlikely to lead to admissible evidence. These objections lack particularity and were not reasserted in response to the motion to compel. These objections are overruled.

**RFP No. 2** asked HPL to produce "[a]ll documents obtained from any person having or purporting to have knowledge relating to the operations of [HPL], including but not limited to its operation as a market agency/livestock auction and dealer." (Doc. 177-1 at 8.)

HPL objected on the basis of attorney work product, and then stated that HPL does not have responsive documents, other than those identified in answer to Interrogatory No. 7. (*Id.*) The United States sought a privilege log, but HPL did not respond. (Doc. 177 at 9.) The United States argues that HPL waived the objection by subsequently providing an answer and that a blanket objection based on privilege is improper without a privilege log. (*Id.*) HPL responded that "HPL answered RFP No. 2 and the United States does not appear to be requesting additional information." (Doc. 189 at 8.)

When an objection is based on privilege, the objecting party must justify its objection; a mere assertion that a document is privileged is not enough to sustain an objection. *See* FED. R. CIV. P. 26(b)(5); *Carrel v. Davis*, No. 10-4124-RDR, 2011 WL 3319746, at *2 (D. Kan. Aug. 1, 2011) (unpublished). The objecting party must "describe in detail the documents or information to be protected and must provide precise reasons for the objection to discovery," typically in the form of a privilege log. *Carrel*, 2011 WL 3319746, at *2. When a party claims privilege but does not provide a privilege log, it is impossible for the court to rule on the merits of a privilege objection. Thus, blanket objections on the grounds of privilege are improper and constitute a waiver of the objection. *Eureka Fin. Corp. v. Hartford Acci. & Indem. Co.*, 136 F.R.D. 179, 181-84 (E.D. Cal. 1991).

HPL objected on the basis of privilege, but failed to object with specificity or provide a privilege log, despite a subsequent request from the United States. This objection is waived. To

the extent that HPL does not have responsive documents at this time, HPL is reminded of its ongoing duty to supplement discovery responses as necessary.

**RFP No. 5** asked HPL to produce "[a]ll documents which you have provided to or received from any expert retained in connection with this litigation." (Doc. 177-1 at 9.)

HPL stated that it has not yet retained an expert. (*Id.*) In the motion to compel, the United States alleges that this is disingenuous because HPL listed John Barthel as a witness in advance of the October 2015 hearing (*see* Doc. 35 at 4-5) and Barthel has submitted declarations. (Doc. 177 at 9-10.) HPL responds that it is not required to designate experts until the deadline in the Scheduling Order and that it has not determined who will provide expert testimony at trial. (Doc. 189 at 9.) The United States replied that HPL is trying to have it both ways. (Doc. 192 at 7.)

The United States is wrong. HPL did not designate Barthel as an expert for trial, even though he submitted declarations for the October 2015 hearing. HPL is not required to make expert disclosures until so ordered by the Court. The United States's motion to compel as to RFP No. 5 is denied at this time.

### CALVIN PAREO

The United States propounded interrogatories to and served RFPs on Calvin on January 27, 2016. (Doc. 177 at 3.) The United States argues that Calvin's answers to Interrogatory Nos. 3, 4, 6, 7, and 15, and responses to RFP Nos. 2, 4-8, 13, 14, and 18, are deficient in various regards. The United States further argues that Calvin failed to respond to the motion to compel, which constitutes consent to grant the motion. (*See* Doc. 192.) The individual defendants, including Calvin, stated in response to the motion to compel that they would be filing a motion for a protective order (Doc. 189 at 1), and in fact did file a motion for a protective order on the same day (Doc. 190). Even if the United States were correct, any order compelling discovery

responses would be subject to any protective order. Accordingly, I consider the motion to compel and the cross-motion for a protective order.

