IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

v.                     No. 15-CV-680 MCA/WPL

HIGH PLAINS LIVESTOCK, dba
PRODUCERS LIVESTOCK AUCTION,
MICHAEL FLEN, CALVIN PAREO,
and DARCIE PAREO,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the United States' *Motion for a Preliminary Injunction to Enjoin Defendants from Violating the Packers and Stockyards Act and Memorandum in Support* [Doc. 7] and the *United States' Motion for Appointment of Receiver and/or Co-Special Master or Preliminary Injunctive Relief* [Doc. 153]. The Court previously granted both motions for the reasons set forth in the Court's March 31, 2017 *Memorandum Opinion and Order* [Doc. 296]. Therein, the Court allowed the parties to submit additional briefing,[1] which has now been submitted. [Doc. 302; Doc. 303; Doc. 305] The Court also held a status conference and invited the parties to submit proposed instructions to the co-special master. [Doc. 231 (transcript), p. 58, 67, 69] The parties have done so. [Doc. 322; Doc. 323] In addition, the parties have filed the

---

[1] The Court allowed the parties to submit: "1) A list of potential Co-Special Masters along with their letters of interest;" "2) A joint report as to the status of the proceedings before the Agency[;]" and "3) Any position based on this Court's action on the Special Master's Reports, pursuant to Federal Rule of Civil Procedure 53(f)."

following motions: Defendants' *Motion to Strike Docs. 303, 303-1 to 303-9 and 305* [Doc. 308]; Defendants' *Motion to Postpone Appointment of Co-Special Master* [Doc. 309]; and *The United States' Motion to File a Sur-Reply* [Doc. 330]. This *Memorandum Opinion and Order* addresses all of the above submissions, that is, motions and briefs filed after March 31, 2017 regarding the appointment of a co-special master. The Court has considered the submissions, the relevant law, and is fully advised in the premises.

**BACKGROUND**

Early in this case, the Court appointed Gayland Cowen as Special Master to oversee, monitor, and report concerning the activities of High Plains Livestock (HPL). [Doc. 104, pp. 2-3, ¶ 2] As set forth in the Court's *Memorandum Opinion and Order* entered on March 31, 2017 [Doc. 296], though Mr. Cowen's reports "leave many questions and are not presented in a manner which allows a quick or easy determination of whether Defendants are operating while insolvent," the information in Mr. Cowen's reports is sufficient to raise a serious question regarding the continued solvency of HPL. [Doc. 296, p. 34] The Court further concluded that "the status quo is insufficient to protect the cattle sellers doing business with Defendants, Defendants' creditors, and the livestock market as a whole." [Doc. 296, p. 35] After considering several alternatives proposed by the Government, the Court ordered that Mr. Cowen continue his duties as Special Master, and the Court added a new duty for Mr. Cowen: to randomly contact 20% of the cattle sellers each month to determine whether they are receiving their proceeds from Defendants in a timely fashion. [Doc. 296, p. 35] Furthermore, the Court stated it would appoint a co-special master "for the purposes of a) conducting a

viability/solvency analysis of HPL, and, if HPL is not solvent b) proposing a plan to wind down HPL." [Doc. 296, p. 35] Thus, the Court granted the United States' *Motion for a Preliminary Injunction to Enjoin Defendants from Violating the Packers and Stockyards Act and Memorandum in Support* [Doc. 7] and the *United States' Motion for Appointment of Receiver and/or Co-Special Master or Preliminary Injunctive Relief* [Doc. 153].

In its March 31, 2017 *Memorandum Opinion and Order*, the Court invited the parties to file additional briefing regarding the Court's reliance on the Special Master's reports thus far, selecting a co-special master, and proposed instructions to the co-special master. As requested by the Court, by email dated April 14, 2017, the United States submitted a letter from Johnson, Miller & Co. expressing interest in the co-special master appointment, along with curricula vitae for three accountants from the firm who would work together to conduct the viability analysis of HPL. Also by email dated April 14, 2017, Defendants submitted letters of interest of two separate potential co-special masters, H. Myrle Schwalm and Pamela A. Rice. The parties also submitted a *Joint Report as to Status of Administrative Proceeding*. [Doc. 301] Therein, the parties informed the Court that the Administrative Law Judge entered an Exchange Order, that both parties have submitted initial witness and exhibit lists, and that expert reports had not yet been exchanged. [Doc. 301]

Defendants submitted a *Response to Memorandum Opinion and Order (Doc. 296) in Regard to FRCP 53(f)* (hereafter, Defendants' Rule 53 Brief). [Doc. 302] Therein, Defendants made three alternative requests: 1) that "Mr. Cowen should be provided the opportunity to answer the Court's questions and concerns, either through a written report

3

submitted to the Court or at a hearing" [Doc. 302, p. 2]; 2) that, if a co-special master is appointed, "the Parties be allowed to submit proposals for the parameters of the review by the co-special master" [Doc. 302, pp. 2-3]; and 3) that, if a co-special master is appointed, the parties be given notice and an opportunity to respond prior to the Court acting on the Special Master's report, consistent with Rule 53(f). [Doc. 302, p. 3]

