# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                           **No. 15-CV-680 MCA/JHR**

**HIGH PLAINS LIVESTOCK, LLC,**
**dba PRODUCERS LIVESTOCK AUCTION,**
**MICHAEL FLEN, CALVIN PAREO, and**
**DARCIE PAREO,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION OF MOTION FOR ATTORNEY FEES

Defendants High Plains Livestock LLC, Michael Flen, and Calvin and Darcie Pareo filed an *Application for Attorney's Fees and Other Expenses Pursuant to the Equal Access to Justice Act 28 U.S.C. § 2412 []* on June 29, 2017. [Doc. 349]. The United States filed a response on August 21, 2017 [Doc. 375], and Defendants filed a reply on September 22, 2017. [Doc. 398]. With leave of court, *see* [Docs. 410 & 411], the United States filed a sur-reply on October 25, 2017. [Doc. 412].

On November 13, 2017, U.S. District Judge M. Christina Armijo entered an *Order of Reference* of the motion to U.S. Magistrate Judge Jerry H. Ritter [Doc. 415], with direction to prepare a recommended disposition.

## ISSUE(S) PRESENTED

1. Whether the District Court should consider Defendants' motion or, instead, dismiss or return it as premature?
2. Whether any of the Defendants is a "prevailing party" which could be eligible for an award of fees and expenses under the Equal Access to Justice Act ("EAJA")?

3. Whether the position of the United States was "substantially justified" so as to foreclose an award to a prevailing party under the EAJA?

4. If the Defendants are entitled to attorney fees and costs, what fees and costs should be awarded?

## MATERIAL FACTS

The United States filed this action to resolve thirteen claims that the Defendants violated the Packers & Stockyards Act (PSA), 7 U.S.C. §§ 181-231, and sought civil penalties and injunctive relief [Doc. 1]. At the direction of District Judge Armijo, U.S. Magistrate Judge William P. Lynch held an evidentiary hearing to determine whether a temporary injunction should issue. After four days of testimony, Magistrate Judge Lynch found that Defendants had committed multiple violations of the PSA that it was "appropriate to appoint a receiver to conduct an initial review of HPL's continued viability and, if viable, to take over all aspects of HPL's operations. Additionally, Defendants Calvin and Darcie Pareo and Michael Flen [were to] have no control over the business, but [were] permitted to provide advice to the receiver." [Doc. 55, at 2-3]. When no qualified receiver could be obtained, District Judge Armijo appointed a Special Master to monitor and report on Defendants' operations. [Docs. 103 & 104]

Subsequently, District Judge Armijo resolved a jurisdictional challenge to Counts I-VIII by ruling that the governing statutes require the Secretary of Agriculture to pursue civil fines or prohibitions upon violations of the PSA through an administrative process before filing suit in the courts. [Doc. 165, at 10-12]. The District Court denied the United States' motion for reconsideration. [Doc. 295].

The District Court did not dismiss Count IX, against Calvin Pareo [Doc. 165, at 14], nor dissolve the injunctive relief previously entered against all Defendants, deeming it in the public interest to maintain oversight over the Defendants' activities pending initiation of administrative

proceedings by the United States. [*Id.*, at 14-16]. The Court noted that Congress "anticipated ... and allowed for such temporary relief under strictly defined circumstances. 7 U.S.C. § 228a." [*Id.*, at 7]. The Court later ordered the appointment of a co-special master, not then identified, to provide additional oversight and issued a preliminary injunction addressed to the operations of Defendants under the PSA. [Doc. 296].

Defendants filed a separate motion to dismiss Count IX for failure to state a claim against Calvin Pareo [Doc. 266], but the motion was not ruled upon. Instead, Count IX was dismissed [Doc. 345] upon the unopposed motion of the United States which asserted that, so long as temporary injunctive relief remained in place, it was "no longer in the interest of the United States to pursue this claim." [Doc. 336, at 1]. The order of dismissal expressly "[left] in place only the United States' request for temporary injunctive relief under 7 U.S.C. § 228a." [Doc. 345, at 1].

On June 29, 2017, after dismissal of the claims for civil penalties but before the naming of the co-special master, Defendants filed the instant motion seeking an award of attorney fees and other expenses in the amount of $168,037.73. [Doc. 349, at 7]. While Defendants' motion for EAJA fees and expenses was pending, the District Court appointed a co-special master to fulfill some of the objectives of the injunction it previously put in place. [Doc. 353].

After initiating a parallel administrative process through the U.S. Department of Agriculture, the parties resolved their dispute and Defendants submitted an *Amended Unopposed Emergency Motion to Dismiss Remaining Claims and for an Order Directing Special Masters to Cease All Work on and Related to this Matter* [Doc. 388], which the District Court granted on September 12, 2017. [Doc. 390]. The same day, the District Court entered a *Judgment* dismissing "all of Plaintiff's claims against Defendants". [Doc. 391, at 1].

# **DISCUSSION**

The Equal Access to Justice Act contains two provisions authorizing an award of attorney fees under proper circumstances, 28 U.S.C. §§ 2412(b) and 2412(d).  Defendants here rely upon the latter provision, which states: "[e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in a civil action (other than cases sounding in tort), ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).

## **FIRST ISSUE:**

## **Whether the District Court should consider Defendants' motion or, instead, dismiss or return it as premature?**

The Equal Access to Justice Act requires that a motion for fees and expenses be filed "within thirty days of final judgment in the action."  28 U.S.C. § 2412(d)(1)(B).  The term "final judgment" is defined as "a judgment that is final and not appealable, and includes an order of settlement."  28 U.S.C. § 2412(d)(2)(G); *see Melka Marine, Inc. v. United States*, 29 F. App'x 594, 597 (Fed. Cir. 2002) (unpublished).  "The 30-day EAJA clock begins to run after the time to appeal that 'final judgment' has expired."  *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991).

Citing an outdated case, *Bryan v. Office of Pers. Mgmt.*, 165 F.3d 1315 (10th Cir. 1999), the United States contends that the EAJA application period is jurisdictional. [Doc. 375 at 2]. In 2004, the U.S. Supreme Court held that the thirty-day period is not a declaration of subject-matter jurisdiction but is a claim processing rule.  *See Scarborough v. Principi*, 541 U.S. 401, 413-14 (2004).  For that reason, and in distinction from subject-matter jurisdiction which cannot

be created by consent, *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1934), the Government can waive the time requirement. Such a waiver can occur either before the filing period begins, *see Former Employee of Marlin Firearms Co. v. United States Secretary of Labor*, 2017 WL 2591781, *3 (No. 11-00060, June 14, 2017) (U.S. Ct. Int'l Trade), or after it has run. *See Vasquez v. Barnhart*, 459 F. Supp. 2d 835 (N.D. Iowa 2006). In this case, however, the United States has not waived the statutory time period, and so the Court must decide what authority it has to review an application filed "too soon", noting that "[t]he EAJA is a waiver of sovereign immunity and it therefore must be strictly construed, *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983)." *United States v. Charles Gyurman Land & Cattle Co*., 836 F.2d 480, 483 (10th Cir. 1987).

The plain meaning of the preposition *within* indicates that an EAJA application neither be filed after, nor before, the thirty-day statutory window. In keeping with that approach, before final judgment, a pending application can be dismissed without prejudice, *see, e.g., J.C.N. Constr., Inc. v. United States*, 2013 WL 491013, at 1 (Fed. Cl. Feb. 8, 2013). As another option, in 2002, the Federal Circuit ruled that it is within a court's discretion to "return" an EAJA application filed before entry of a final judgment. *Melka Marine, Inc.*, 29 F. App'x at 4.

There is abundant authority, however, for the proposition that a court may likewise exercise discretion to consider the merits of an early application, although the U.S. Supreme Court has not ruled definitively on the issue. *Compare Melkonyan,* 501 U.S. at 103 (1991) ("This case is not an appropriate vehicle for resolving the issue [of whether the applicant can file for EAJA fees even before entry of a final judgment].")). Some circuit courts have found circumstances where EAJA fee applications were deemed timely even though filed before entry of a final judgment. *See, e.g., Cummings v. Sullivan*, 950 F.2d 492, 495 n. 4 (7th Cir. 1991)

(EAJA application deemed timely when filed after "section six" Social Security remand but prior to final judgment) (issue raised *sua sponte*); *Haitian Refugee Center v. Meese*, 791 F.2d 1489 (11th Cir. 1986) (Interim fees could be awarded on application filed after remand of interlocutory appeal where district court denied government motion to enter final judgment.), *partially vacated on other grounds after rehearing en banc*, 804 F.2d 1573 (11th Cir. 1986); *Bostic v. Comm'r of Social Security*, 858 F. Supp. 2d 1301, 1303-04 (M.D. Fl. 2011) (EAJA application filed seven weeks before entry of final judgment deemed timely filed.). In 2006, the District Court for the District of Hawaii reported that, while the Ninth Circuit Court of Appeals had not weighed in on the issue, since the 1985 EAJA amendments every circuit district court opinion on the issue declared the thirty-day period to be "a deadline, not a window." *Center for Food Safety v. Johanns*, 2006 WL 3783434, *1 (CV. NO. 03-00621-JMS-BMK, Nov. 7, 2006).

Defendants argue [Doc. 398, at 2] that the timeframe issue is moot since the Court entered a "final judgment" on September 12, 2017 [Doc. 391]. Although the definition of *final judgment* in the EAJA requires the expiration of appellate deadlines after the trial court's judgment, 28 U.S.C. § 2412(d)(2)(G), the combination of the September 12th filing and the lack of any appeal thereafter brings this case within authority from the Tenth Circuit and elsewhere which would allow the District Court to consider the merits of this EAJA application. *See Koch v. U.S. Dep't of Interior*, 47 F.3d 1015, 1021 (10th Cir. 1995) ("[A] plaintiff may ask for attorney's fees [under EAJA] even when the time for appeal has not elapsed."); *see also, e.g., Heger v. U.S.*, 114 Fed. Cl. 204, 208 n. 3 (2014) ("Subsequent cases have interpreted *Melkonyan* to allow courts to give effect to EAJA applications filed prior to final judgment."); *Bostic*, 858 F. Supp. 2d at 1304 (citing *Singleton v. Apfel*, 231 F.3d 853, 956 (11th

Cir. 2000), *Haitian Refugee Ctr.*, 791 F.2d at 1495-96, and *Inman v. Apfel*, No. 3:97-CV-1273-J-HTS, 2000 WL 1221858 (M.D. Fla. July. 14, 2000)).

As a practical matter, a dismissal or return of the application as "premature" would only invite Defendants to refile, with a likely challenge by the United States that the new application is untimely, creating a "Catch-22" situation that would prevent a determination of the merits of the application and, to that extent, frustrate the purpose of Congress in enacting the EAJA. *See Ewing v. Rodgers*, 826 F.2d 967, 970 (10th Cir. 1987).

## SECOND ISSUE:

## Whether any of the Defendants is a "prevailing party" which could be eligible for an award of fees and expenses under the EAJA?

Under the Equal Access to Justice Act, to obtain an award of fees and expenses in litigation against the United States, an applicant must be a "prevailing party". 28 U.S.C. § 2412(d)(1)(A).

The EAJA does not contain an express definition of *prevailing party,* except in condemnation cases. *See* 28 U.S.C. § 2412(d)(2)(H). The watershed definition of *prevailing party* for federal fee-shifting statutes is from *Buckhannon Board & Care Home, Inc. v. W. Va. Dep't of Health and Human Resources*, 532 U.S. 598 (2001) (as recognized and applied to an EAJA application by the Tenth Circuit Court of Appeals in *Biodiversity Conservation All. v. Stem*, 519 F.3d 1226 (10th Cir. 2008)). Further development of the definition of *prevailing party* occurs throughout federal cases involving multiple fee-shifting statutes as the same definition generally applies. *See Cactus Canyon Quarries, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 820 F.3d 12, 16 (D.C. Cir. 2016).

*Buckhannon* identified "some relief by the court", 532 U.S. at 603, as essential to creation of a prevailing party, although not necessarily through a decision on the merits. For example, an

enforceable consent decree even without admission of liability may suffice. *Id.* at 604. The necessary judicial investment may also be represented by the mooting of the applicant's claims, and particularly claims for damages. *See id.* at 608-09. The key element is the "judicial *imprimatur*" on the result; for that reason, a voluntary action by the opponent, even where it bestows all the advantage that was sought through the litigation, is not sufficient if not enforceable by the court. *See id.*, at 605.

**Alteration of Legal Relationships as an Element of Prevailing Party Status**

The presence of a judicial imprimatur on the proceedings can be seen through the alteration of the legal relationship of the parties. "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989). An alteration of legal relationships requires that a plaintiff "receive at least some relief on the merits of his claim." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987). Judicial action which does not alter those relationships is not sufficient to create a prevailing party. *See, e.g., Outlaw v. Chater*, 921 F. Supp. 13, 16 (D.D.C. 1996) (remand of Social Security appeal to Agency for reconsideration upon finding lack of substantial evidence was not a basis for EAJA award). Because of the absence of effect upon legal relationships, and the ability to refile legal claims, a dismissal without prejudice does not support an award of fees. *See, e.g., United States v. Milner*, 583 F.3d 1174, 1196-97 (9th Cir. 2009).

Parties which obtain enforceable judgments on the merits or consent decrees have "prevailed". *Biodiversity Conservation All.,* 519 F.3d at 1229 (citing *Buckhannon Board & Care Home, Inc.*, 532 U.S. at 604). Both judicial action and enforceability against another party are required.

A plaintiff does not prevail through a defendant's voluntary change in conduct even though the change was the objective of litigation. *Buckhannon Board & Care Home, Inc.*, 532 U.S. at 605. A plaintiff whose case is dismissed as moot after a defendant voluntarily takes favorable action has not prevailed as there is nothing for the plaintiff to enforce against the defendant. *Biodiversity Conservation All.*, 519 F.3d at 1230; *compare Iqbal v. Holder,* 693 F.3d 1189, 1194-95 (10th Cir. 2012) (remand to immigration agency for further action in its discretion did not justify EAJA fees) *with Al-Maleki v. Holder*, 558 F.3d 1200, 1204-06 (10th Cir. 2009) (Government's argument that immigration agency acted voluntarily belied by terms of remand order which declared applicant eligible for naturalization and directed agency to confer citizenship by a date certain.).

**Result is What Creates a Prevailing Party**

Whether court relief creates a prevailing party depends upon the nature of the relief:

In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces--the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement--what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion--is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*

*Hewitt*, 482 U.S. at 761 (emphasis in original).

A favorable mention of a party by a court does not render the party *prevailing*: "a party is entitled to attorneys' fees only if it could obtain a court order to enforce the merits of some portion of the claim it made in its suit." *Biodiversity Conservation All.*, 519 F.3d at 1230. *See also Hewitt*, 482 U.S. at 763 (Prevailing party under 42 U.S.C. § 1988 not created by interlocutory statement that the plaintiff could obtain summary judgment if successful on remand in overcoming qualified immunity defense).

**Effect of Grant of Preliminary Injunction**

The cases discussing whether preliminary injunctive relief creates a prevailing party uniformly address injunctions obtained by the EAJA applicant, which is not the case here. Nonetheless, the discussion helps to define the kind of judicial action needed to create a prevailing party.

Whether a preliminary injunction creates a prevailing party requires examination of its practical effect. An initial grant of a preliminary injunction does not create prevailing party status if it is followed by a loss at the hearing on the merits. *Sole v. Wyner*, 551 U.S. 74, 83 (2007) (expressing no opinion on the combined circumstances of grant of a preliminary injunction with an absence of resolution on the merits). Moreover, a preliminary injunction that merely preserves the status quo *pendente lite*, as where plaintiff's goal is to cancel a government project, does not make the plaintiff a prevailing party. *Biodiversity Conservation All.*, 519 F.3d at 1232.

On the other hand, a preliminary injunction that grants the relief requested, such as participation in high school classes, creates a prevailing party even where the case is later dismissed as moot due to the student's graduation. *Dahlem v. Bd. of Educ. of Denver Pub. Sch.*, 901 F.2d 1508, 1510-11 (10th Cir. 1990). Likewise, although a remand to correct procedural errors alone would not create a prevailing party, a plaintiff does prevail by obtaining an injunction forbidding a challenged government action until required procedures are satisfied. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 965-66 (D.C. Cir. 2004) (distinguishing *Waterman Steamship Corp. v. Maritime Subsidy Board*, 901 F.2d 1119 (D.C.Cir. 1990).

**Nature of the Resolution of This Case**

Defendants argue that, because only preliminary injunctive relief was granted, and because the substantive claims for civil penalties were all dismissed, they have "prevailed" in this action.  [Doc. 398, at 2-3].  Defendants characterize the preclusive effect of the final judgment in this case as a "judicially sanctioned change in the relationship of the parties", [Doc. 398, at 3], through which Defendants have prevailed.  They also argue that they prevailed because the record establishes that Counts I-VIII were beyond the jurisdiction of the District Court, and because Count IX had no factual basis.  [Doc. 349, at 4].  Defendants' argument is not persuasive.

Viewed over the course of the litigation, the picture is quite different.  In sum, the United States asserted a variety of violations of the PSA that would, if proven, support the imposition of civil fines, and sought temporary injunctive relief in order to protect the public.  When called upon, over the course of a multi-day evidentiary hearing, the United States provided sufficient proof of its claims to obtain an injunctive order that ousted the individual Defendants from control of their business for the duration of the litigation.

Before trial on the merits, however, the District Court *sua sponte* raised the issue of whether the claims were properly before the Court or, instead, should be processed administratively through the Department of Agriculture, ultimately deciding that eight of the civil counts should be dismissed in favor of administrative proceedings.  The Court held that Count IX, as to Calvin Pareo, and the United States' claim for temporary injunctive relief which had already been granted, were properly before it.  The Court later dismissed Count IX on the United States' motion without opposition from Defendants and without any findings as to its merits, while still retaining injunctive oversight of Defendants' business operations through its

Special Master.  As the parties initiated the administrative proceeding, the Court added a second Special Master for increased control in the public interest.

The conclusion of the separate administrative proceedings was a Consent Decision which dismissed all of the government's claims, but: prohibited all defendants from registration, and individual defendants from operation, as a "market agency selling on commission" for four years; imposed a six-part cease and desist order on all defendants, and; assessed substantial civil penalties jointly and severally, with the majority of penalties in abeyance but subject to reinstatement upon violation of the Consent Decision.  Citing entry of the Consent Decision as justification, Defendants successfully moved, without Government opposition, to dismiss the District Court case and terminate the Court's oversight of their business operations.

In sum, then, Defendants came into the litigation operating their business without any apparent limitation other than the requirements of law and economics, suffered ouster and the imposition of court supervision over their business activities *pendente lite*, and obtained dismissal of the court case and termination of supervision only through acceptance of a substantial change in position to their detriment, legal as well as economic and managerial. When the result is viewed as a whole, as required by the controlling case authorities, there is no logical characterization of Defendants, or any one of them, as *prevailing* in this litigation.

### THIRD ISSUE:

**Whether the position of the United States was "substantially justified" so as to foreclose an award to a prevailing party under the EAJA?**

If the Court rejects my recommendation and instead finds that the Defendants qualify as prevailing parties, Defendants must clear another eligibility hurdle before the Court considers the specifics of their application.  Because EAJA fees are intended for cases where the government's position is unjustified, every EAJA application is required to include a statement to the contrary:

"that the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B). Thereafter, if "the court finds that the position of the United States was substantially justified", EAJA fees and expenses must be denied. 28 U.S.C. § 2412(d)(1)(A). Because the federal government most often acts through the auspices of an agency, the EAJA defines the "position of the United States" as: "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based". 28 U.S.C. § 2412(d)(2)(D).

"Under the EAJA, the government bears the burden of showing that its position was substantially justified." *Hadden v. Bowen*, 851 F.2d 1266, 1267 (10th Cir. 1988) (*quoting Kemp v. Bowen*, 922 F.2d 966, 967 (10th Cir. 1987)).

> Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

**Broad Context for Analysis**

All of the parties' conduct and positions throughout the dispute are to be considered together:

> The Supreme Court has instructed that, '[w]hile the parties' postures on individual matters may be more or less justified, the EAJA--like other fee shifting statutes-- favors treating a case as an inclusive whole, rather than as atomized line- items.' *Comm'r, INS v. Jean*, 496 U.S. 154, 161-62[.] In other words, in evaluating the Government's position, we must arrive at one conclusion that simultaneously encompasses and accommodates the entire civil action.

*Saysana v. Gillen*, 614 F.3d 1, 5 (1st Cir. 2010) (additional citations and quotation marks omitted).

The Court's analysis must be in depth and thoughtful: "In considering substantial justification under EAJA, ... it is not enough to repeat the analysis of the merits decision, and add

adjectives." *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1175 (D.C. Cir. 2005) (citations omitted).

> Our EAJA jurisprudence reflects this principle. It requires that the district court do more than explain, repeat, characterize, and describe the merits decision. Courts evaluating substantial justification must instead analyze *why* the government's position failed in court; if for example, the government lost because it vainly pressed a position flatly at odds with the controlling case law, that is one thing; quite another if the government lost because an unsettled question was resolved unfavorably. *See United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000) ("the district court must reexamine the legal and factual circumstances of the case from a different perspective than that used at any other stage of the proceeding").

*Id.* at 1174 (emphasis in original) (additional citations and quotation marks omitted).

The earliest accepted formulation of a test by the Tenth Circuit and other Circuit Courts for whether the Government's position was "substantially justified" asked whether it demonstrated "reasonableness in both law and fact." *Gutierrez v. Sullivan*, 953 F.2d 579, 584-85 (10th Cir. 1992), *cert. denied sub nom. Shalala v. Gutierrez*, 509 U.S. 933 (1993); *see also Fulton v. Heckler*, 784 F.2d 348 (10th Cir. 1986); *United States v. 2,116 Boxes of Boned Beef, Weighing Approximately 154,121 Pounds*, 726 F.2d 1481, 1486-87 (10th Cir. 1984). The U.S. Supreme Court in *Pierce v. Underwood* offered further guidance:

> [A]s between the two most commonly used connotations of the word 'substantially,' the one most naturally conveyed by the phrase before us here is not 'justified to a high degree,' but rather 'justified in substance or in the main'--that is, justified to a degree that could satisfy a reasonable person. That is no different from the 'reasonable basis both in law and fact' formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue. To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve.

487 U.S. 552, 555-56 (1988) (citations and footnote omitted).

**Legal Reasonableness**

As to legal issues, the reviewing court must keep in mind that reasonable disputes about the meaning and effect of laws are common and an adverse ruling does not necessarily mean that a position was unreasonable: "[A] position can be justified even though it is not correct, and ... it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.*, at 566 n. 2 (quoted in *Hadden*, 851 F.2d at 1267. "The government's success or failure on the merits at each level may be evidence of whether its position was substantially justified, but that success or failure alone is not determinative of the issue." *Hadden*, 851 F.2d at 1267-68 (citation omitted). Results in litigation must be put into a proper context:

> Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified. Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose. Nevertheless, a string of losses can be indicative; and even more so a string of successes.

*Pierce*, 487 U.S. at 569. A judicial victory or defeat at any stage is not conclusive, but always subject to closer examination as the Supreme Court has explained:

> Respondents further contend that the weakness of the Government's position is established by the objective fact that the merits were decided at the pleadings stage. We disagree. At least where, as here, the dispute centers upon questions of law rather than fact, summary disposition proves only that the district judge was efficient.

*Id.*, at 568-69.

The state of the law at the time, settled or not, is an important factor to consider: "When an area of law is 'unclear or in flux, it is more likely that the government's position will be substantially justified.'" *Cherry v. Barnhart*, 125 F. App'x 913, 916 (10th Cir. 2005) (unpublished) (*quoting Martinez v. Sec'y of Health & Human Servs*., 815 F.2d 1381, 1383 (10th

Cir. 1987)).  An error of law does not compel a conclusion that the government's position was not substantially justified, as in *Saysana*, 614 F.3d at 6, where the government was correct to argue that a *Chevron* analysis was required, but incorrect about ambiguity in the statute in the first *Chevron* step.  The First Circuit held that the issue was novel and of first impression, *id.* at 6, and, in totality, the government's position was not unjustified.  *Id.*, at 7.

Confusion about the controlling law lends support to an otherwise reasonable government position:  "In the absence of controlling Supreme Court case law, the available circuit precedent becomes more significant in considering substantial justification under EAJA." *Taucher*, 396 F.3d at 1177.  In *Taucher*, there was no controlling Supreme Court case, nor controlling circuit precedent, and the only arguable analogous circuit decision favored the government.  *Id.* at 1178.  The Tenth Circuit has held that, where a  government position was supported by some circuits but Tenth Circuit law was undecided, a reasonable but erroneous position was substantially justified for EAJA attorney fee purposes.  *Koch*, 47 F.3d 1015.

Where the law is clear, however, action clearly contrary to law undercuts the Government's case, as it should.  For example, when an agency violated the clear language of two identically-worded regulations by failing to give notice to "other interested parties" of an upcoming property sale, it was unable to meet its burden to prove its action was substantially justified.  *Role Models Am., Inc.*, 353 F.3d at 967.

**Reasonableness in Fact**

A position can be "substantially justified", even if it is wrong on the facts, so long as it is reasonably so:

> Here as in other areas courts need to guard against being 'subtly influenced by the familiar shortcomings of hindsight judgment.' *Beck v. Ohio*, 379 U.S. 89, 96[] (1964)… [T]here is always the hope that, after decision, the 'wrong view' looks considerably less plausible than it did before.  But just as discovery of contraband

> does not establish probable cause, nor an accident negligence, nor poor returns an imprudent trustee, so too a loss on the merits does not mean that legal arguments advanced in the context of our adversary system were unreasonable.

*Taucher*, 396 F.3d at 1173-74 (additional citations omitted). For a concrete example, consider *United States v. 2,116 Boxes of Boned Beef*: After the government seized a large quantity of adulterated meat, further testing showed that the levels of adulterant were insufficient to present a real health risk; the court held, however, that on the particular facts, including the observation of the implantation of the prohibited substance in cattle after the date of its prohibition and the published science about the persistence of the substance and its carcinogenic nature, the seizure of the meat was not unreasonable. 726 F.2d at 1490.

**Not a Test of Predictive Ability**

The "substantially justified" standard "does not 'require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.'". *Taucher*, 396 F.3d at 1173 (*quoting Spencer v. NLRB*, 712 F.2d 539, 557 (D.C.Cir. 1983)) (additional citation omitted). *Accord, Hadden*, 851 F.2d at 1267-68 ("There is no prerequisite that the government's decision to litigate was based on a substantial probability of prevailing for the government to defeat a claim for attorney's fees under the EAJA." (citations and quotation marks omitted)).

## ANALYSIS OF THIS CASE

In this case, the record is devoid of any indication that the Department of Agriculture commenced or threatened to commence administrative proceedings before the United States Attorney filed suit. The administrative record, instead, consists of proceedings initiated after the District Court ruled that it did not have subject-matter jurisdiction over Counts I-XIII. The record provided by the parties is limited to the Consent Decision documenting their negotiated resolution of the administrative claims. The substantial penalties and nonmonetary relief

obtained from Defendants as well as the swiftness of the settlement negotiations weigh in favor of the justification of the Government's position.

Regarding the litigation, Defendants' primary argument is that the United States was not justified in filing suit on Counts I-VIII.    Defendants assert:

> The Complaint alleged violations of the Packers and Stockyards Act (PSA), 7 U.S.C. 181 et seq. (Court Doc. 1). Counts I through VIII alleged violations of the PSA and sought civil penalties against the Defendants. Count IX alleged that Defendant Calvin Pareo failed to register as a dealer pursuant to the PSA. As shown by the record in this matter, the United States was not justified in bringing Counts I through VIII against the Defendants in federal district court when the PSA specifically provides that enforcement is to be done through administrative procedures and the district court lacks jurisdiction to hear such matters. The United States also had no factual basis for bringing Count IX for failure to register against Calvin Pareo.

[Doc. 349 at 4].

**Does dismissal of Count IX establish that the United States was not substantially justified in filing that claim in district court?**

The second of these arguments is most easily resolved, as there is no showing of support in the record for any finding nor admission by the Government that Count IX lacked a factual basis.  The United States' stated reason for moving to dismiss Count IX was "the interest of justice", [Doc. 336 at 1], which could mean any number of factors other than factual insufficiency, especially on the eve of administrative proceedings on the same general topic.

**Does dismissal of Counts I-VIII establish that the United States was not substantially justified in filing those claims in district court?**

As for the jurisdictional issue, there are two component arguments:  (1) that the United States should never have filed Counts I-VIII in the District Court, and (2) that, having filed, the United States should not have argued against dismissal of Count I-VIII for the reasons relied

upon by the Court.  In keeping with the authorities, both arguments are considered in the context of the Government's position as a whole.

Weighing most heavily against the Government is the District Court's conclusion that the Packers and Stockyards Act states "the clear intent of Congress", [Doc. 165, at 12], that the type of claims brought in Counts I-VIII be raised in "the administrative process, and only the administrative process".  *Id.*   In order to reach that conclusion, the District Court performed a close and careful review of the statutory structure, noting that at least one provision (7 U.S.C. §203) authorized court proceedings in the first instance, but that the authority to bring suit under 7 U.S.C. § 215 and 216 was limited to enforcement of orders previously issued by the Secretary through administrative proceedings.  *Id.* at 5-7.  There is some persuasive weight to the argument that the United States should have properly interpreted the statute prior to bringing suit or should have presented a proper interpretation in response to the Court's invitation to brief the issue.

On the other hand, it is notable that the issue of primary jurisdiction that prompted briefing was raised not by the Defendants but by the Court *sua sponte*.  [Doc. 165, at 2-3].  At that time, the Court asked the parties to brief whether the appropriate action by the Court would be to dismiss Counts I-VIII, or merely to stay the action pending administrative proceedings.  *Id.* During the briefing period, the formerly-assigned Magistrate Judge denied Defendants' motion to stay discovery, *see id.* at 3, indicating a reasonable basis for disagreement about the viability of the questioned counts.  It is also relevant that the ultimate action by the District Court was dismissal of Counts I-VIII, not based upon primary jurisdiction but a distinct theory of exclusive jurisdiction, again raised by the Court *sua sponte* rather than by the Defendants.  *Id.*  The District Court noted that although the term *primary jurisdiction* had been applied in a previous Tenth Circuit case under different provisions of the PSA, U.S. Supreme Court authority on *exclusive*

*jurisdiction* was controlling, the operative distinction being that primary jurisdiction requires a stay pending referral to the administrative agency while exclusive jurisdiction requires dismissal of the subject counts.  *Id.*, at 9-10.  Neither of the parties argued exclusive jurisdiction in their briefs.  [Docs. 107 & 108]

Finally, it is significant that the United States' initial position was that the Court should grant temporary injunctive relief to protect the public while the merits of its claims were resolved.  Such relief was authorized by statute and was granted and maintained throughout the litigation and the administrative process and until the conclusion of that process was demonstrated to the District Court.  *See* 7 U.S.C. § 228a; [Doc. 165, at 14-16].

In hindsight, it was improper for the United States to initiate Counts I-VIII in the District Court rather than in administrative proceedings.  Viewing the matter as a whole, however, and given: (1) the need for prompt injunctive relief to protect the public; (2) the evidentiary record of multiple violations of the act sufficient to justify substantial restrictions on Defendants' business activities; (3) the absence of initiative by Defendants to raise the issue of exclusive jurisdiction before it was raised by the District Court *sua sponte*; and (4) the lack of any evidence of bad faith by the Government, I conclude that the position of the United States was substantially justified.

### FOURTH ISSUE:

### If the Defendants are entitled to attorney fees and costs, what fees and costs should be awarded?

Because I have recommended that the District Judge find that Defendants are not entitled to any award of fees and expenses under the EAJA, I have not analyzed the reasonableness of Defendants' specific request.  If the District Judge rejects these recommendations and concludes that an EAJA award is required, a reasonableness analysis will be required.

**CONCLUSION**

I recommend that the District Judge:

(1) Deem Defendant's EAJA application to be timely, even though filed prematurely, as final judgment has now been entered and the time for appeal has expired, the matter is fully briefed, and the United States has cited to no sovereign interest that would be damaged by deciding the merits of the application;

(2) Find that none of the Defendants meet the definition of prevailing party under the EAJA;

(3) Find that the position of the United States was substantially justified; and

(4) For reasons (2) and (3) above, deny Defendants' *Application for Attorney's Fees and Expenses Pursuant to the Equal Access to Justice Act…* [Doc. 349].

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**