IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      1:15-cv-00680-MCA-JHR

HIGH PLAINS LIVESTOCK, LLC, dba
PRODUCERS LIVESTOCK AUCTION,
MICHAEL FLEN, CALVIN PAREO,
and DARCI PAREO,

    Defendants.

## MAGISTRATE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON MOTION REQUESTING REIMBURSEMENT

Defendant High Plains Livestock ("HPL") seeks reimbursement from the Plaintiff United States for fees paid to Special Master Johnson Miller & Co. in the amount of $23,428.43. HPL filed its *Motion Requesting Reimbursement of Payments to Co-Special Master Johnson Miller & Co.* [Doc. 402] on September 26, 2017. The *United States of America's Response in Opposition to Defendants' [sic] Motion Requesting Reimbursement of Payments to Co-Special Master Johnson Miller & Co.* [Doc. 407] was filed on October 24, 2017. HPL's *Reply to United States of America's Response in Opposition to Motion Requesting Reimbursement of Payments to Co-Special Master Johnson Miller & Co.* [Doc. 416] completed the briefing on November 14, 2017.

## ISSUE PRESENTED

Whether the District Court should order the United States to reimburse Defendant HPL for payments to the Co-Special Master made under a previous court order?

## MATERIAL FACTS

The litigation was commenced by the United States under the Packers & Stockyards Act (PSA), 7 U.S.C. §§ 181-231, based upon the Plaintiff's belief that the Defendants were violating

the law regarding record-keeping, fund management, and payments to customers of HPL's stock auction business. [Doc. 1]. The United States sought civil penalties against all Defendants as well as temporary injunctive relief to protect the public pending the conclusion of the litigation. *Id.*

By direction of District Judge M. Christina Armijo, Magistrate Judge William P. Lynch held a four-day evidentiary hearing to determine whether the evidence supported issuance of a preliminary injunction under authority granted by 7 U.S.C. § 228a. Upon that evidence, Magistrate Judge Lynch found that Defendants had committed multiple violations of the PSA and that it was "appropriate to appoint a receiver to conduct an initial review of HPL's continued viability and, if viable, to take over all aspects of HPL's operations." [Doc. 55, p. 2-3]. After allowing both sides additional input, District Judge Armijo adopted Magistrate Judge Lynch's findings, later noting that they, "and more, are supported by the record [and] Defendants do not challenge these factual findings as clearly erroneous." [Doc. 103, p. 12-13].

Based on Magistrate Judge Lynch's recommendations, District Judge Armijo considered whether it would be necessary to terminate HPL's business operations or take other steps to protect the interests of the public. Defendants contemporaneously represented that they intended either to cease operations completely or to wind them down over a period of months, prompting District Judge Armijo to appoint a receiver to take possession of HPL's assets and to maintain the status quo. [Doc. 103, p. 5]. Judge Armijo later wrote that appointment of a receiver was merited, "[g]iven the strength of the evidence of rampant fraudulent conduct, and because that fraudulent conduct establishes the United States' basis for relief, [and] there is imminent danger of the property being diminished". *Id.,* p. 14.

When the proposed receiver declined to serve, District Judge Armijo issued a temporary injunction "that Defendants maintain their cattle and property in the same condition as they were in as of December 24, 2015 and not engage in any dealer activity, until further Order of the Court." [Doc. 89, p. 6; *see* Doc. 103, p. 6]. At Defendants' suggestion, the Court then appointed Gayland Cowen as special master to monitor and report on Defendant's operations. [Docs. 103 & 104]. At the same time, District Judge Armijo noted that she was considering appointing the CPA firm of Johnson, Miller & Co. as a co-special master. [Doc. 103, p. 5].

After *sua sponte* requesting and obtaining briefing on the issue of subject matter jurisdiction, Judge Armijo dismiss eight of the nine counts seeking civil penalties, although the temporary injunction regarding Defendants' operations remained in place. [Doc. 165, pp. 10-12 & 14-16]. Thereafter, responding to concerns that the Special Master was unable to develop the data and analysis that would sufficiently inform the Court about Defendants' operations and viability, Judge Armijo stated her intention to appoint a co-special master to provide additional oversight. [Doc. 296].

Between the Court's ruling that a co-special master was needed and the specific appointment of Johnson, Miller & Co., the ninth and final count for civil penalties was dismissed on the unopposed motion of the United States, stating that it was "no longer in the interest of the United States to pursue this claim." [Doc. 336, p. 1]. The order of dismissal expressly "[left] in place only the United States' request for temporary injunctive relief". [Doc. 345, p. 1].

There followed a specific order appointing the accounting firm Johnson, Miller & Co. as Co-Special Master expressly "for the purpose of investigating whether High Plains Livestock is solvent". [Doc. 353, p. 11]. The order directed that "[a]ll payments to the Special Master shall be from the Court Registry" and that HPL would make monthly payments into the registry for

that purpose. [*Id.*, p. 10]. The Appointment Order also set forth a specific predicate for HPL to pursue reimbursement of those payments:

> If the results of the solvency analysis are that 1) High Plains Livestock is solvent, and 2) there is no evidence that High Plains Livestock is utilizing the company funds for purposes other than company business, and 3) the Special Master's conclusions as to the monthly financial status of High Plains Livestock do not differ from Special Master Cowen's conclusions by greater than 10%, then High Plains Livestock may seek reimbursement of the cost of the Special Master's review and report from the United States.

The merits of the case were ultimately resolved through a parallel administrative process at the U.S. Department of Agriculture: the parties reached a settlement memorialized in a Consent Decision [Doc. 388, Exh. 1]. The specific terms imposed a $100,000 civil fine jointly and severally upon all Defendants, with 90% of the fine held in abeyance; there was no requirement that HPL repay customers or suspend its dealer operations. [Doc. 402, p. 2]. Returning to court, Defendants submitted an *Amended Unopposed Emergency Motion to Dismiss Remaining Claims and for an Order Directing Special Masters to Cease All Work on and Related to this Matter* [Doc. 388], which the District Court granted on September 12, 2017. [Doc. 390]. The same day, the District Court entered a *Judgment* dismissing "all of Plaintiff's claims against Defendants". [Doc. 391, p. 1].

Due to the negotiated resolution of the dispute through the administrative process, Johnson, Miller & Co. did not complete its assignment and did not deliver a report to the Court but was paid $23,428.43 for work that was done. [Doc. 402, p. 3].

## **THE ARGUMENTS**

On September 26, 2017, Defendant High Plains Livestock, LLC, filed a *Motion Requesting Reimbursement of Payments to Co-Special Master Johnson Miller & Co.* [402]. Conceding that the circumstances do not meet the conditions for reimbursement set out in the order appointing Johnson Miller & Co., HPL proposed that Fed. R. Civ. P. 53 and "considerations of fairness and

4

equity" support reimbursement of HPL nonetheless. [Doc. 402, p. 3]. "Rule 53(g)(3) gives the Court the discretion to reallocate payment between the parties depending on considerations of fairness, the positions taken by the parties, and the ultimate outcome of the matter." [Doc. 402, p.3]. The keystone of HPL's argument is the assertion that "[t]he United States is responsible for the unnecessary expense caused by its refusal to accept a short delay in the time for the Co-Special Master to begin work." [Doc. 402, p. 4]. HPL says that the United States should have foreseen that the matter would settle and that the work of the Co-Special Master was unnecessary. Ultimately, says HPL, "[t]he final outcome of the administrative case, which resulted in the dismissal of the United States' claims in this matter, supports a reallocation of payment responsibility and an Order requiring the United States to reimburse HPL." [Doc. 402, p. 4].

Plaintiff filed the *United States of America's Response in Opposition to Defendants' [sic] Motion Requesting Reimbursement of Payments to Co-Special Master Johnson Miller & Co.* [Doc. 407] on October 24, 2017, along with a *Declaration of Steven Brett Offutt*, [Doc. 408], addressing the purpose and effect of the Consent Decision filed on September 8, 2017. In contrast to HPL's allocation of blame, the United States says that "Defendants alone are responsible for the necessity of the appointment of Johnson Miller & Co." [Doc. 407, p. 1], because the state of Defendants' records prevented the original Special Master from creating reports useful to the Court or advising whether HPL was solvent and prevented the regulatory agency from overseeing HPL's business operations. [*Id.*]. As for whether the United States should have waited, it responds that settlement appeared unlikely until it happened. [*Id.*, p. 2], and that appointment of the Co-Special Master fulfilled its purpose: to protect the public until the case was resolved. [*Id.*, pp. 2-3].

High Plains Livestock's *Reply to United States of America's Response in Opposition to Motion Requesting Reimbursement of Payments to Co-Special Master Johnson Miller & Co.* [Doc. 416] completed the briefing on November 14, 2017. In its reply, HPL changes position on the express application of Judge Armijo's appointment order, now saying that "the waiver in the Consent Decision of any and all claims against HPL satisfies both the letter and intent of Section V.c.(iv) of the Order Appointing Co-Special Master that allows HPL to seek reimbursement of the cost of the Special Master's review and report from the United States." [Doc. 416, pp. 1, 4]. HPL counters the United States' arguments by asserting that settlement was predictable, "because the vast majority of GIPSA administrative claims do settle," [*Id.*, p. 2], and the United States was wrong in predicting: "any settlement would be over $2 million, would require payment of over $2 million to customers ..., and would include a 'long-term suspension[]'" and "that it would take months, if not years, to have a final decision in the administrative case", [*Id.*, p. 3 (citation omitted)]. HPL invites attention to its dealer operations: "The dealer operation, which was the focus of the Co-Special Master's investigation, remains unchanged." [*Id.*, p. 3 (citation omitted)]. Parsing between dealer and market operations, HPL says "[t]he purpose of the appointment of the Co-Special Master was to assess the solvency of HPL's current dealer operations, even though the United States never brought any claims against the dealer operations." [*Id.*, p. 4]. Finally, HPL restates its position that the United States exaggerated the risk to the public of its continued operations while the administrative process played out:

> The United States fails to explain why, if the financial situation was indeed so precarious, GIPSA, in settling the administrative claim, allowed the operation to continue and waived any and all PSA claims that could have been brought prior to the date of the Consent Decision. … The unnecessary costs were not incurred because of any actions of HPL or the other Defendants but because of the refusal of the United States to agree to a reasonable postponement.

[Doc. 416, p. 5].

## ANALYSIS

Rule 53(g)(1, 3) regarding compensation of a special master states:

> Before or after judgment, the court must fix the master's compensation on the basis and terms stated in the appointing order, but the court may set a new basis and terms after giving notice and an opportunity to be heard.
>
> The court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master. An interim allocation may be amended to reflect a decision on the merits.

Judge Armijo's order requiring payment out of the court registry from contributions by HPL, with a statement of express terms for HPL to seek later reimbursement, fits the concept of an interim allocation in the last sentence of the rule. The District Court clearly has the authority to amend its interim order "to reflect a decision on the merits." Fed. R. Civ. P. 53(g)(3).

HPL's reply argument, that the circumstances meet the express conditions for reimbursement in the appointment order, is unavailing because it is simply not true. HPL conceded as much in its original motion. [Doc. 402, p. 3: "[T]he Order [appointing co-special master] does not address reimbursement by the United States upon dismissal of the claims prior to completion of the analysis".]. It is undisputed that the Co-Special Master did not complete a solvency analysis or provide any work product that would support findings that: "1) High Plains Livestock is solvent, and 2) there is no evidence that High Plains Livestock is utilizing the company funds for purposes other than company business, and 3) the Special Master's conclusions as to the monthly financial status of High Plains Livestock do not differ from Special Master Cowen's conclusions by greater than 10%". Notably, those predicates are stated in the conjunctive, so that a lack of proof of any one of them means that the express right to reimbursement fails.

7

HPL's real argument is that "considerations of fairness and equity" support reimbursement of HPL nonetheless. *Id*. It does appear that Rule 53 supports such a discretionary approach by the Court, notwithstanding the imposition of specific criteria in the interim order. As HPL states, "Rule 53(g)(3) gives the Court the discretion to reallocate payment between the parties depending on considerations of fairness, the positions taken by the parties, and the ultimate outcome of the matter." [Doc. 402, p. 3]. Given that Rule 53 directs the court to consider "the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master" as well as the ultimate "decision on the merits", HPL's paraphrase seems reasonably accurate.

It is worthwhile to emphasize, however, that Rule 53 anticipates that the Court, as happened here, considered all of the pertinent factors other than the ultimate result when it devised an interim allocation in the appointing order; in other words, much of the analysis for allocating payment is based on the circumstances necessitating the appointment, which then "*may* be amended to reflect a decision on the merits." Fed. R. Civ. P. 53(g)(3) (emphasis added). The instant motion presents the question of whether the result in this case supports the Court's exercise of discretion to modify its interim allocation. In other words, the interim allocation expresses the Court's view of the equities looking forward: is the view materially different in hindsight?

Notably, this is not a case where the Court tested the parties' remaining assertions with evidence and made factual findings that led to conclusions of law, all of which would inform the Court's retrospect. Instead, the parties reached a settlement of the merits, with no findings of fact nor conclusion of law, and now dispute the significance of that result. HPL asks the Court to consider the terms of the settlement as evidence of the underlying merits. Settlement and trial

8

are not the same, however, and uncertainties about the strategies and tactics of the settlement process suggest that the Court should be cautious about disputed *post hoc* interpretations.

The nature and amount of the controversy in this case is set out in detail in the prior orders of the Court cited above. In summary, the case tested the allegations of the United States that the Defendants, operating through HPL, operated a cattle auction business in violation of federal statutes and regulations to the detriment of their customers, particularly, and the public generally. Judge Armijo's view of the evidence developed in pretrial injunctive proceedings was that it showed "rampant fraudulent conduct" enough to justify ousting the Defendants from control of HPL. While the amount in controversy was not litigated to a final determination, the United States asserted that millions of dollars were at stake; against that background, the settlement provision for a $100,000 fine both undercuts the total amount claimed and substantiates that the real stakes were sizable. Notwithstanding that the immediate settlement payment required is only 10% of the total fine, the Defendants agreed to ultimate responsibility for the total amount in the event of breach of other settlement conditions.

Also relevant to analysis of the nature and amount of the controversy is the value of the reimbursement sought: a little less than $24,000, or the equivalent of about 24% of the fine imposed through settlement. While not a *de minimus* amount, neither is it disproportionate to the Plaintiff's "recovery" obtained through the settlement. In isolation, therefore, the facts and circumstances of the settlement of this case do not weigh substantially in favor of an amendment of the interim allocation of co-special master fees.

Rule 53 also directs the Court to consider the parties' means regarding payment of expenses, inviting more than one layer of analysis. By some measures, the means of the United States dwarf those of almost any other litigant, which is an important consideration where the

result supports a narrative of the government as an oppressive Goliath against the resources of a David acting in good faith. That narrative does not ring true here, however, with this record of hotly-contested litigation and interim findings of strong evidence of Defendants' willful improprieties. More importantly, the result of the case does not provide new information about the parties' means that was unavailable to Judge Armijo in her interim analysis. The logical inference from the record is that the United States' situation is unchanged or worse (due to the lack of a large financial recovery from HPL) and HPL's situation is unchanged or better (demonstrated by the administrative agency's decision not to prohibit HPL from continued dealer operations). The factor of "the parties' means" does not weigh in favor of amendment of the interim allocation. Judge Armijo's implicit assessment that HPL had the ability to pay special master expenses is not diminished because of the settlement.

    The third factor expressed by Rule 53 in allocating expenses is the extent of the parties' responsibility for the reference to a master. HPL argues that the United States is responsible, first because it filed a motion seeking the co-special master's appointment [Doc. 153], and second, "because of the refusal of the United States to agree to a reasonable postponement." [Doc. 416, p. 5]. The United States' position is more persuasive: that a special master was appointed, not because the United States filed a motion, but because the Defendants' conduct forming the basis for that motion was a continuing risk to its customers and the public, as found by Judge Armijo. HPL's characterization of the settlement as proof that the United States' allegations were overblown is not convincing against the backdrop of evidentiary findings that supported the original appointment. The proof provided and the exigencies of the case prior to settlement did not allow the Court the luxury of waiting for events to play out before acting to protect the public. This factor weighs against amendment of the interim cost allocation.

## **CONCLUSION**

In summary, although the District Court has the discretion to amend an interim allocation of the expenses of a special master under Fed. R. Civ. P. 53, the circumstances of this case, which include the pre-trial findings of the Court supporting interim injunctive relief, as informed by the limited evidentiary weight due the terms of a settlement, do not provide substantial evidence in favor of amending the interim allocation of expenses to HPL.  Without substantial evidence, reimbursement of HPL by the United States would be an abuse of discretion.  I recommend that the District Court deny HPL's *Motion Requesting Reimbursement of Payments to Co-Special Master Johnson Miller & Co.*

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE