IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                     CIV 15-0680 MCA/JHR

HIGH PLAINS LIVESTOCK, LLC,
dba PRODUCERS LIVESTOCK AUCTION,
MICHAEL FLEN, CALVIN PAREO, and
DARCIE PAREO,

    Defendants.

## MEMORANDUM OPINION AND ORDER OVERRULING DEFENDANTS' OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDED DISPOSITION OF MOTION FOR ATTORNEY FEES AND ADOPTING THE RECOMMENDED DISPOSITION OF MAGISTRATE JUDGE JERRY H. RITTER

This matter comes before the Court on Magistrate Judge Jerry H. Ritter's Proposed Findings and Recommended Disposition of Motion for Attorney Fees (*Doc. 418*), filed May 9, 2018, which recommended that the Court deny Defendants' Application for Attorney's Fees and Other Expenses Pursuant to the Equal Access to Justice Act. *Doc. 349*. Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), Defendants filed objections to the Magistrate Judge's Proposed Findings and Recommended Disposition ("PFRD") and the United States filed a Response to Defendants' Objections. *See Docs. 419, 422*. The Court, having conducted a *de novo* review of Defendants' objections, hereby overrules them and adopts the PFRD for the reasons set forth below.

**I)**     **Standard of Review**

"Review of the magistrate judge's ruling is required by the district court when a party timely files written objections to that ruling." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir.

1

1997). Specifically, "[d]e novo review is required when a party files timely written objections to the magistrate judge's recommendation." *In re Griego*, 64 F.3d 580, 583–84 (10th Cir. 1995) (citation omitted). "De novo review requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation." *Id.* "However, neither 28 U.S.C. § 636(b)(1) nor Fed. R. Civ. P. 72(b) requires the district court to make any specific findings; the district court must merely conduct a de novo review of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000).

**II) Background**

The United States filed its Complaint for Injunctive Relief and Civil Penalties against the Defendants on August 5, 2015. *Doc. 1*. Counts I through VIII of the Complaint alleged violations of the Packers and Stockyards Act ("PSA") and sought civil penalties resulting therefrom. *See id.* at 22. Count IX sought injunctive relief against Defendant Calvin Pareo. *Id.* at 21. Finally, the United States requested, pursuant to Federal Rule of Civil Procedure 65 and 7 U.S.C. § 228a, a temporary restraining order prohibiting Defendants "from operating as a market agency or dealer while livestock sellers and consignors remain unpaid and livestock buyers remain unreimbursed for overcharges[.]" *Id.* at 21-22.

On September 2, 215, this Court referred "the matter of appointment of a receiver to Magistrate Judge William P. Lynch to convene proceedings with the parties and determine whether appointment of a receiver is indicated." *Doc. 18*. Thereafter, after a four-day evidentiary hearing, Magistrate Judge Lynch issued an Order Appointing a Receiver on December 8, 2015. *Doc. 55*. In the alternative, Magistrate Judge Lynch stated that, "if HPL decided that it would rather not operate than to do so under a receiver, that is a business decision that will be in accord with the letter and spirit of this Order." *Doc. 55* at 30. In response, "[a]fter reviewing the Order,

2

and after consulting with the lienholder of the facility, who considers the mortgage in default and notes terminated, High Plains Livestock dba Producers Livestock Auction, [] decided that it [would] not operate under a receiver and [would] discontinue operations." *Doc. 59*. Defendants further filed a Notice and Request for Emergency hearing. *Id.*

The parties submitted numerous briefs and documents on the issue of the appointment of a receiver, and the Court held two hearings and a telephonic status conference. *See Doc. 296* at 5. Ultimately, the Court appointed Special Master Gayland Cowen. *Id.* at 6. The Court granted the Special Master broad authority to monitor the financial activities of HPL and granted him electronic access to HPL's bank accounts. *Id.* at 7. On March 16, 2016, the United States filed its Motion for Appointment of Receiver and/or Co-Special Master, or Preliminary Injunctive Relief. *Doc. 153*. This Motion was granted on March 31, 2017. *See generally Docs. 296, 351*. A Co-Special Master was appointed on July 10, 2017. *Doc. 353*.

Meanwhile, on April 11, 2016 this Court, acting *sua sponte*, dismissed Counts I through VIII of the Complaint for lack of jurisdiction "for the reasons set forth in *Pan American World Airways, Inc. v. United States*, 371 U.S. 296 (1963)." Thereafter, the parties briefed Defendants' Motion to Dismiss Count IX for failure to state a claim; however, before the Motion was ruled on, the United States moved to dismiss Count IX without prejudice on May 30, 2017. *See Docs. 336, 345*; *see also* Fed. R. Civ. P. 41(a)(2) ("Unless the order states otherwise, a dismissal under this paragraph is without prejudice."). Defendants did not oppose the Motion, and so it was granted, "leaving in place only the United States' request for temporary injunctive relief under 7 U.S.C. § 228a." *Doc. 345*.

In retaining jurisdiction under Section 228a, this Court directed the United States to file an administrative claim by a date certain or face dismissal of the request for temporary injunctive

3

relief. *Doc. 388* at 2. The United States filed an administrative claim, which was set for a hearing on the merits on September 11, 2017. *Id.* However, prior to the start of the hearing, the Secretary and Defendants entered into a Consent Order that "directs the Defendants to cease and desist activities that were the subject of the administrative claim and that imposes sanctions under the PSA." *Id.* (citing Exhibit 1 thereto). Specifically, the Consent Order suspends HPL's registration as a market agency selling on commission for 4 years, requires Defendants to cease and desist from six separate violations of the PSA, and assesses a one-hundred thousand dollar civil penalty against the Defendants, jointly and severally (with $90,000.00 held in abeyance). *Doc. 388* at 9-10. Upon entry of the Consent Order, Defendants filed an Unopposed Emergency Motion to Dismiss Remaining Claims and for an Order Directing Special Masters to cease all Work on and Related to this Matter. *See generally Doc. 388*. This Court granted the Unopposed Motion on September 12, 2017. *Doc. 390*.

In granting the Unopposed Motion, this Court retained jurisdiction to rule on Defendant's Application for Attorney's Fees and Other Expenses Pursuant to the Equal Access to Justice Act. *Doc. 349*. On November 13, 2017, this Court referred the Application to Magistrate Judge Jerry Ritter to "initiate and complete necessary proceedings deemed necessary in order to address the pending motion[] and submit to this Court a recommended disposition of the motion[]." *Doc. 415*. Magistrate Judge Ritter issued his Proposed Findings and Recommended Disposition ("PFRD") of Defendants' Motion for Attorney Fees on May 9, 2018. *Doc. 418*. After summarizing the material facts of this case, Magistrate Judge Ritter concluded that Defendants were not a "prevailing party" under the Equal Access to Justice Act ("EAJA") and that, even if they were, that the position of the United States in litigating this action was substantially

4

justified. *Id.* at 7-20. As such, Magistrate Judge Ritter recommended that the Court deny Defendant's Application. *Id.* at 21.

Defendants object to Magistrate Judge Ritter's conclusion and to many of his findings. Defendants first and foremost object that the Magistrate Judge's discussion of the material facts of this case "does not provide a full and accurate description of the procedural history of this matter." *Doc. 419* at 1. In support of this position, Defendants focus their argument on the fact that Judge Ritter's PFRD "does not adequately address the basis for the dismissal of Counts I through VIII and Count IX, which is the basis for the claim for fees under EAJA." *Doc. 419* at 1; *id.* at 4 ("In other words, the United States did not have any legal basis for filing Counts I through VIII against the Defendants. This ruling, along with the dismissal of Count IX against Defendant Calvin Pareo, is the basis for Defendants' EAJA claim for attorney fees."). Unfortunately for Defendants, this approach is not persuasive. "[T]he EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161–62 (1990). As such, while the "basis for the dismissal of Counts I through VIII and Count IX" is relevant, it cannot be the focus of the Court's analysis. "[O]nly one threshold determination for the entire civil action is to be made." *Id.* at 159. Thus, Defendants' position - that the Court should view this case with a narrow perspective - is rejected.

With this standard in mind, the Court notes certain facts that Defendants do not, and cannot, dispute. For example, Defendants do not dispute that the United States sought an injunction against them pursuant to 7 U.S.C. § 228a in the Complaint. *Id.* at 2. Defendants cannot dispute that "Section 228a allows a federal district court to grant temporary injunctive relief until such time as an administrative complaint is issued and dismissed by the Secretary of

5

Agriculture." *Doc. 388* (Defendants' Unopposed Motion to Dismiss) at 2. Defendants do not dispute that "[f]rom January 11, 2016[,] to September 12, 2017, the Defendants operated their dealer business under the oversight of Mr. Cowen," the Court-appointed special master. *Doc. 419* at 3. Nor do Defendants dispute that a co-special master was appointed on March 31, 2017, and assisted in monitoring their business until September 12, 2017. *Id.* Defendants cannot dispute that "[t]he United States filed an administrative claim, which was set for hearing on the merits beginning September 11, 2017, [but that] [p]rior to the start of the hearing, the Secretary, through [the Grain Inspection, Packers, and Stockyards Administration], and the Defendants entered into a Consent Order that directs the Defendants to cease and desist activities that were the subject of the administrative claim and that imposes sanctions under the PSA." *Doc. 388* at 2. Thus, Defendants do not and cannot dispute that they were subject to the Court's jurisdiction for the purpose of injunctive relief and that they were monitored by Co-Special Masters until entering into a Consent Order before an administrative agency. And, "Defendants are not claiming that they prevailed in regard to the injunctive relief that was in place during the course of the proceedings." *Doc. 419* at 7.

Against this backdrop, Magistrate Judge Ritter concluded that Defendants are not a "prevailing party" under EAJA, because "[w]hen the result is viewed as a whole, as required by the controlling case authorities, there is no logical characterization of Defendants, or any one of them, as *prevailing* in this litigation." *Doc. 418* at 12 (emphasis in original). Moreover, in the event that this Court was to reject that conclusion, Magistrate Judge Ritter concluded that the position of the United States in bringing and litigating this case was substantially justified "given: (1) the need for prompt injunctive relief to protect the public; (2) the evidentiary record of multiple violations of the [A]ct sufficient to justify substantial restrictions on Defendants'

business activities; (3) the absence of initiative by Defendants to raise the issue of exclusive jurisdiction before it was raised by the District Court *sua sponte*; and (4) the lack of any evidence of bad faith by the Government[.]" *Id.* at 20.

Contrary to Magistrate Judge Ritter's conclusions, Defendants argue that they both prevailed in this litigation and that the position of the United States was not substantially justified. Having reviewed the parties' arguments and the record of this case, the Court disagrees.

### III) Legal Standards

The Equal Access to Justice Act ("EAJA") requires a court to award fees and other expenses to a "prevailing party" in a suit against an agency of the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Gutierrez v. Sullivan*, 953 F.2d 579, 584 (10th Cir. 1992) (quoting 28 U.S.C. § 2412(d)(1)(A)). Thus, "[i]n EAJA cases, the court first must determine if the applicant is a 'prevailing party' by evaluating the degree of success obtained. If the Government then asserts an exception for substantial justification or for circumstances that render an award unjust, the court must make a second finding regarding these additional threshold conditions." *Jean*, 496 U.S. at 160.

A party "prevails" when it obtains an enforceable judgment on the merits or a court-ordered consent decree. *Biodiversity Conservation All. v. Stem*, 519 F.3d 1226, 1229 (10th Cir. 2008). A voluntary change in conduct, on the other hand, "lacks the necessary judicial imprimatur on the change." *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 605 (2001)).

> *Buckhannon's* requirement that a prevailing party receive some form of judicial imprimatur, *see* 532 U.S. at 605, 121 S.Ct. 1835, requires more than a mere judicial statement favoring one party. Instead, in order for a party to prevail, the court's statement must lend judicial teeth to the merits of the case. More

7

> specifically, a party is entitled to attorneys' fees only if it could obtain a court order to enforce the merits of some portion of the claim it made in its suit.

*Biodiversity Conservation All.*, 519 F.3d at 1230. Where the district court decides nothing about the merits of the case, but simply remands it to an agency to determine the same, a party does not "prevail." *See Iqbal v. Holder*, 693 F.3d 1189, 1194-95 (10th Cir. 2012) (requiring a "judicially enforceable obligation" before a party can be said to prevail under EAJA). Rather, the district court action must grant "substantive relief on the merits of the claims" to the party for it to prevail. *See Al-Maleki v. Holder*, 558 F.3d 1200, 1206 (10th Cir. 2009).

"'[P]osition of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based[.]" 28 U.S.C. § 2412(d)(2)(D). The government bears the burden to show that its position was "substantially justified." *Evans v. Colvin*, 640 F. App'x 731, 733 (10th Cir. 2016) (unpublished). "The test for substantial justification in this circuit is one of reasonableness in law and fact. In other words, the [United States'] position must be 'justified to a degree that could satisfy a reasonable person.'" *Hays v. Berryhill*, 694 F. App'x 634, 636 (10th Cir. 2017) (unpublished) (quoting *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007); *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The government's litigation position can be reasonable even if wrong. *Madron v. Astrue*, 646 F. 3d 1255, 1257-58 (10th Cir. 2011). "The reasonableness test breaks down into three parts: the government must show 'that there is a reasonable basis for the facts alleged; that there exists a reasonable basis in law for the theory it propounds; and that the facts will reasonably support the legal theory advanced." *Gutierrez v. Sullivan*, 953 F.2d 579, 585 (10th Cir. 1992) (quoted authority and internal alterations omitted). "The government's success or failure on the merits at each level may be evidence of whether its position was

substantially justified, but that success or failure alone is not determinative of the issue." *Hadden v. Bowen*, 851 F.2d 1266, 1267 (10th Cir.1988).

IV) **Analysis**

A) **Defendants did not "prevail" under EAJA.**

Defendants argue that "[t]he dismissal by the Court of Counts I through VIII in favor of the Defendants meets the 'prevailing party' requirements" because they no longer had to defend against these counts and the United States "was clearly restrained from pursuing claims for civil penalties in the District Court case." *Doc. 419* at 5. Defendants' argument ignores the fact that this Court's Order dismissing Counts I though VIII for lack of jurisdiction did not preclude the United States from asserting those claims before the pertinent administrative agency. To the contrary, it merely prevented the United States from litigating those claims before *this* Court. At this Court's direction, the United States re-filed its claims in the proper administrative agency, which resulted in the entry of the Consent Order that concluded this case. This is not the sort of legal relief that *Buckhannon* contemplated in order to create a "prevailing party" under EAJA. As the Tenth Circuit explained in *Iqbal v. Holder*, a court order that merely leaves the substance of a matter to an agency's discretion does not create a prevailing party. *See* 693 F.3d at 1195.

Defendants also argue that they were the prevailing party for Count IX. *Doc. 419* at 6. Defendants' argument ignores the fact that the Court dismissed Count IX *without prejudice*. "Dismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits[.]" *Cactus Canyon Quarries, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 820 F.3d 12, 19 (D.C. Cir. 2016) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990)). As such, the United States could relitigate Count IX, so it so choose. This is not an adjudication on the merits for the purposes of EAJA, and involved "no material alteration in the legal

relationship of the parties." *See Ora Vaca, Inc. v. Norton*, 55 F. App'x 433, 436 (9th Cir. 2003) (unpublished) (reasoning that stipulations that granted no relief to either party and that were made without prejudice to the respective positions thereof could not create a prevailing party).

Moreover, the only actual relief that was provided by the Court in this case was the injunctive relief granted in favor of the United States. As noted above, "Defendants are not claiming that they prevailed in regard to the injunctive relief that was in place during the course of the proceedings." *Doc. 419* at 7. Nor could they; but a case must be viewed as "an inclusive whole, rather than as atomized line-items." *Jean*, 496 U.S. at 161-62. Therefore, the injunctive relief that was in place during the course of the proceedings is relevant to, and weighs heavily in favor of, the conclusion that Defendants are not "prevailing parties" for the purpose of EAJA.

Defendants raise several other arguments pertaining to Magistrate Judge Ritter's reliance on the result of the administrative proceedings to determine that Defendants did not prevail. *Doc. 419* at 7; *see Doc. 418* at 12. The Court agrees that this discussion was more properly included in the portion of the PFRD discussing whether the United States' position was substantially justified. *See Hadden*, 851 F.2d at 1267. Nonetheless, this discussion does not alter Magistrate Judge Ritter's, or this Court's, conclusion that Defendants did not prevail in this litigation.

**B) The position of the United States was "substantially justified"**

Technically, the Court need not resolve this issue, as a party must prevail in order to raise the substantial justification issue and be entitled to EAJA fees. Nonetheless, the Court will address Defendants' objections, and explain why Magistrate Judge Ritter reached the correct conclusion that the position the United States took in litigating this matter was substantially justified.

10

Defendants first object that it is the government's burden to prove substantial justification, and that "it has failed to do so in regard to Counts I through VIII and Count IX." *Doc. 419* at 8. As explained above, this argument is a nonstarter. It is the government's burden to prove substantial justification as to its position in litigating *the case as a whole*, not merely in bringing the aforementioned Counts. As such, this Court looks to whether the government was substantially justified in bringing its Complaint against Defendants, which, in addition to Counts I through IX, included a request for injunctive relief. This request was granted, resulting in the appointment of two Special Masters and the ouster of Defendants from their business. In such a case, "the Government had every right if not the duty, to proceed with [its request for injunctive relief]." *U.S. v. 2,115 Boxes of Bonded Beef*, 726 F.d 1481, 1488 (10th Cir. 1984). Also relevant here is the result of the administrative proceedings, which Defendants do not and cannot argue, was favorable to them. On the whole of the litigation, the Court finds that the government's position was substantially justified.

This conclusion renders some of Defendants' arguments moot. For example, Defendants argue that the government's pursuit of Count IX was not substantially justified because "the Complaint did not include sufficient facts to sustain the claim[.]" *Doc. 419* at 9. Defendants further argue that the government was not substantially justified in bringing Counts I through VIII because they were subsequently dismissed for lack of jurisdiction. *Id.* Putting aside the fact that Count IX was dismissed without prejudice and Counts I through VIII were dismissed *sua sponte*, the fact that the United States did not prevail on all of its claims does not prevent its position from being substantially justified. Again, the question is whether, on the whole, the United States' litigation position was reasonable. *See Hackett v. Barnhart*, 475 F.3d 1166, 1174 n.1 (10th Cir. 2007) (reasoning that the government's position was not reasonable on the whole

even though it technically "prevailed" on five of the six issues the plaintiff raised in the district court because "the fact that the Commissioner prevailed in the district court on most issues did not alter the fact that she acted unreasonably in denying benefits at the administrative level."). The Court finds that it was in this case.

Finally, Defendants challenge Magistrate Judge Ritter's conclusory paragraph, wherein he reasons that the United States' position was reasonable because there was a need for "prompt" injunctive relief to protect the public, there was a strong evidentiary record of multiple violations of the PSA by Defendants, Defendants did not raise the Court's jurisdiction before it was raised *sua sponte*, and that there is a lack of any showing of bad faith by the government. *See Doc. 418* at 20; *Doc. 419* at 10-12. Specifically, Defendants argue that there was no evidence in the record to support the conclusion that there was a need for "prompt" injunctive relief, that Magistrate Judge Ritter "is confusing the injunctive relief, over which the Court had jurisdiction, and the substantive claims for violations and penalties," that their failure to raise the Court's jurisdiction does not justify the position of the United States, and that "neither the EAJA nor the case law require a showing of 'bad faith' on the part of the United States in order to find that its position was not substantially justified." *Doc. 419* at 10-12. The Court finds little merit in the first two arguments. Regardless of whether there was a need for "prompt" injunctive relief or not, the Court granted injunctive relief against the Defendants. Likewise, the Court has repeatedly relied upon the evidentiary record developed before Magistrate Judge Lynch to support the injunctive relief granted against the Defendants in this case. *See, e.g., Doc. 296* at 3.

Defendants' third and fourth arguments give the Court some pause. There may be some merit to the notion that the United States was not substantially justified in bringing Counts I through VIII in this Court, and that Defendants' failure to raise the Court's jurisdiction should

not be held against them. That being said, the Court finds that that this issue was at best unsettled, making the United States' position reasonable. *See, e.g., Bah v. Cangemi*, 548 F.3d 680, 684 (8th Cir. 2008) ("The government may also be justified in litigating a legal question that is unsettled in this circuit."). Finally, the Court agrees with Defendants that they need not make out a showing of "bad faith" to show that the government's position was not substantially justified under the EAJA. This criteria appears to have been lifted from the Tenth Circuit's discussion of the "bad faith" exception to the American Rule in conjunction with its ruling on EAJA fees in *U.S. v. 2,115 Boxes of Bonded Beef*, 726 F.d 1481, 1488 (10th Cir. 1984) ("We therefore affirm the court's specific finding that there was 'no evidence that the government acted in bad faith in either the filing or preparation of this case.'"). While the criterion of "no bad faith" does not appear to have affected Magistrate Judge Ritter's analysis, the Court agrees that it is not a proper statement of the law. However, this is not in and of itself a sufficient basis for the Court to disagree with Magistrate Judge Ritter's ultimate conclusion – that the government's position in this case was substantially justified.

Finally, Defendants assert that "[n]one of the claims made by the United States ... proved to be true" and that the actions of the United States "were contrary to the remedial purposes of the PSA." *Doc. 419* at 12-13. Defendants provide no factual support for the first proposition and no legal support for the second. Again, this Court must view the case as an inclusive whole. Viewed through this lens, it is clear that the government was reasonable in bringing its claim for injunctive relief in this Court, especially in light of the Consent Order that resulted from the administrative proceedings.

## V) Conclusion

Defendants failed to prevail in this action as is required to support an award of fees under the EAJA. Additionally, the Court finds that the position of the United States in litigating this case against Defendants, both before this Court and before the administrative agency, was substantially justified.

Wherefore,

**IT IS HEREBY ORDERED** that Defendants' objections are overruled; the Court adopts Magistrate Judge Ritter's PFRD and denies Defendants' Application for Attorney's Fees and Other Expenses Pursuant to the Equal Access to Justice Act and Memorandum in Support (*Doc. 349*).

_____
SENIOR UNITED STATES DISTRICT JUDGE

August 29, 2018