IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                CIV 15-0680 MCA/JHR

HIGH PLAINS LIVESTOCK, LLC,
dba PRODUCERS LIVESTOCK AUCTION,
MICHAEL FLEN, CALVIN PAREO, and
DARCIE PAREO,

       Defendants.

**MEMORANDUM OPINION AND ORDER OVERRULING DEFENDANTS'
OBJECTIONS TO MAGISTRATE'S PROPOSED FINDINGS AND RECOMMENDED
DISPOSITION ON MOTION REQUESTING REIMBURSEMENT AND ADOPTING
THE RECOMMENDED DISPOSITION OF MAGISTRATE JUDGE JERRY H. RITTER**

This matter comes before the Court on Magistrate Judge Jerry H. Ritter's Proposed

Findings and Recommended Disposition on Motion Requesting Reimbursement (*Doc. 423*), filed

August 9, 2018, which recommends that this Court deny Defendant High Plain Livestock's

("HPL's") Motion Requesting Reimbursement of Payments to Co-Special Master Johnson Miller

& Co. *Doc. 402*. Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2),

HPL filed objections to the Magistrate Judge's Proposed Findings and Recommended

Disposition ("PFRD"). *See Doc. 428*. The Court, having conducted a *de novo* review of HPL's

objections, hereby overrules them and adopts the PFRD for the reasons set forth below.

**I)**    **Standard of Review**

"Review of the magistrate judge's ruling is required by the district court when a party

timely files written objections to that ruling." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir.

1997). Specifically, "[d]e novo review is required when a party files timely written objections to

the magistrate judge's recommendation." *In re Griego*, 64 F.3d 580, 583–84 (10th Cir. 1995) (citation omitted). "De novo review requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation." *Id.* "However, neither 28 U.S.C. § 636(b)(1) nor Fed. R. Civ. P. 72(b) requires the district court to make any specific findings; the district court must merely conduct a de novo review of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000).

"'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" *United States v. One Parcel of Real Prop., with Bldgs., Appurtenances, Improvements, and Contents*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). "[A] party's objections to the magistrate judge's report and recommendations must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel*, 73 F.3d at 1060.

## II)     Background

Pursuant to Federal Rule of Civil Procedure 65 and 7 U.S.C. § 228a, the United States sought a temporary restraining order prohibiting Defendants "from operating as a market agency or dealer while livestock sellers and consignors remain unpaid and livestock buyers remain unreimbursed for overcharges[.]" *Doc. 1* at 21-22. Shortly after the case was filed, the United States moved for a preliminary injunction, submitting that "[t]he only way to protect all of the interests harmed by Defendants' practices is to issue an injunction—ordering that Defendants cease buying and selling livestock." *Doc. 7* at 2. Ultimately, this Court appointed Special Master Gayland Cowen to oversee aspects of HPL's operations and to provide monthly compilation reports to the Court. *See Doc. 296* at 6. The Court granted the Special Master broad authority to

monitor the financial activities of HPL and granted him electronic access to its bank accounts. *Doc. 296* at 7. However, the Court was unable to determine from Mr. Cowen's reports whether HPL was solvent. *Doc. 353* at 2. Accordingly, this Court appointed Johnson, Miller & Co. as Co-Special Master, "for the purpose of investigating whether High Plains Livestock is solvent," on July 10, 2017. *Id.* In performing its duties, this Court directed that the Co-Special Master be permitted "direct visual and physical access to High Plain Livestock's bank accounts, investment accounts, financial statements, loan documents, loan applications, credit applications, day-to-day records, transaction records, accounts receivable records, and all other financial and business records." *Id.* at 11.

This Court's Order Appointing Co-Special Master Johnson, Miller & Co. directed HPL to make additional payments into the Court Registry for the purpose of compensating the Co-Special Master. *Doc. 353* at 10. However, the Court's Order permitted HPL to seek reimbursement of the cost of the Co-Special Master's review and report from the United States if the following conditions were met:

> If the results of the solvency analysis are that 1) High Plains Livestock is solvent, and 2) there is no evidence that High Plains Livestock is utilizing the company funds for purposes other than company business, and 3) the Special Master's conclusions as to the monthly financial status of High Plains Livestock do not differ from Special Master Cowen's conclusions by greater than 10%[.]

*Doc. 353* at 11. It is this provision that lies at the heart of the parties' current dispute.

Meanwhile, this Court dismissed the remaining Counts in the Complaint for lack of jurisdiction and on the United States' Motion. *See Docs. 336, 345*. In retaining jurisdiction under Section 228a, this Court directed the United States to file an administrative claim by a date certain or face dismissal of the request for temporary injunctive relief. *Doc. 388* at 2. The United States filed an administrative claim, which was set for a hearing on the merits on September 11,

2017. *Id.* However, prior to the start of the hearing, the Secretary and Defendants entered into a Consent Order that "directs the Defendants to cease and desist activities that were the subject of the administrative claim and that imposes sanctions under the PSA." *Id.* (citing Exhibit 1 thereto). Specifically, the Consent Order suspends HPL's registration as a market agency selling on commission for four years, requires Defendants to cease and desist from six separate violations of the PSA, and assesses a one hundred thousand-dollar civil penalty against the Defendants, jointly and severally (with $90,000.00 held in abeyance). *Doc. 388* at 9-10.

Upon entry of the Consent Order, Defendants filed an Unopposed Emergency Motion to Dismiss Remaining Claims and for an Order Directing Special Masters to Cease All Work on and Related to this Matter. *See generally Doc. 388*. This Court granted the Unopposed Motion on September 12, 2017. *Doc. 390*. Notably, "due to the negotiated resolution of the dispute through the administrative process, Johnson, Miller & Co. did not complete its assignment and did not deliver a report to the Court but was paid $23,428.43 for work that was done." *Doc. 423* at 4.

In granting the Unopposed Motion, this Court retained jurisdiction to rule on HPL's Motion Requesting Reimbursement of Payments to Co-Special Master Johnson, Miller & Co. *Doc. 402*. On November 13, 2017, this Court referred the Motion to Magistrate Judge Jerry Ritter to "initiate and complete necessary proceedings deemed necessary in order to address the pending motion[] and submit to this Court a recommended disposition of the motion[]." *Doc. 415*. Magistrate Judge Ritter issued his Proposed Findings and Recommended Disposition ("PFRD") on August 9, 2018. *Doc. 423*. After summarizing the material facts of this case, Magistrate Judge Ritter concluded that HPL failed to show why the Court should direct the United States to reimburse it for the payments made to the Co-Special Master prior to the dismissal of this case. *Id.* at 11. In reaching this conclusion, Magistrate Judge Ritter found that

4

HPL failed to meet the letter of this Court's Order Appointing the Co-Special Master; that is, that the conditions precedent for reimbursement have not been met. *See Doc. 423* at 7. Moreover, Magistrate Judge Ritter determined that "considerations of fairness and equity" implicit in Federal Rule of Civil Procedure 53 did not warrant reimbursement in this case. *See id.* at 8-10. HPL objects to Magistrate Judge Ritter's conclusions. *See Doc. 428.*

### III) Objections Raised

HPL presents a number of unenumerated objections to the magistrate judge's report and recommendations:

- The report fails to distinguish between past market operations and current dealer operations, *Doc. 428* at 1;

- The lack of evidence of dealer violations means that dealer operations were proper, *id.*, p. 2;

- The appointment of the Co-Special Master was not based on market operator violations, *id.*;

- The record justifying interim relief is not a proper basis to deny reimbursement, *id.*;

- The outcome of the case is the only proper basis of decision on reimbursement, *id.*;

- The United States' predictions of the outcome of the case were wrong, and so the United States should pay for the Co-Special Master, *id.*, pp. 2-3;

- The Consent Decision that administratively resolved the case disproves the basis for appointment of the Co-Special Master, *id.*, p. 3;

- The appointment of the Co-Special Master was unnecessary as the initial Special Master provided adequate oversight, *id.*;

- If the United States would have agreed to postpone appointment of the Co-Special

    Master, later events would have shown it to be unnecessary[.] *id.*

Each of these objections is addressed herein, though some are grouped together in the analysis.

## IV)   Legal Standard

Pertinent here, Federal Rule of Civil Procedure 53(g)(3), under a larger subsection devoted to the compensation of Special Masters, provides that:

> [t]he Court must allocate payment among the parties after considering the nature and amount of the controversy, the party's means, and the extent which any party is more responsible than other parties for the reference to a master. An interim allocation may be amended to reflect a decision on the merits.

Fed. R. Civ. P. 53(g)(3). As stated in the Advisory Committee Notes to this Rule, "[a] party whose unreasonable behavior has occasioned the need to appoint a master . . . may properly be charged all or a major portion of the master's fees." *Id.*, Advisory Committee Notes to the 2003 Amendments. That said, "[i]t may be proper to revise an interim allocation after decision on the merits." *Id.*

## V)   Analysis

### A)  Untimely Objections Waive the Right to Review

Initially, objections to Magistrate Judge Ritter's PRFD were due no later than August 23, 2018. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72.   By a motion [*Doc. 424*], later amended [*Doc. 425*], HPL obtained an extension of time through September 6, 2018, to file objections to the report and recommendations. *See Doc. 426.* However, HPL filed Defendant's Objections to the Magistrate's Proposed Findings and Recommended Disposition on Motion Requesting Reimbursement (Doc. 423) [*Doc. 438*] on September 7, 2018, one day after the deadline.

"Review of the magistrate judge's ruling is required by the district court when a party *timely* files written objections to that ruling." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir.

1997) (emphasis added). "[T]he failure to make timely objection waives appellate review of both factual and legal questions." *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010) (internal quotation marks and ellipsis omitted).

HPL did not file timely objections to the report and recommendations. Objections were due, after an extension granted by the Court, no later than September 6, 2018. HPL filed objections on the following day. As such, HPL has waived the right to review of its objections. HPL's waiver provides a proper and sufficient basis to overrule its objections and adopt the magistrate judge's report and recommendations.

However, in order to provide a full record and in the hope of bringing these proceedings to a close, the Court will nonetheless address the objections on their merits.

### B) Even if considered on their merits, High Plain Livestock's arguments and objections fail to convince the Court that reimbursement is appropriate.

High Plains Livestock has failed to demonstrate why this Court should revise its interim allocation decision for several reasons. First, as Magistrate Judge Ritter recognized, HPL has not shown compliance with the letter of this Court's Order Appointing the Co-Special Master. As stated above, to do so HPL would have had to demonstrate that it is solvent, that there is no evidence that it is utilizing the company funds for purposes other than company business, and that the Co-Special Master's conclusions as to the monthly financial status of High Plains Livestock do not differ from Special Master Cowen's conclusions by greater than 10%. *Doc. 353* at 11. However, this HPL has not done, and cannot do. While the Court is sympathetic to HPL's observation that the money spent on the Co-Special Master ultimately produced no work product relied upon by the Court, the Court reminds HPL that it moved the Court to direct the Co-Special Master to "immediately cease all work related to this matter" in its Emergency Motion to Dismiss Remaining Claims and for an Order Directing Special Masters to Cease all Work on and

Related to this Matter. *See Docs. 386, 388*. HPL could not seriously have expected the Co-Special Master to cease all work while still expecting work product from it.

Second, HPL has not demonstrated that there is a "decision on the merits" of this action that is favorable to it. To the contrary, all interim findings by this Court pointed to the notion that High Plains Livestock was operating while insolvent.

Finally, the Court agrees with Magistrate Judge Ritter that HPL has demonstrated no new circumstance since the Court appointed the Co-Special Master that would lead the Court to believe that its initial allocation decision should be amended. In fact, it was HPL's inability to operate in a manner that demonstrated its solvency that led to the appointment of the Co-Special Master in the first place. As such, the Court sees no reason to reverse its previous determination and order the United States to reimburse HPL for the payments to the Co-Special Master.

The Court now turns to Defendant's objections to Magistrate Judge Ritter's analysis and resulting conclusion. The first is that it "fails to distinguish between the claims against HPL acting as a market agency . . . and the purpose of the appointment of Johnson & Miller, which was to determine if HPL's current dealer business . . . was solvent." *Doc. 428* at 1. HPL argues that "[t]hese are two different and distinct issues. The appointment of Johnson &Miller as co-special master was based on the Court's concern that, if HPL's dealer business was not solvent, its customers and the livestock industry that HPL serves would be negatively impacted." *Id.* at 1-2. Thus, HPL argues that Magistrate Judge Ritter should not have relied on HPL's past violations of the Packers and Stockyards Act when acting as a market agency when assessing whether reimbursement was appropriate, but "should apply to the outcome of the portion of the case over which the Court had actual jurisdiction, which was the temporary injunctive relief of appointing

a co-special master to determine if the current dealer operation was solvent." *Id.* at 2. The Court is not persuaded by HPL's objection, for several reasons.

First, the Court finds that the distinction between market and dealer operations is not determinative; the appointment of the Co-Special Master was based in substantial part on market operator violations and, therefore, the record justifying interim relief is a proper factor in considering reimbursement. HPL argues that the PFRD is flawed in not recognizing that it formerly engaged in both market and dealer operations under the PSA, that it ceased market operations early in the case history, and that it engaged only in dealer operations thereafter. *See Doc. 428* at 1. HPL asserts that the appointment of the co-special master was unrelated to its previous market operations and, in the absence of affirmative evidence of misdeeds in its dealer operations, should not be at its expense.

While those factual assertions appear true, they ignore the real basis and intent of the Court's appointment order and its express requirements for reimbursement. The market operator violations were highly relevant to the Court's decision as they documented a pervasive pattern of violations of the law which created and informed the Court's concern about the potential risk to the public posed by the same actors involved in a dealer operation. HPL's assertion that "those allegations were not the basis for the appointment", *Doc. 428* at 2, is simply incorrect. The need for the additional safeguard of willing and qualified financial oversight was created in large part by HPL's actions prior to the appointment.

Second, the appointment of the Co-Special Master was necessary because the initial Special Master did not provide adequate oversight, and the lack of evidence of dealer violations is not proof that dealer operations were proper. Circumstances did not support a delay in appointment of the Co-Special Master, and later events do not prove that it was without basis or

urgency. Acknowledging the possibility that the Co-Special Master would eventually report that there was no continuing reason for concern, the Court set out express criteria for relief. HPL acknowledges that it cannot fulfill those criteria and so argues for an equitable analysis of its request for reimbursement based on the lack of any affirmative showing of misconduct after the appointment of the initial special master. That approach has two flaws which together prove fatal.

In the first instance, it was Special Master Cowen's inability to provide sufficient oversight and analysis of dealer operations, along with the pattern of illegal market operations, which created the need for an additional special master. In appointing the Co-Special Master, this Court noted that Mr. Cowen had been submitting information to the Court for over a year. *See Doc. 296.* Yet, despite his reports, this Court found that "even if HPL continues to operate solely as a dealer, even since the institution of the Special Master there is evidence demonstrating a serious risk of insolvency." *Id.* at 28. More specifically, this Court

> agree[d] with the United States that Mr. Cowen's submissions leave many questions and are not presented in a manner which allows a quick or easy determination of whether Defendants are operating while insolvent. While the Court has done its best to pull facts from the submissions, the Court can reach very few useful conclusions based on what has been submitted.

*Id.* at 34. "Nonetheless, based on the information provided by Mr. Cowen," this Court concluded "that there is a serious question regarding whether HPL is 'operat[ing] while insolvent, or otherwise in violation of this chapter in a manner which may reasonably be expected to cause irreparable damage to another person.' 7 U.S.C. § 228a(b)." *Id.* at 34. As such, the Court appointed the Co-Special Master to ensure that High Plains Livestock was not operating as a dealer while insolvent.

The second flaw in HPL's argument is that the Consent Decision that administratively resolved the case neither proves nor disproves the basis for appointment of the Co-Special Master. HPL's deduction that an absence of evidence of continued wrongdoing "means that the current dealer operation was not violating the PSA", [*Doc. 428* at 2], fails as a matter of logic.[1] Special Master Cowen was unable to provide the Court adequate assurances of either bad or good behavior, leading to the Court enlisting additional resources. The eventual settlement left the Court no way to know how HPL performed as a dealer, and thus no basis to evaluate the equity of reimbursement.

Finally, the United States' predictions of the outcome of the case are not a determinative factor in considering reimbursement. HPL argues that the United States should shoulder the burden of the Co-Special Master, given that the work the Special Master was hired to do was never completed. *Doc. 428* at 3. HPL also contends that the United States' concerns and contentions in this case were severely overstated, especially given that the Consent Decision in the administrative case permits current dealer operations to continue. *See id.* Finally, HPL argues that the United States should have agreed to a short postponement of the work to be completed by the Co-Special Master given that the case settled roughly two months after the appointment. *Id.* Again, the Court is not persuaded. At the time of the appointment of the Co-Special Master the Court had grave concerns as to whether High Plains Livestock was operating as a dealer

---

[1] High Plains Livestock's statement that "the Consent Decision in the administrative case did not impose any penalties or restrictions on the current dealer operation" is not supported by the record. The Consent Decision is Exhibit 1 to the Amended Unopposed Emergency Motion to Dismiss Remaining Claims and for an Order Directing Special Masters to Cease All Work on and Related to This Matter [*Doc. 388*]. That decision imposes a 4-year suspension of High Plains Livestock's registration as a market agency but allows registration and operation as a dealer, *see id.*, Exh. 1 p. 4-5; the decision then states multiple specific performance conditions which must be obeyed during the 4-year market suspension at the risk of monetary sanctions, which conditions must as a matter of logic apply to dealer operations as market registration was suspended. In addition, High Plains Livestock and the three individual defendants herein jointly and severally received monetary penalties that are not allocated exclusively to either market or dealer operations, though the decision memorializes that all four engaged in both types of activities. While the document does not prove that the penalty was due to dealer operations, neither does it disprove that possibility.

while insolvent. The work by the Co-Special Master was pertinent and necessary to allow this Court to determine whether HPL was, in fact, violating the law. Given the status at the time, the Court has little trouble concluding that prompt action to determine High Plains Livestock's solvency (via the appointment of the Co-Special Master) was necessary, appropriate, and, indeed required, in this case. *See Doc. 352* at 13-14. Moreover, this Court considered the parties' arguments for and against postponing the appointment of the Co-Special Master, and HPL has failed to convince the Court that its initial assessment was incorrect. *See id.* at 6-8. In sum, HPL created the circumstances which mandated the appointment, and subsequent events have not undercut that imperative.

## VI)    Conclusion

The Court finds that High Plains Livestock has failed to demonstrate sufficient cause for this Court to modify its prior Order and direct reimbursement of the payments it made to the Co-Special Master in this case for several reasons.

First, HPL having waived the right to object to the report and recommendations by not making a timely filing, the Court will overrule the objections and adopt the report and recommendations.

Alternatively, upon a review of their merits, the Court concludes that High Plains Livestock's objections should be overruled because they are based upon a misstatement of the circumstances and purpose of the appointment of the Co-Special Master, that the real basis for the appointment is not refuted by the record, and that there is no substantial evidence that equity requires reimbursement of the funds paid to the Co-Special Master. The pre-trial findings of widespread illegality in the market operation created a legitimate concern for the public with respect to the dealer operation, which, left unresolved by the limited oversight provided by the

initial Special Master, created a real and immediate need for a more responsive Co-Special Master. Advance payment of the Co-Special Master was required, and the party whose actions were at issue and whose history created the concern was tasked with providing funding, with the caveat that future proof of a lack of continued wrongdoing could justify reimbursement. The negotiated settlement of the case leaves this Court without substantial evidence of either the presence or absence of continued wrongdoing. Therefore, High Plains Livestock has failed to substantiate its objections.

Wherefore,

**IT IS HEREBY ORDERED** that Defendant's objections are overruled, first because they are untimely, and alternatively on their merits; the Court adopts Magistrate Judge Ritter's PFRD (*Doc. 423*), and denies Defendant's Motion Requesting Reimbursement of Payments to Co-Special Master Johnson, Miller & Co. (*Doc. 402*).

9/19/2018

M. CHRISTINA ARMIJO
SENIOR UNITED STATES DISTRICT JUDGE