The Defendants submitted "additional and supplemental objections to discovery" on April 22, 2016, on the basis that the Court dismissed Counts I through VIII of the Complaint. (Doc. 177-6.) Specifically, the Defendants objected to providing any further responses or documents, except to the extent that the requested discovery relates to or is relevant to the claim for relief under 7 U.S.C. § 228a. (*Id.* at 2.) I have considered this objection when ruling on each of the following matters.

In his motion for a protective order, Calvin contends that any relief under § 228a would be against HPL and not Calvin personally and that the information sought has no bearing on injunctive relief against HPL or whether Calvin must register as a dealer under the PSA. While the only defendant registered with GIPSA under the PSA is HPL, Calvin is a person "engaged in the business" of conducting or operating a stockyard, buying or selling in commerce livestock on a commission basis, and/or furnishing stockyard services. Darcie and Calvin "operated [HPL] on a day to day basis." (Doc. 88 at 6.) Calvin is a person regulated by the PSA and the grounds for injunctive relief under § 228a apply to him.

Because I find that Calvin is a person regulated by the PSA, I reject the rest of his arguments. Calvin's motion for a protective order is denied.

**<u>Interrogatory No. 3</u>** asked Calvin to "[s]tate the name and address of each educational institution or vocational school [he is or has] attended, the dates attended, the type of course(s) taken or training received, the last grade or course completed, and the name and date of any degree or certificate awarded." (Doc. 177-3 at 2.)

Calvin failed to provide the date on which he graduated from Belen High School. He will supplement his response within fourteen days from the date of entry of this Order.

**Interrogatory No. 4** asked Calvin to "[i]dentify each of [his] employers in the past [ten] years" and to provide, for each place of employment, "the full name, address, and phone number of [his] immediate supervisor, foreman, or other individual to whom [he] reported; the duties [he] performed; the compensation [he] received; the dates of employment, and the precise reason for separation, if applicable." (*Id.* at 2.)

Calvin objected to this Interrogatory on the basis of relevance after the Court's April 2016 Order. Given that Calvin is a person regulated by the PSA and participated in HPL's alleged violations of the PSA, information about his employment history and duties is relevant not only to PSA violations but also goes to his credibility. Calvin's relevancy objection is overruled.

Calvin did not otherwise object to this Interrogatory. He will provide a complete response to the Interrogatory—including the names, addresses, and phone numbers of his immediate supervisors and the duties he performed at each job, as well as the compensation he received— within fourteen days from the date of entry of this Order.

**Interrogatory No. 6 and RFP No. 2** Interrogatory No. 6 asked Calvin to "[l]ist all financial institutions with which you have or have had an account from August 5, 2010, to the present, and for each list each account number, the dates the account was opened and/or closed (if applicable), and the ending/current balance of the accounts." (*Id.* at 3.) RFP No. 2 asked Calvin to produce "[d]ocuments reflecting the receipt of any funds or other consideration or compensation from any of the other Defendants." (*Id.* at 7.)

Calvin does not appear to have objected to the Interrogatory, except on the basis of relevance in his supplemental objections, but did object to the RFP as being overly broad, unduly burdensome, irrelevant, and potentially protected by spousal privilege. (*Id.* at 7.) He then stated that he would produce responsive documents at a time and place mutually agreeable to the parties. (*Id.*)

The United States contends that this information remains relevant to the issue of HPL's solvency to the extent that Calvin may be holding HPL assets or may have commingled funds, which would extend his liability under the PSA and further affirm his status as a person regulated by the PSA.

As previously discussed, generalized objections that a discovery request is overly broad or burdensome are insufficient and are rejected for lacking specificity. *See Convertino*, 565 F. Supp. 2d at 12-13; *Pruneda*, 236 F.R.D. at 281. Furthermore, when an objection is based on privilege, the objecting party must justify its objection; a mere assertion that a document is privileged is not enough to sustain an objection. *See* FED. R. CIV. P. 26(b)(5); *Carrel*, 2011 WL 3319746, at *2. The objecting party must "describe in detail the documents or information to be protected and must provide precise reasons for the objection to discovery," typically in the form of a privilege log. *Carrel*, 2011 WL 3319746, at *2. When a party claims privilege but does not provide a privilege log, it is impossible for the court to rule on the merits of a privilege objection. Thus, blanket objections on the grounds of privilege are improper and constitute a waiver of the objection. *Eureka Fin. Corp.*, 136 F.R.D. at 181-84.

Calvin's objections are overruled. Within fourteen days from the date of entry of this Order, Calvin will provide complete responses to these discovery requests.

**Interrogatory No. 7** asked Calvin if he has ever been a party to another lawsuit, and if so, to "provide a brief description of the nature of the matter involved; the name and address of the court in which the case was filed; the style of the case, the date filed, title and docket number; the name, address, and phone number of each lawyer who represented [him]," and also for the "names, addresses, and phone numbers of all Plaintiffs and Defendants; the final disposition; and the nature of relief and/or amount of any settlement or award any of the parties received." (Doc. 177-3 at 3.)

Calvin did not object to this Interrogatory, except for his supplemental objection on the basis of relevance, but failed to provide a complete response. I agree with the United States that information regarding other lawsuits to which Calvin has been a party bears on his credibility. Accordingly, Calvin will provide a complete response to this Interrogatory within fourteen days from the date of entry of this Order.

**Interrogatory No. 15** asked Calvin to "[e]xplain [HPL's] marketing strategy(ies)." (Doc. *Id.* at 5.)

Calvin objected to the Interrogatory on the basis that it requests information not within his individual care, custody, and control. (*Id.* at 6.)  Calvin's objection to the Interrogatory is baseless. The Interrogatory asks for an answer to a question, based on his personal knowledge through having worked at HPL. The information requested is clearly relevant to HPL's alleged violations of the PSA, which gives rise to injunctive relief under 7 U.S.C. § 228a. Within fourteen days from the date of entry of this Order, Calvin will supplement his response to Interrogatory No. 15.

**RFP Nos. 4-7, and 18** In response to these RFPs, Calvin stated that the documents "will be provided at a time and place mutually agreed upon by the Parties to this matter." (*See* Doc.

177-3 at 8, 10.) Calvin did not otherwise object to producing the documents requested by these RFPs, except on the basis of relevance in his supplemental objections. As previously stated, Calvin is a person subject to the PSA and the requested information may bear on injunctive relief under 7 U.S.C. § 228a. The objection is overruled.

Calvin will fully respond to these RFPs within fourteen days of the date of entry of this Order.

**RFP No. 8** asked Calvin to produce "[a]ll documents and communications related to business [he has or has had] with Genske, Mulder & Company, LLP from August 5, 2005, to the present." (Doc. 177-3 at 8.)

Calvin objected that the request was overly broad, vague, unduly burdensome, and, in his supplemental objections, irrelevant. As to Calvin's general objections, they are overruled for reasons previously discussed. As to the relevance objection, it too is overruled: the United States presented evidence that the Pareos previously hid and restructured assets in a bankruptcy proceeding, and suggest that similar misconduct may be occurring here with respect to HPL, which then bears on HPL's solvency and other violations under the PSA. The requested information is relevant.

Calvin will fully comply with this RFP within fourteen days from the date of entry of this order.

**RFP No. 13** asked Calvin to produce "leases, subleases, contracts, mortgages, notes, and other agreements to which [he is or has] been a party, including but not limited to all related documents and communications" from August 5, 2005, to the present. (*Id.* at 9.)

Calvin objected that the request was overly broad, unduly burdensome, and irrelevant. He then answered that responsive documents are in the care of HPL. (*Id.*) Calvin's general

objections are overruled. The United States argues that property once held by the Pareos is now leased by HPL, which suggests misfeasance in accounting/reporting and may go to HPL's solvency. I agree with the United States that this request is relevant.

Calvin will comply with this RFP within fourteen days from the date of entry of this Order.

**RFP No. 14** asked Calvin to produce "inventories of all real and personal property owned/leased by and/or used by" him from August 5, 2005, to the present. (*Id.* at 9.)

Calvin responded by stating "[n]ine acres located in Arch, New Mexico." (*Id.*) I agree with the United States that this answer is unresponsive. Calvin will fully comply with this RFP within fourteen days from the date of entry of this Order.

### DARCIE PAREO

The United States propounded interrogatories to and served RFPs on Darcie on January 27, 2016. (Doc. 177 at 3.) The United States argues that Darcie's answers to Interrogatory Nos. 4, 6, 7, and 15, and responses to RFP Nos. 2, 4-8, 13, 14, 17, and 18, are deficient in various regards. The United States further argues that Darcie failed to respond to the motion to compel, which constitutes consent to grant the motion. (*See* Doc. 192.) The individual defendants, including Darcie, stated in response to the motion to compel that they would be filing a motion for a protective order (Doc. 189 at 1), and in fact did file a motion for a protective order on the same day (Doc. 190). Even if the United States were correct, any order compelling discovery responses would be subject to any protective order. Accordingly, I consider the motion to compel and the cross-motion for a protective order.

The Defendants submitted "additional and supplemental objections to discovery" on April 22, 2016, on the basis that the Court dismissed Counts I through VIII of the Complaint.

(Doc. 177-6.) Specifically, the Defendants objected to providing any further responses or documents, except to the extent that the requested discovery relates to or is relevant to the claim for relief under 7 U.S.C. § 228a. (*Id.* at 2.) I have considered this objection when ruling on each of the following matters.

In her motion for a protective order, Darcie contends that she is not a person subject to the PSA and, therefore, no discovery sought from her can be relevant to the remaining claims in the case—specifically the claim under 7 U.S.C. § 228a for injunctive relief. Darcie is incorrect. The PSA defines a stockyard owner as "any person engaged in the business of conducting or operating a stockyard" and a market agency as "any person engaged in the business of (1) buying or selling in commerce livestock on a commission basis or (2) furnishing stockyard services." 7 U.S.C. § 201(a), (d). While the only defendant registered with GIPSA under the PSA is HPL, Darcie is a person "engaged in the business" of conducting or operating a stockyard, buying or selling in commerce livestock on a commission basis, and/or furnishing stockyard services. Darcie and Calvin "operated [HPL] on a day to day basis." (Doc. 88 at 6.) Darcie is a person regulated by the PSA and the grounds for injunctive relief under § 228a apply to her.

Because I find that Darcie is a person regulated by the PSA, I reject the rest of her arguments that the United States could not obtain relevant discovery from her. Darcie's motion for a protective order is denied.

**Interrogatory No. 4** asked Darcie to "[i]dentify each of [her] employers in the past [ten] years" and, for each place of employment, to provide "the full name, address, and phone number of [her] immediate supervisor, foreman, or other individual to whom [she] reported; the duties [she] performed; the compensation [she] received; the dates of employment, and the precise reason for separation, if applicable." (Doc. 177-4 at 2.)

Darcie objected to this Interrogatory on the basis of relevance after the Court's April 2016 Order. Given that Darcie is a person regulated by the PSA and participated in HPL's alleged violations of the PSA, information about her employment history and duties is relevant not only to PSA violations but also goes to credibility. Darcie's relevancy objection is overruled.

Darcie did not otherwise object to this Interrogatory. She will provide a complete response to the Interrogatory—including the names, addresses, and phone numbers of her immediate supervisors and the duties she performed at each job, as well as the compensation she received—within fourteen days from the date of entry of this Order.

**Interrogatory No. 6 and RFP No. 2** Interrogatory No. 6 asked Darcie to "[l]ist all financial institutions with which [she has or has had] an account from August 5, 2010, to the present, and for each [account, to] list each account number, the dates the account was opened and/or closed (if applicable), and the ending/current balance of the accounts." (*Id.* at 3.) RFP No. 2 asked Darcie to produce "[d]ocuments reflecting the receipt of any funds or other consideration or compensation from any of the other Defendants." (*Id.* at 6.)

Darcie does not appear to have objected to the Interrogatory, except on the basis of relevance in her supplemental objections, but did object to the RFP as being overly broad, unduly burdensome, irrelevant, and potentially protected by spousal privilege. (*Id.* at 6.) She then stated that she would produce responsive documents at a time and place mutually agreeable to the parties. (*Id.*)

The United States contends that this information remains relevant to the issue of HPL's solvency to the extent that Darcie may be holding HPL assets or may have commingled funds, which would extend her liability under the PSA and further affirm her status as a person regulated by the PSA.

22

As previously discussed, generalized objections that a discovery request is overly broad or burdensome are insufficient and are rejected for lacking specificity. *See Convertino*, 565 F. Supp. 2d at 12-13; *Pruneda*, 236 F.R.D. at 281. Furthermore, when an objection is based on privilege, the objecting party must justify its objection; a mere assertion that a document is privileged is not enough to sustain an objection. *See* FED. R. CIV. P. 26(b)(5); *Carrel*, 2011 WL 3319746, at *2. The objecting party must "describe in detail the documents or information to be protected and must provide precise reasons for the objection to discovery," typically in the form of a privilege log. *Carrel*, 2011 WL 3319746, at *2. When a party claims privilege but does not provide a privilege log, it is impossible for the court to rule on the merits of a privilege objection. Thus, blanket objections on the grounds of privilege are improper and constitute a waiver of the objection. *Eureka Fin. Corp.*, 136 F.R.D. at 181-84.

Darcie's objections are overruled. Within fourteen days from the date of entry of this Order, Darcie will provide complete responses to these discovery requests.

**Interrogatory No. 7** asked Darcie if she has ever been a party to another lawsuit, and if so, to "provide a brief description of the nature of the matter involved; the name and address of the court in which the case was filed; the style of the case, the date filed, title and docket number; the name, address, and phone number of each lawyer who represented [her]," and also for the "names, addresses, and phone numbers of all Plaintiffs and Defendants; the final disposition; and the nature of relief and/or amount of any settlement or award any of the parties received." (Doc. 177-4 at 3.)

Darcie did not object to this Interrogatory, except for her supplemental objection on the basis of relevance, but failed to provide a complete response. I agree with the United States that information regarding other lawsuits to which Darcie has been a party bears on her credibility.

Accordingly, Darcie will provide a complete response to this Interrogatory within fourteen days from the date of entry of this Order.

**Interrogatory No. 15 and RFP. No. 17** Interrogatory No. 15 asked Darcie to "[e]xplain [HPL's] marketing strategy(ies)." (*Id.* at 5.) RFP No. 17 asked Darcie to produce "[d]ocuments and communications related to [HPL's] marketing strategy(ies)." (*Id.* at 9.)

Darcie objected to the Interrogatory on the basis that it requests information not within her individual care, custody, and control. (*Id.* at 5.) She did not object to the RFP, but responded that she does not have any responsive documents. (*Id.* at 9.)

Darcie's objection to the Interrogatory is baseless. The Interrogatory asks for an answer to a question, based on her personal knowledge through having worked at HPL and having served as HPL's secretary. The information requested is clearly relevant to HPL's alleged violations of the PSA, which gives rise to injunctive relief under 7 U.S.C. § 228a. Within fourteen days from the date of entry of this Order, Darcie will supplement her response to Interrogatory No. 15.

As to RFP No. 17, the United States contends that Darcie has custody and control of these documents in her capacity as HPL's secretary. (Doc. 177 at 17.) I am not persuaded by this argument—documents within Darcie's custody and control as HPL's secretary should be turned over by HPL. To the extent that Darcie has any other documents responsive to this RFP, or has reason to believe that HPL did not turn over all responsive documents, Darcie will comply with this RFP within fourteen days from the date of entry of this Order. To the extent that Darcie does not have any responsive documents, she will re-certify the same within fourteen days from the date of entry of this Order.

**RFP Nos. 4-7, and 18** In response to these RFPs, Darcie stated that the documents "will be provided at a time and place mutually agreed upon by the Parties to this matter." (*See* Doc. 177-4 at 7, 9.) Darcie did not otherwise object to producing the documents requested by these RFPs, except on the basis of relevance in her supplemental objections. As previously stated, Darcie is a person subject to the PSA and the requested information may bear on injunctive relief under 7 U.S.C. § 228a. The objection is overruled.

Darcie will fully respond to these RFPs within fourteen days of the date of entry of this Order.

**RFP No. 8** asked Darcie to produce "[a]ll documents and communications related to business [she has or has had] with Genske, Mulder & Company, LLP from August 5, 2005, to the present." (Doc. 177-4 at 7.)

Darcie objected that the request was overly broad, vague, unduly burdensome, and, in her supplemental objections, irrelevant. As to Darcie's general objections, they are overruled for reasons previously discussed. As to the relevance objection, it too is overruled: the United States presented evidence that the Pareos previously hid and restructured assets in a bankruptcy proceeding, and suggest that similar misconduct may be occurring here with respect to HPL, which then bears on HPL's solvency and other violations under the PSA. The requested information is relevant.

Darcie will fully comply with this RFP within fourteen days from the date of entry of this order.

**RFP No. 13** asked Darcie to produce "leases, subleases, contracts, mortgages, notes, and other agreements to which [she is or has been] a party, including but not limited to all related documents and communications," from August 5, 2005, to the present. (*Id.* at 8.)

25

Darcie objected that the request was overly broad, unduly burdensome, and irrelevant. She then answered that responsive documents are in the care of HPL. (*Id.*) Darcie's general objections are overruled. The United States argues that property once held by the Pareos is now leased by HPL, which suggests misfeasance in accounting/reporting and may go to HPL's solvency. I agree with the United States that this request is relevant.

Darcie will comply with this RFP within fourteen days from the date of entry of this Order.

**RFP No. 14** asked Darcie to produce "inventories of all real and personal property owned/leased by and/or used by" her from August 5, 2005, to the present. (Doc. 177-4 at 8.)

Darcie responded by stating "[n]ine acres located in Arch, New Mexico." (*Id.*) I agree with the United States that this answer is unresponsive. Darcie will fully comply with this RFP within fourteen days from the date of entry of this Order.

### MICHAEL FLEN

The United States propounded interrogatories to and served RFPs on Michael Flen on January 27, 2016. (Doc. 177 at 3.) The United States argues that Flen's answers to Interrogatory Nos. 4, 7, and 15, and responses to RFP Nos. 4, 5, 8-15, and 17,[3] are deficient in various regards. The United States further argues that Flen failed to respond to the motion to compel, which constitutes consent to grant the motion. (*See* Doc. 192.) The individual defendants, including Flen, stated in response to the motion to compel that they would be filing a motion for a protective order (Doc. 189 at 1), and in fact did file a motion for a protective order on the same day (Doc. 190). Even if the United States were correct, any order compelling discovery

---

[3] At the end of its motion to compel, the United States requests an Order compelling a response to RFP No. 18, but presented no argument on this point nor otherwise addressed RFP No. 18 in the briefing. I presume this was a typographical error because Flen certified that he has no documents responsive to RFP No. 18. (Doc. 177-5 at 9.)

responses would be subject to any protective order. Accordingly, I consider the motion to compel and the cross-motion for a protective order.

The Defendants submitted "additional and supplemental objections to discovery" on April 22, 2016, on the basis that the Court dismissed Counts I through VIII of the Complaint. (Doc. 177-6.) Specifically, the Defendants objected to providing any further responses or documents, except to the extent that the requested discovery relates to or is relevant to the claim for relief under 7 U.S.C. § 228a. (*Id.* at 2.) I have considered this objection when ruling on each of the following matters.

In his motion for a protective order, Flen contends that he is not a person subject to the PSA and, therefore, no discovery sought from him can be relevant to the remaining claims in the case—specifically the claim under 7 U.S.C. § 228a for injunctive relief. Flen is incorrect. The PSA defines a stockyard owner as "any person engaged in the business of conducting or operating a stockyard" and a market agency as "any person engaged in the business of (1) buying or selling in commerce livestock on a commission basis or (2) furnishing stockyard services." 7 U.S.C. § 201(a), (d). While the only defendant registered with GIPSA under the PSA is HPL, Flen is a person "engaged in the business" of conducting or operating a stockyard, buying or selling in commerce livestock on a commission basis, and/or furnishing stockyard services. Flen, as the owner of HPL, "allowed the Pareos to manage the day to day operations of [HPL]." (Doc. 88 at 6.) Flen is a person regulated by the PSA and the grounds for injunctive relief under § 228a apply to him.

Because I find that Flen is a person regulated by the PSA, I reject the rest of his arguments that the United States could not obtain relevant discovery from him. Flen's motion for a protective order is denied.

**Interrogatory No. 4** asked Flen to "[i]dentify each of [his] employers in the past [ten] years" and to provide, for each place of employment, "the full name, address, and phone number of [his] immediate supervisor, foreman, or other individual to whom [he] reported; the duties [he] performed; the compensation [he] received; the dates of employment, and the precise reason for separation, if applicable." (Doc. 177-5 at 2.)

Flen answered that he has been self-employed for the past ten years, but did not provide information related to the duties he has performed and the compensation received. Flen will provide a complete response to this Interrogatory within fourteen days from the date of entry of this Order.

**Interrogatory No. 7** asked Flen if he has ever been a party to another lawsuit, and if so, to "provide a brief description of the nature of the matter involved; the name and address of the court in which the case was filed; the style of the case, the date filed, title and docket number; the name, address, and phone number of each lawyer who represented [him]," and also for the "names, addresses, and phone numbers of all Plaintiffs and Defendants; the final disposition; and the nature of relief and/or amount of any settlement or award any of the parties received." (Doc. 177-5 at 3.)

Flen did not object to this Interrogatory, except for his supplemental objection on the basis of relevance, but failed to provide a complete response. I agree with the United States that information regarding other lawsuits to which Flen has been a party bears on his credibility. Accordingly, Flen will provide a complete response to this Interrogatory within fourteen days from the date of entry of this Order.

**Interrogatory No. 15** asked Flen to "[e]xplain [HPL's] marketing strategy(ies)." (*Id.* at 5.)

The United States contends that Flen's answer is non-responsive. Flen stated that he does not "have involvement in the management or day-to-day operations of [HPL] and [does] not have any direct involvement in developing or implementing marketing strategies." (*Id.*) While somewhat evasive, I take Flen's response to mean that he has no personal knowledge of HPL's marketing strategies. If this interpretation is correct, Flen will so certify, in writing and under oath. If this is incorrect, Flen will provide a complete response to the Interrogatory. In either case, Flen will respond within fourteen days from the date of entry of this Order.

**RFP Nos. 4 and 5**   In response to these RFPs, Flen stated that the documents "will be provided at a time and place mutually agreed upon by the Parties to this matter." (*Id.* at 6.) Flen did not otherwise object to producing the documents requested by these RFPs, except on the basis of relevance in his supplemental objections. As previously stated, Flen is a person subject to the PSA and the requested information may bear on injunctive relief under 7 U.S.C. § 228a. The objection is overruled.

Flen will fully respond to these RFPs within fourteen days of the date of entry of this Order.

**RFP Nos. 8-12**   RFP. No. 8 asked Flen to produce "[a]ll documents and communications related to business [he has or has had] with Genske, Mulder & Company, LLP from August 5, 2005, to the present." (*Id.* at 7.) RFP No. 9 asked Flen to produce "[a]ll documents and communications related to business [he has or has had] with Eastview Development, LLC from August 5, 2005, to the present." (*Id.*) The United States did not include the text of RFP Nos. 10, 11, and 12, or Flen's responses thereto in the attachments, but notes in its motion that RFP No. 10 relates to Flen's business with Wakanama Investors, RFP No. 11 relates to Flen's business

with Peter Belezzuoli, and RFP No. 12 relates to Flen's business with Rosario Villagran. (Doc. 177 at 18.)

Flen does not appear to have objected to any of these requests, except on the basis of relevance in his supplemental objections, but stated that any responsive documents are in the custody and control of HPL. I overrule Flen's relevance objection because he is a person subject to the PSA and this information may bear on HPL's solvency. Flen's answer to these RFPs is non-responsive. Within fourteen days from the date of entry of this Order, Flen will either produce all responsive documents about his business with these entities, or he will certify that there are no responsive documents regarding his personal business dealings with these entities.

**RFP No. 13** asked Flen to produce "leases, subleases, contracts, mortgages, notes, and other agreements to which [he is or has been] a party, including but not limited to all related documents and communications," from August 5, 2005, to the present." (Doc. 177-5 at 8.)

Flen objected to the RFP as being overly broad, unduly burdensome, and unlikely to lead to the discovery of relevant information. He then stated that information related to HPL would be in HPL's files and disclosures. (*Id.*) While I agree with Flen that documents related to HPL should be produced by HPL, this contention fails to address the thrust of the request. The United States seeks information about Flen's personal business dealings to support their argument that HPL is inappropriately storing assets with the individual defendants, rendering HPL insolvent. The requested documents are relevant.

Flen will fully respond to this RFP within fourteen days from the date of entry of this Order.

**RFP No. 14** asked Flen to produce "inventories of all real and personal property owned/leased by and/or used by" him from August 5, 2005, to the present. (Doc. 177-5 at 8.)

30

Flen responded by listing an address in Portales, New Mexico, and stating "1/4 section land located in Arch, New Mexico." (*Id.*) I agree with the United States that this answer is unresponsive. Flen will fully comply with this RFP within fourteen days from the date of entry of this Order.

**RFP No. 15** asked Flen to produce "[d]ocuments reflecting any businesses or other entities in which [he has] invested from August 5, 2005, to the present." (*Id.*)

Flen objected to the RFP as being overly broad, unduly burdensome, and unlikely to lead to the discovery of relevant information. He then referred to his responses to Interrogatory Nos. 5 and 13. The United States argues that it seeks to determine whether the individual defendants are funneling money into or out of HPL, which would bear on HPL's solvency under the PSA. The requested documents are relevant and Flen's objections are overruled.

Flen will fully respond to this RFP within fourteen days from the date of entry of this Order.

**RFP No. 17** asked Flen to produce "[d]ocuments and communications related to [HPL's] marketing strategy(ies)." (*Id.* at 9.)

Flen responded that he does not have documents responsive to this request. The United States argues that he must have responsive documents because he is the sole owner of HPL. However, I presume that Flen and his attorneys are cognizant of their obligations under Rule 11 and have no reason to believe that Flen is attempting to mislead the Court or the United States. To the extent that Flen discovers responsive documents, he must, of course, supplement his response. The United States's motion to compel on this RFP is denied.

## CONCLUSION

As explained herein, I grant-in-part and deny-in-part the United States's motion to compel, and deny the Individual Defendants' motion for a protective order. To the extent that I have granted the motion to compel, the Defendants will tender full and complete discovery responses within fourteen days from the date of entry of this Order.

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.