The United States submitted *The United States' Position Based on the Court's Action on the Special Master's Reports Pursuant to Federal Rule of Civil Procedure 53(f)* (hereafter, the United States' Rule 53 Brief). [Doc. 303] Therein, the United States "agree[d] with the Court that a co-special master should be appointed for the purpose of conducting a viability/solvency analysis of HPL." [Doc. 303, p. 7] The United States expressed concern that "HPL has destroyed documents that are required to establish whether HPL is solvent." [Doc. 303, p. 7] Accordingly, the United States requested that the co-special master establish a plan to wind down HPL "if the co-special master cannot establish HPL's solvency with reasonable certainty." [Doc. 303, p. 7] The United States also requested that the Court appoint someone experienced in forensic accounting and that the "Court order Defendants to provide the co-special master with unfettered access to the HPL facility and all of HPL's books, records, accounting software, financial accounts, and assets." [Doc. 303, p. 8] Finally, the "United States continues to question the impartiality of Special Master Cowen." [Doc. 303, p. 4] The United States presented several arguments and attached numerous documents supporting this position, including a *Preliminary Report of Edward R. Street, CPA/ABV/CFF/CVA, ASA* [Doc. 307] and a *Declaration of Nancy Speer*, a "Senior Auditor with the U.S. Department of Agriculture

Grain Inspection Packers & Stockyards Administration" [Doc. 305]. [Doc. 303-1 to Doc. 303-303-9; Doc. 305]

In response to the United States' Rule 53 Brief [Doc. 303], Defendants filed a *Motion to Strike Docs 303, 301-1 to 303-9 and 305*. [Doc. 308] Defendants argued that the Court did not "request that the Parties provide their position on the Court's action," and that the United States' filing is "an improper post-decisional filing of additional evidence and argument." [Doc. 308, p. 3] Defendants argued that the United States' arguments are beyond what Rule 53(f) allows in response to a special master's report. [Doc. 308, p. 5] Defendants further argued that the United States' submission of documentation, including the report of a GSA Auditor and the report of an expert, were inappropriate and prejudicial because Defendants do not have an opportunity to respond and the expert report was not disclosed in compliance with the deadline for expert disclosures by the United States. [Doc. 308, pp. 10-13] Finally, Defendants argued that the reports are speculative, unreliable and based on incomplete or possibly inaccurate information. [Doc. 308, pp. 8-11]

The United States responded, submitting that it properly set forth its "position that the Special Master reports, upon which the Court relied in issuing its March 31, 2017 Memorandum Opinion and Order, are unreliable, and [the United States] offers evidence to support its position." [Doc. 329, p. 1] The United States points out that Rule 53(f) allows the Court to receive evidence in reviewing *de novo* all factual findings and legal conclusions made by a special master. [Doc. 329, p. 2] The United States argued: "[b]ecause the Special Master's reports, as well as the rest of Defendants' financial and

5

other records, are unreliable, the United States requested the Court to give the Co-Special Master the authority to test Defendants' financial records." [Doc. 329, p. 3] The United States submitted that Ms. Speer's and Mr. Street's opinions are not speculative and are admissible. [Doc. 329, pp. 4-6] The United States also argued that it timely and properly disclosed its experts' testimony, and it attached its expert disclosures made on March 30, 2017 as evidence thereof. [Doc. 329, p. 7; Doc. 329-2]

Defendants also filed a *Motion to Postpone Appointment of Co-Special Master.* [Doc. 309] Defendants noted that a hearing on the merits in the administrative proceeding related to this case is set for September 11 to 22, 2017, and that, "[o]nce the administrative proceeding is concluded, the Court's jurisdiction to impose temporary injunctive relief under §228a will end." [Doc. 309, p. 3] Thus, Defendants argued that "it is very possible that proceedings relating to the Co-Special Master would not be concluded prior to the conclusion of the administrative proceedings, at which time the Court would no longer have jurisdiction to take any action on a report or recommendation by the Co-Special Master." [Doc. 309, p. 4] Defendants argued that it is not a good use of the Court's or the parties' time and resources to appoint a co-special master because there is already a Special Master in place, no customers have complained that they have not been paid, there have been no claims on HPL's bond, and HPL's creditors have not brought any complaints. [Doc. 309, p. 4]

The United States responded to Defendants' *Motion to Postpone Appointment of Co-Special Master* by arguing that, "[w]hen the purpose of section 228a is to obtain interim relief until the Secretary's order has become final, it is nonsensical to stay that

very relief until the Secretary's order becomes final." [Doc. 320, p. 1] The United States pointed to the many reasons it had already raised to show the need for additional relief: the United States' claim that Defendants have defrauded cattle sellers of over $2.7 million; the financial reports indicate that Defendants are operating while insolvent; and the large number of cattle sellers with whom Defendants conduct business who are at risk if Defendants' business fails. [Doc. 320, p. 2] Defendants replied by arguing that the relief requested by the United States, specifically, winding down HPL's operations, would be permanent and the most severe form of relief potentially granted by the ALJ, and, therefore, granting such relief is a "decision [which] should be made by the ALJ as part of the administrative case." [Doc. 326, p. 3] Defendants further argued that the parties may settle or, at a hearing, the ALJ may fashion a remedy other than suspending or terminating HPL's operations. [Doc. 326, p. 3] Defendants disputed the United States' arguments that HPL is a threat to the livestock industry or insolvent and that Defendants have defrauded cattle sellers of $2.7 million. [Doc. 326, pp. 4-9] Defendants also challenged the declaration of Mr. Prather as incorrect and inappropriate given the ongoing proceedings, calling the affidavit "nothing more than a self-serving, seemingly sham affidavit," which Defendants assert does not represent the position of GIPSA. [Doc. 326, p. 9] Defendants submitted a letter written by defense counsel to Mr. Gordy, general counsel for GIPSA, summarizing defense counsel's conversations with Mr. Gordy and submitting that, based on his understanding of his conversation with Mr. Gordy, Mr. Prather's statements are "misleading and inaccurate." [Doc. 326, pp. 26-27]

This letter is dated May 10, 2017, and Defendants' filed their Reply May 11, 2017. [Doc. 326]

The United States filed a *Motion to File a Sur-Reply* [Doc. 330] to Defendants' reply regarding Defendants' *Motion to Postpone Appointment of Co-Special Master*. The United States submits that Mr. Gordy responded to defense counsel's email of May 10, 2017 prior to Defendants filing their Reply. [Doc. 330, ¶ 10] The United States attached its proposed sur-reply, its GIPSA Complaint, and Mr. Gordy's email response to Defendants' Counsel. [Doc. 303-1, 303-3] In his email, Mr. Gordy stated that he did not believe that any of Mr. Prather's statements were inaccurate and that GIPSA will seek over $2.5 million dollars in civil penalties and a ten-year suspension if the administrative case proceeds to a hearing. [Doc. 330-3, p. 1] Mr. Gordy also stated that defense counsel had indicated that it would be impossible for the Defendants to remit the full amount allegedly due to the sellers, which Mr. Gordy states, he had previously told defense counsel was the main method for reducing civil penalties. [Doc. 330-3, p. 1] Accordingly, the United States argued, settlement was unlikely. [Doc. 330, ¶ 6] Defendants responded, requesting this Court to decline to allow the Sur-Reply, which Defendants state "is nothing more than an effort to correct glaring deficiencies in Mr. Prather's declaration." [Doc. 338, p. 2] Defendants did not address the statements within Mr. Gordy's email, but instead attacked Mr. Prather's declaration, particularly his statements regarding the likelihood of settlement and how long the GIPSA proceeding may take, as not based on personal knowledge and violative of Federal Rules of Evidence 701, 702, 703, 802, 403, 408. [Doc. 338] The United States replied, arguing that its sur-

reply was necessary to address Defendants' "unsubstantiated allegations and the omission of material information." [Doc. 341, p. 2]

While the briefing discussed above was being submitted, the Court held a status conference, at which Mr. Cowen was present, during which the Court addressed both concerns raised by Mr. Cowen and some of the matters raised by the briefs to that point. Based on a letter received from Mr. Cowen the Court clarified his duties going forward as Special Master. [Doc. 321, pp. 9-11] The Court addressed a document entitled "Accountant's Compilation Report," which had been the subject of briefing, particularly by the United States. [Doc. 321, pp. 11-12] The Court asked Mr. Cowen to explain a paragraph which stated that the owners have elected to omit substantially all of the disclosures ordinarily included in financial statements prepared in accordance with the income tax basis of accounting. [Doc. 321, pp. 11-13] Mr. Cowen explained that this statement means that his reports did not contain "any notes there consisting of the method of accounting that was used to arrive at these figures." [Doc. 321, p. 12] The Court also asked Mr. Cowen to explain the statement in the Accountant's Compilation Report that: "If the omitted disclosures were included in the financial statements, they might influence the user's conclusions about the company's assets, liabilities, equity, revenues, and expenses." [Doc. 321, p. 15] Mr. Cowen answered that this statement means that the disclosure statements were omitted because the information in the report is not audited and he therefore assigned no assurances to the statements therein. [Doc. 321, p. 15] With the agreement of the parties, the Court ordered Mr. Cowen to provide the disclosure statements for all reports he has provided thus far. [Doc. 321, pp. 34-36] The Court

finally asked Mr. Cowen to explain the statement in the Accountant's Compilation Report which stated: "We are not independent with respect to High Plains Livestock, L.L.C." [Doc. 321, p. 16] Mr. Cowen explained that the statement is a term of art, required for purposes of peer review by the New Mexico Accounting Board, and it reflects the fact that he does not need to call his "client" when reconciling amounts and making journal entries. [Doc. 321, pp. 16-17]

The Court addressed a concern Mr. Cowen raised about instructions given to him in the Court's March 31, 2017 *Memorandum Opinion and Order*. The Court ordered that Mr. Cowen "randomly inquire, each month, with 20% of the sellers with whom Defendants did business that month to determine that the sellers are receiving their proceeds within the deadlines required by the PSA and GIPSA regulations, or their credit agreement (if any)." [Doc. 296, p. 35] Mr. Cowen indicated that no one person he might contact at a business, such as the dairyman, the herdsman, or the bookkeeper, would have all of the relevant information. [Doc. 321, p. 75] Therefore, Mr. Cowen proposed that HPL bring the checks to his office and he or his staff would log the checks and mail them, to ensure that the checks were mailed within the period required. [Doc. 321, p. 75] The parties agreed to this solution. [Doc. 321, pp. 78-81] As to the approximately four dairies who pick up their checks rather than receive them in the mail, Defendants proposed to list those dairies, limit that method to those dairies, and provide copies of the documents regarding those sales to Mr. Cowen immediately. [Doc. 321, p. 80]

In addition, Mr. Cowen sought guidance from the Court as to the proper method of communication, particularly between counsel and himself as well as between himself and the Court. [Doc. 321, pp. 76-77]

Mr. Cowen also explained that he revised the December, 2016 and January, 2017 financial statements based on the sale of some corn that was an asset which was not previously represented on Mr. Cowen's reports, the sale of some sorghum, a wheatlage crop, and other matters he "cleaned up," and the value of those crops and assets were discussed. [Doc. 321, pp. 19-23, 36-50] Mr. Cowen also discussed an annual report submitted to GIPSA, stating that there is a difference between his reports and the GIPSA report because Mr. Cowen reports the lease agreement as an operating lease while the GIPSA report, which he did not prepare, shows the lease as a capital lease. [Doc. 321, pp. 24-25, 44-45]

The Court asked Mr. Cowen to leave the room so the Court could take up other matters with the parties. The Court informed the parties that the Court would appoint Johnson, Miller & Co. (JM&C) as the co-special master. [Doc. 321, pp. 58-59] The United States stated it would take 90 to 120 days for JM&C to complete an evaluation of HPL. [Doc. 321, p. 84] The parties presented argument to the Court regarding whether the Court should postpone the appointment of the co-special master until after the trial before the administrative law judge. [Doc. 321, pp. 58-67] Defendants argued that if any evaluation occurred, that it should not include the period of time prior to Mr. Cowen's appointment. [Doc. 321, pp. 67-69] The Court asked the parties to submit proposed instructions for the co-special master. [Doc. 321, p. 67] The parties could not agree on

the proposed instructions, and thus submitted separate proposals, which are discussed in detail below.

**ANALYSIS**

### *Defendants' Motion to Postpone Appointment of Co-Special Master* **[Doc. 309]**

Defendants ask the Court to postpone appointment of a co-special master because:

> it is very possible that proceedings relating to the Co-Special Master would not be concluded prior to the conclusion of the administrative proceedings, at which time the Court would no longer have jurisdiction to take any action on a report or recommendation by the Co-Special Master.

[Doc. 309, p. 4] Defendants argue that "it would not be a good use of the Court's, the Parties' or the Co-Special Master's time, money or resources to implement injunctive relief over which the Court may no longer have jurisdiction by December 31, 2017." [Doc. 309, p. 4]

The only remaining cause of action is the United States' request for injunctive relief as allowed by 7 U.S.C. § 228a. To the extent the Court has the authority to grant injunctive relief, including the appointment of a co-special master, the relief must be consistent with the text and purpose of Section 228a. Likewise, in deciding Defendants' request to postpone the appointment of a co-special master, the analysis must begin with Section 228a. *See United States v. Sprenger*, 625 F.3d 1305, 1307 (10th Cir. 2010) ("Our interpretation of a statute begins with its plain language. If the terms of the statute are clear and unambiguous, the inquiry ends and we simply give effect to the plain language of the statute." (Internal quotation marks and citation omitted)).

As relevant, Section 228a states:

Whenever the Secretary has reason to believe that any person subject to this chapter (a) with respect to any transactions subject to this chapter, has failed to pay or is unable to pay for livestock . . . or has failed to remit to the person entitled thereto the net proceeds from the sale of any such commodity sold on a commission basis; or (b) has operated while insolvent, or otherwise in violation of this chapter in a manner which may reasonably be expected to cause irreparable damage to another person; . . . and that it would be in the public interest to enjoin such person from operating subject to this chapter or enjoin him from operating subject to this chapter except under such conditions as would protect vendors or consignors of such commodities or other affected persons, *until a complaint under this chapter is issued and dismissed by the Secretary or until an order to cease and desist made thereon by the Secretary has become final and effective within the meaning of this chapter or is set aside on appellate review of the Secretary's order*, the Secretary may notify the Attorney General, who may apply to the United States district court for the district in which such person has his principal place of business or in which he resides for a temporary injunction or restraining order. When needed to effectuate the purposes of this section, the court shall, upon a proper showing, issue a temporary injunction or restraining order, without bond.

*Id.* (Emphasis added).

Given the plain language of Section 228a, the district must consider granting interim relief while proceedings are on-going, including proceedings before the Secretary and any "appellate review."  Even though, as Defendants argue, the administrative hearing may occur even before this Court can consider the interim relief, a decision from the Secretary may not be immediate and appellate review may prolong such proceedings. Accordingly, it would be improper for this Court to refuse to consider granting relief under Section 228a simply due to the potential timing of the hearings.  Thus, for the reasons set forth in the Court's March 31, 2017 *Memorandum Opinion and Order* [Doc. 296, pp. 28-32], the necessity of protecting the livestock market outweighs the harm to the Court, Parties' and co-special master's time, money and resources.  And, while

winding down Defendants' business is a severe interim remedy, it is contemplated by Section 228a, which allows the court to "enjoin [a] person from operating subject to this chapter." Accordingly, the Court will not delay appointment of a co-special master, and the Court **DENIES** Defendants' *Motion to Postpone Appointment of Co-Special Master* [Doc. 309].

As to the issue of whether to allow the United States to file a sur-reply to Defendants' motion [Doc. 330], the United States had grounds to request one. *See Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) ("Generally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply."). The issue in dispute, spurring the United States to request to file a sur-reply, was the accuracy of Mr. Prather's Declaration, particularly with regard to the likelihood of settlement.[2] [Doc. 330, ¶¶ 4-11] Defendants attached to their reply brief a letter from defense counsel to GIPSA's general counsel, Mr. Gordy, describing defense counsel's understanding of settlement possibilities and positing that based on this understanding, Mr. Prather's statements regarding settlement possibilities were incorrect. [Doc. 326, pp. 26-27] Thus, the United States was justified in requesting a sur-reply to ensure that the Court had all of the proper information before it, specifically, Mr. Gordy's email response, sent before Defendants filed their Reply, demonstrating that settlement

---

[2] Though the Court grants the *Motion*, the Court finds it more than sufficient to rely on the representation by counsel for the United States that settlement was not likely. [Doc. 320, p. 3] Though different counsel represents the United States in this action than in the administrative proceeding, the Court would not presume that the United States would take different positions in these two related cases. Thus, Defendants' Reply brief and defense counsel's letter to Mr. Gordy were far from persuasive and not significant to the Court's analysis.

was, in fact, unlikely.  [Doc. 330-3]   Accordingly, the Court **GRANTS** *The United States' Motion to File a Sur-reply* [Doc. 330].

### *Defendants' Motion to Strike Docs. 303, 301-1 to 303-9 and 305* [**Doc. 308**]

Motions, briefs, and memoranda generally may not be attacked by a Rule 12(g) motion to strike because they do not fall under the definition of "pleadings" in Federal Rule of Civil Procedure 7(a).  *Carrasco v. New Mexico Dep't of Workforce Solutions*, 2013 WL 12092509, *4 (D.N.M. 2013).  However, where filings do not comply with the Rules of Civil Procedure or Local Rules, it is "well within the discretion of the district court to strike them."  *In re Hopkins*, 1998 WL 704710, *3 n.6 (10th Cir. 1998) (unpublished decision).  Defendants argue that the United States' *Position Based on the Court's Action on the Special Master's Reports Pursuant to Federal Rule of Civil Procedure 53(f)* is 8 pages long with 76 pages of exhibits attached.  [Doc. 308, p. 2] Defendants also argue that the Brief goes beyond the response allowed pursuant to Rule 53(f).  [Doc. 308, p. 5-7]

The exhibits attached by the United States exceed the page limit allowed by District of New Mexico, Local Rule of Civil Procedure 10.5, and the United States did not file a motion for an extension of the page limit.  Exercising its discretion, the Court declines to strike the filing, and instead admonishes the United States to observe the Local Rules, including Rule 10.5.

As to Defendants' argument that the United States' brief addresses matters beyond the limits of Rule 53(f), the Court does not agree.  Rule 53(f)(2) allows "objections to--or a motion to adopt or modify--the master's order, report, or recommendations."  In the

circumstances of this case, the parties should be given a broad opportunity to be heard prior to action on a special master's report, which includes allowing the parties to submit evidence. Fed. R. Civ. P. 53(f)(1) ("In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions."); Fed. R. Civ. P. 53 advisory committee's note to 2003 Amendment, Subdivision (f) ("The parties may designate additional materials from the record, and may seek permission to supplement the record with evidence."). Accordingly, the Court will not strike the United States' Rule 53(f) brief or its attachments. The Court **DENIES** Defendants' *Motion to Strike Docs. 303, 301-1 to 303-9 and 305* [Doc. 308].

### *The United States' Position Based on the Court's Action on the Special Master's Reports Pursuant to Federal Rule of Civil Procedure 53(f)* [Doc. 303]

The United States expressly requests the following relief in its Rule 53(f) brief:

The United States requests that the Court order Defendants to provide direct physical access to the Co-Special Master all their books, records, accounting systems, and financial accounts, as well as unfettered access to all places where High Plains Livestock conducts business. The broadest possible access to HPL's finances, and the other Defendants' finances to the extent that such finances are co-mingled, is necessary because of the peculiarities of High Plains Livestock finances, as described more fully in the Speer Declaration and Street Report.

[Doc. 303, pp. 1-2] Further, the United States expressly states that it agrees with the Court's conclusion, based on Mr. Cowen's reports, that a co-special master should be appointed: "The United States agrees with the Court that a co-special master should be

appointed for the purpose of conducting a viability/solvency analysis of HPL." [Doc.

303, p. 7] The United States continues:

> However, the United States is concerned that HPL has destroyed documents that are required to establish whether HPL is solvent. For this reason, the United States requests that if the co-special master cannot establish HPL's solvency with reasonable certainty, then it prepare a plan to wind down HPL. For the same reasons, the United States requests that the Court appoint a co-special master who possesses specialized experience in forensic accounting. This is exhibited by someone with specialized knowledge and experience culminating in certifications such as in financial forensics by the American Institute of Certified Public Accountants ("AICPA") and/or fraud examination by the Association of Certified Fraud Examiners ("ACFE"). The United States further requests that the Court order Defendants to provide the co-special master with unfettered access to the HPL facility and all of HPL's books, records, accounting software, financial accounts, and assets.

[Doc. 303, pp. 7-8]

In addition, the United States attacks the reports of Mr. Cowen as not impartial.

[Doc. 303, p. 4] The United States raises several alleged improprieties and errors by Mr.

Cowen.[3] [Doc. 303, pp. 4-7] The United States submits statements by its own experts to

---

[3] Among other criticisms, the United States "question[s] the impartiality of Special Master Cowen," alleges that Mr. Cowen's invoice demonstrates that "Woodard, Cowen & Co. has been providing HPL with accounting services" and assisted with HPL's tax preparations, failed to provide the Court with an "Accountant's Compilation Letter" referenced by financial statements, a financial statement for October 2016 was not provided to the Court, and a different balance sheet for December, 2016 was provided to the Court and GIPSA. [Doc. 303, pp. 4-7] While some of the United States' concerns warrant further investigation, several are entirely without merit. For example, the United States claims: "The Accountant's Compilation Letter also indicates that Woodard, Cowen & Co. is assisting HPL with its taxes (HPL's financial statements are prepared on 'an income tax basis')." [Doc. 303, p. 5] Mr. Cowen's disclosure of his method of accounting, the "income tax basis," does not in any way support the United States baseless claim that Mr. Cowen was "assisting HPL with its taxes." *See* Allan B. Afterman, *Accounting and Auditing Disclosure Manual* § 115 (2017) (stating that the tax basis is one of several accounting frameworks "commonly referred to as other

support its criticisms of Mr. Cowen and his report. [Doc. 303, p. 4] Nonetheless, the United States does not make any specific request, based on these criticisms of Mr. Cowen, beyond its request for relief relating to both the experience and access of any proposed co-special master.[4]

To support its Rule 53(f) brief, the United States submitted a declaration from Ms. Speer, a Senior Auditor employed by GIPSA, who "examin[ed] the books and records of High Plains Livestock, LLC . . . for the period from October 1, 2016 to the present [April 14, 2017]." [Doc. 305, ¶ 3] Ms. Speer identifies several accounting issues in HPL's records.[5] Ms. Speer describes the accounting issues variously as, i.e., "improper," demonstrating "serious discrepancies" and "conflicts," "incomplete and unreliable," an "anomaly," "unorthodox," and potentially "falsif[ied]."[6] [Doc. 305, ¶¶ 13, 17, 18, 20, 29, 30, 31] Ms. Speer concludes that, "[g]iven the status of HPL's records, to perform a viability/solvency analysis of HPL, a forensic accountant would require unfettered access

---

comprehensive bases of accounting (OCBOA)"); *see also Preliminary Report of Edward R. Street*, defining the "Income tax basis (of accounting)" as: "For accounting purposes, a consistent basis of accounting that uses income tax accounting rules while Generally Accepted Accounting Principles (GAAP) does not." [Doc. 323-3, p. 11]

[4] For example, the United States does not request the Court to refuse to rely on Mr. Cowen's reports, or remove him as Special Master, or argue that the Court reached an incorrect conclusion in its March 31, 2017 *Memorandum Opinion and Order* because the Court relied on Mr. Cowen's reports.

[5] Ms. Speer also states that HPL has not provided all of the records she requested. [Doc. 305, ¶¶ 6, 52, 55-57]

[6] For example, Ms. Speer states: "HPL's Balance Sheet as of December 31, 2016 reported a negative payroll tax liability for Federal Insurance Contributions Act (FICA) Payable. This is illogical as it is essentially the equivalent of recording this as an asset. When I asked Ms. Pareo for an explanation, HPL subsequently provided documents suggesting that the underlying transactions were adjusted to correct this anomaly. HPL did not provide a corrected Balance Sheet reflecting the adjustment." [Doc. 305, ¶ 31]

to the HPL facility and physical access to all of HPL's books, records, accounting software, financial accounts, and assets." [Doc. 305, ¶ 56] The Court concludes that, pursuant to Rule 53(f), this declaration is appropriate evidence to submit prior to the Court taking action on Mr. Cowen's report. Further, the declaration supports the United States' request for specific relief, including the appointment of a co-special master with training and experience in forensic accounting and allowing that co-special master broad access to HPL's facility and books. For these reasons, the Court will appoint a co-special master with training and experience in forensic accounting, namely, Johnson Miller & Co. The Court addresses the level of access to HPL's records and facility below.

The United States also submitted a "Preliminary Report of Edward R. Street," its expert who will presumably testify at a hearing on the merits of the United States' request for relief under Section 228a. The Court is unable to discern how this report, which focuses on Mr. Cowen's reports, supports the United States' limited requests as to the level of experience and level of access of the co-special master. Mr. Street's report observes that "[t]he financial statements and related information provided by the Special Master (Gayland Cow[en], CPA) do not provide a complete and accurate presentation of the financial position (assets, liabilities and owner's equity) or results of operations (revenues, expenses and net income) of High Plains Livestock." [Doc. 303-7, p. 4] Mr. Street then lists and discusses nine specific issues to demonstrate that Mr. Cowen's reports "do not provide a complete and accurate presentation" of HPL's solvency or

insolvency.[7]  [Doc. 303-7, pp. 4-11]  Thus, it appears that the United States hired an expert to further explain and demonstrate what the Court already concluded in its March 31, 2017 *Memorandum Opinion and Order*, that "Mr. Cowen's submissions leave many questions and are not presented in a manner which allows a quick or easy determination of whether Defendants are operating while insolvent" and "the Court can reach very few useful conclusions based on what [Mr. Cowen] submitted."  [Doc. 296, p. 34]

Alternatively, perhaps the United States provided Mr. Street's report to implicitly argue that further relief under Section 228a is necessary[8] and that the Court should not rely on Mr. Cowen's report in deciding what, if any, further relief is appropriate.  To the extent the United States submits Mr. Street's report and attacks Mr. Cowen's reports in an effort to obtain additional relief, such briefing is premature.  The Court cannot, now, without a full evidentiary hearing and all of the process that goes with it, use the reports provided by the United States to reach any conclusions.  To the extent the United States

---

[7]  For example, stating that one of Mr. Cowen's reports shows an "[i]naccurate representation of HPL net equity on or about January 31 and February 12, 2016."  [[Doc. 303-7]

[8]  The United States submits:  "Pursuant to this Court's suggestion that an expert would be needed to examine Special Master Cowen's accounting methods, the United States retained Ed Street, CPA/ABV/CFF, CVA, ASA; REDW CPAs, Business & Financial Advisors."  [Doc. 303, p. 4]  The Court did not ask the United States to submit expert testimony at this stage.  Instead, the Court stated:  "[Q]uestions related to Mr. Cowen's accounting methods may require the parties to rely on expert testimony. Because the United States has requested the Court to decide its Motion for Preliminary Injunction without taking further evidence, the Court does not have the benefit of such testimony. Therefore, the Court presumes *for purposes of this Order* that there are no irregularities or deficiencies in Mr. Cowen's accounting methods."  [Doc. 296, n. 16 (emphasis added)]  The United States elected not to present such evidence at this stage in the proceedings, and the Court cannot consider such evidence without a full evidentiary hearing, which the United States waived.

deems it necessary to rely on such evidence to obtain the relief it seeks in this case, the Court will consider that evidence, if admissible, at an evidentiary hearing on the merits of the United States request for relief under Section 228a. In the meantime, briefing such as this continues to cause delay in setting such a hearing. At this stage in the proceedings, the Court is not inclined to entertain any further requests for relief which would require the Court to make evidentiary determinations or consider expert evidence prior to the final hearing on the merits of the United States request for relief under Section 228a.

***Defendants' Response to Memorandum Opinion and Order (Doc. 296) in Regard to FRCP 53(f)*** [Doc. 302]

Defendants also filed a Rule 53(f) brief. As stated above, Defendants made three alternative requests: 1) that "Mr. Cowen should be provided the opportunity to answer the Court's questions and concerns, either through a written report submitted to the Court or at a hearing" [Doc. 302, p. 2]; 2) that, if a co-special master is appointed, "the Parties be allowed to submit proposals for the parameters of the review by the co-special master" [Doc. 302, pp. 2-3]; and 3) that, if a co-special master is appointed, the parties be given notice and an opportunity to respond prior to the Court acting on the Special Master's report, consistent with Rule 53(f). [Doc. 302, p. 3]

In order to address Defendants' requests, the Court outlines its plan for future proceedings in this case. First, concurrent with this Order, the Court will appoint a co-special master and give the co-special master the opportunity to file a report evaluating the solvency of HPL. Next, Pursuant to Rule 53(f)(1) and (2) and the deadlines therein, the Court will allow parties to file objections or responsive briefs. By that time,

discovery will have closed in this case (the parties requested, and were granted, an extension of the discovery deadline in this case until July 17, 2017 [Doc. 253; Doc. 255]). Then the Court will set this matter for a final merits hearing on what relief, if any, is appropriate under Section 228a.  At that time, the Court will consider all of the evidence before it, including Mr. Cowen's reports, the report of the co-special master, the testimony of any experts produced by the parties, the testimony of any witnesses, and the documentary evidence produced at such a hearing.

Having clarified the process it intends to follow in this matter, the Court returns to Defendants' requests in their Rule 53(f) brief.  Using the process outlined above, Mr. Cowen will have the opportunity at a hearing to provide further information to the Court.[9] The parties will have the opportunity to file responses to any report submitted by the co-special master as allowed by Rule 53(f).  Finally, the parties have already submitted proposed parameters for the co-special master, which the Court considers below and further addresses by a separate order filed concurrently herewith.  In sum, the Court grants the relief Defendants request in their Rule 53(f) brief.

### Disagreements as to the Co-Special Master and its Scope of Duties

The Court must also decide the duties of the co-special master.[10]  The Court considers the United States' proposals first and then Defendants'.  The United States'

---

[9] Further, the Court has already ordered Mr. Cowen to provide disclosures for all of his reports in an effort to clarify his methods.  [Doc. 321, pp. 34-36]

[10] The Court sets out the instructions to the co-special master by separate order entered concurrent herewith.  The discussion here is to address the overarching arguments by the parties and resolve the parties' fundamental disagreements as to the proposed

proposed order of instruction first lists several findings of fact regarding HPL's operations and the Court's previous conclusions regarding fraudulent conduct [Doc. 323-1, pp. 2-3], and then lists duties of the proposed co-special master. The United States would like the Court to appoint JM&C to ascertain the solvency of HPL as defined in 9 CFR § 203.10. The United States would have the Court order JM&C to do the following:

1.  Conduct[] a financial analysis of each Defendant . . . and report[]to the Court regarding its findings;
2.  Ascertain[] the solvency of HPL as defined in 9 CFR § 203.10;
3.  Determin[e] the ongoing viability of HPL's operations;
4.  Determin[e] whether HPL is properly safeguarding its assets; and
5.  Prepar[e] a plan to wind down HPL's operations and business if unable to verify that HPL is solvent, its ongoing operations are viable, or HPL is safeguarding its assets.

[Doc. 323-1, p. 4]  As to the financial analysis of each Defendant, the United States would like the co-special master to report to the Court regarding, among other things, the identification, location, and value of all accounts, assets, liabilities, sources of income, cash on hand, and securities held by each of the Defendants as of December 31, 2014, December 31, 2015, December 31, 2016, and through the duration of the co-special master's appointment.  [Doc. 323-1, pp. 4-6]  The United States argues that the purpose of this "examination of the individual Defendants' finances" is "to determine whether HPL's finances are being comingled with Defendants' personal and other business activities."  [Doc. 323, p. 4]  The United States asks for a trend analysis from the co-special master based on the historical data described above.  [Doc. 323-1, p. 6]  Further, the United States would have the co-special master report whether:  HPL or any of the

instructions.  To the extent the parties request particular instructions which the Court does not set forth in the separate order, parties' request is denied.

individual Defendants misappropriated assets; all purchases and sales are timely booked; there are fictitious revenues, concealed liabilities, or previously undisclosed assets; and disclosures are "adequately quantified and described." [Doc. 323-1, p. 6] The United States would like the co-special master to verify information with third parties as much as possible. [Doc. 323-1, p. 6] Finally, the United States would like the co-special master to create a plan to wind down HPL if it is not solvent, if its solvency cannot be determined, or if HPL is not safeguarding its assets. [Doc. 323-1, p. 7]

Defendants' proposed instructions to the co-special master begin with a history of the case, and particularly, with a history of the appointment of Special Master Cowen and a description of his work to date. [Doc. 322, pp. 14-16] Defendants would have the co-special master begin its process by reviewing the reports prepared by Mr. Cowen, "[i]n order to avoid duplication of effort and to obtain the greatest benefit from the work that has already been performed." [Doc. 322, p. 16] Defendants request that the co-special master also have an initial meeting with Mr. Cowen and Ms. Pareo. [Doc. 322, pp. 16-17] Regarding the review, Defendants would have the "co-special masters" (presumably, Mr. Cowen and JM&C, together) use generally accepted accounting practices to "perform a Review of the compiled financial statements for the six months period preceding the date on which they begin work on this matter. . . . [N]o review of financial statements will be conducted for a period prior to January 1, 2017." [322, p. 17] Defendants would like the solvency determination to "include both a cash flow analysis and an equity or balance sheet solvency analysis. In determining current assets and current liabilities, the Co-Special Master shall rely on the guidance provided in 9 C.F.R.

§203.10." [Doc. 322, p. 17]  Defendants ask that the Court order the co-special master to submit its solvency analysis and for the Court to review and make a determination based on that analysis prior to the co-special master drafting a wind-down plan, if necessary. [Doc. 322, p. 18]

Turning initially to the United States' proposal, the Court first observes that the United States requests much more than a solvency analysis of HPL.  The United States' requests suggest that the United States is attempting to use the co-special master's evaluation as an extremely in-depth search of all of Defendants' records to find evidence of wrong-doing beyond that addressed by the Packers and Stockyards Act and governed by GIPSA.  Alternatively, the United States may be attempting to identify the location of assets the United States may seek to attach to recover the civil penalties it seeks in its administrative proceeding.  However, Section 228a provides limited relief, and its purpose is to "protect [livestock] vendors or consignors of such commodities or other affected persons."  Consistent with Section 228a, the Court has ordered a solvency analysis in order to determine whether additional injunctive relief is necessary to protect the livestock market, and nothing more.  The United States cites no authority for GIPSA to examine the individual Defendants' personal finances.  GIPSA only has the authority to examine the individual Defendants' *business records* to the extent they have acted as a "stockyard owner, market agency, dealer, [or] packer."  9 C.F.R. § 201.95 ("Each stockyard owner, market agency, dealer, [and] packer, . . . upon proper request, shall permit authorized representatives of the Secretary to enter its place of business during normal business hours and *to examine records pertaining to its business* subject to the

Act, to make copies thereof and to inspect the facilities of such persons subject to the Act." (Emphasis added.)).  Absent clear authority stating otherwise, which the United States did not provide, the Court will not order a co-special master to inspect the individual Defendants' records beyond the examination allowed by 9 C.F.R. § 201.95. Accordingly, to the extent the United States seeks to go beyond a solvency analysis, the United States' request is denied.

As to the issue of whether HPL's assets and the individual Defendants' assets have been comingled, this matter is within the Court's jurisdiction, however, an examination of HPL's business and business records will suffice.  To this end, the co-special master will have the authority to investigate and report to the Court all funds coming into HPL, as well as all funds which should come into HPL but have not or are not.  Likewise, to the extent any HPL funds are used to pay for any expense, whether it be a business expense or a personal expense, the co-special master will have the authority to determine what those expenses are and where those funds have gone.  Such inquiries are relevant to whether HPL is and will continue to be a viable business.

The Court will also specifically order the co-special master to investigate certain other matters raised by the United States.  The co-special master shall investigate and report whether HPL makes mortgage payments for Darcie and Calvin Pareo's residence, and whether such payments are irregular, improper, or detrimental to the solvency of HPL.  The co-special master shall investigate what happened to the funds that were in the custodial account which the United States submits is now closed.  Similarly, the co-special master shall investigate what happened to HPL's payroll account and the funds

therein, which the United States alleged was closed, as well as how HPL is now paying its payroll. The co-special master shall investigate and report the amount of cash withdrawals and "personal expenses" paid from all of HPL's accounts, and shall opine on whether such withdrawals and personal expenses are irregular, improper, or detrimental to the solvency of HPL.

The Court will not adopt the limited inquiry requested by Defendants. The co-special master's analysis will be independent of Mr. Cowen's analysis. If necessary to determine the solvency of HPL, the co-special master shall have the authority to investigate records dating back to August, 2015, the month this case was filed. In determining whether HPL is solvent, the co-special master shall use the definition and guidance in 9 C.F.R. § 203.10 and generally accepted accounting practices. The review will include, as Defendants request, a cash flow analysis and an equity or balance sheet solvency analysis, and it may include other analyses as the co-special master determines to be appropriate. The co-special master shall include within its report its methods and all disclosures and footnotes required for the Court and parties to understand the basis of its decision. If the co-special master determines that HPL is not solvent, the co-special master shall begin to work on a winding-down plan at that time, rather than waiting for further order of the Court, as requested by Defendants.

All other matters pertaining to the instructions to the co-special master are set forth by separate order, filed concurrently herewith.

**CONCLUSION**

**WHEREFORE,** for the foregoing reasons:

1) Defendants' *Motion to Strike Docs. 303, 303-1 to 303-9 and 305* [Doc. 308] is hereby **DENIED**;

2) Defendants' *Motion to Postpone Appointment of Co-Special Master* [Doc. 309] is hereby **DENIED**;

3) *The United States' Motion to File a Sur-Reply* [Doc. 330] is hereby **GRANTED**; and

4) the Court will appoint Johnson, Miller & Co. as co-special master to conduct a solvency analysis of High Plains Livestock, as more fully set forth by separate order filed concurrently herewith.

**SO ORDERED** this 10th day of July, 2017 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge